*Formatted for Electronic Distribution*                                                                                          *For Publication*

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF VERMONT

_____

**Michael F. Montagne,**
                **Debtor-in-Possession.**

Chapter 12 Case
# 08-10916

_____

**Ag Venture Financial Services, Inc.,**
                **Plaintiff,**
        v.
**Michael F. Montagne,** *et al.,*
                **Defendants.**

Filed & Entered
On Docket
August 13, 2009

Adversary Proceeding
# 08-1023

_____

*Appearances:*    *Lisa Chalidze, Esq.*                          *Gary Franklin, Esq. and*
                          *for Diane Montagne*                        *Douglas Wolinsky, Esq.*
                          *Lauren Kolitch, Esq.*                       *for Ag Venture Financial*
                          *for John Montagne*                        *Services, Inc.*

### MEMORANDUM OF DECISION
#### GRANTING AG VENTURE'S CROSS-MOTION FOR SUMMARY JUDGMENT AND DENYING DIANE MONTAGNE'S AND JOHN MONTAGNE'S MOTION FOR SUMMARY JUDGMENT ON PRIORITY OF SECURITY INTERESTS IN CASH PROCEEDS

Ag Venture Financial Services, Inc. ("Ag Venture"), Diane Montagne, and John Montagne (collectively, the "Parties") each claim rights to certain cash proceeds (the "Proceeds") from a sale by Montagne Heifers, Inc. ("MHI") of certain livestock (the "Collateral") sold eleven months before Michael Montagne (the "Debtor") filed for Chapter 12 bankruptcy relief. Diane Montagne, joined by John Montagne, filed a motion for summary judgment (doc. # 47) and Ag Venture filed a cross-motion for summary judgment (doc. # 119) seeking a determination of whether Ag Venture has a perfected security interest in the Proceeds and which of the Parties has the first priority lien against the Proceeds. This decision addresses the priority of only that portion of the Proceeds of the Collateral represented by a $240,000 check Michael Montagne gave to Diane Montagne following a sale of Collateral.[1]

      To determine which creditor (Ag Venture, Diane Montagne, or John Montagne) has priority in the Proceeds, the Court relies upon the rules found in Article 9 of the Vermont Uniform Commercial Code (UCC). For the reasons set out below, the Court finds that Ag Venture is entitled to judgment as a matter of law, determines that Ag Venture has a properly perfected first position security interest in the Proceeds,

---

[1] The Parties have not moved for summary judgment with respect to a separate $75,000 check at issue in this adversary proceeding, and hence this Decision makes no determination with respect to the priority of lien interest as to those proceeds.

grants Ag Venture's cross-motion for summary judgment on that issue, and denies Diane Montagne and John Montagne's corresponding motion for summary judgment.

## I. JURISDICTION

This Court has jurisdiction to enter a final order pursuant to 28 U.S.C. §§ 157(b)(2)(K) and 1334.

## II. PROCEDURAL HISTORY

On January 29, 2008, Ag Venture filed a complaint against Michael Montagne, Diane Montagne, and John Montagne in Vermont state court (doc. # 4). Ag Venture's claims against Diane Montagne, as amended on March 21, 2008, included, inter alia, fraudulent conveyance and conversion with respect to a $240,000 check (the Proceeds) from the sale of MHI livestock (doc. # 30, counts X and XII). On April 16, 2008, Diane Montagne filed a motion for summary judgment, asking the state court, first, to determine that Ag Venture had no perfected security interest in the Proceeds or, in the alternative, that John Montagne had priority over any perfected security interest Ag Venture had in the Proceeds, and second, to enter judgment in her favor on all other causes of action Ag Venture asserted against her (doc. # 47). On April 25, 2008, John Montagne joined Diane Montagne's motion for summary judgment (doc. # 51). On June 5, 2008, Ag Venture filed a memorandum opposing Diane Montagne's motion for summary judgment (doc. # 60). On October 2, 2008, Michael Montagne filed a petition seeking Chapter 12 bankruptcy relief and the litigation was removed from state court to this Court. At that time, the state court had not yet adjudicated Diane Montagne's motion for summary judgment (doc. # 47). Subsequent to the bankruptcy filing, Ag Venture filed a cross-motion for summary judgment seeking a declaration that it had a properly perfected first priority security interest in MHI's assets and the Proceeds (doc. # 119). A multitude of related documents have been filed by the Parties in connection with the cross-motions. See doc. ##: 121, 136, 137-141, 140, 145, 251, 272-275, 278, 279, and 292.

## III. MATERIAL UNDISPUTED FACTS

Based upon the documents filed by the Parties in support of these cross-motions, as well as other pertinent documents, the Court finds the following facts to be material and undisputed (hereinafter referred to as the "Undisputed Facts")[2]:

1. Ag Venture is an agricultural lender and has made multiple loans to MHI, a dairy operation in St. Albans, Vermont (doc. ## 119-1, ¶¶ 3, 4, and 140, ¶ 1). Michael Montagne is the owner and President of MHI (doc. ## 251, ¶ 2, and 274, ¶ 2). Diane Montagne is the estranged spouse of Michael Montagne and former co-owner and treasurer of MHI (doc. ## 251, ¶ 2, 8, and 274, ¶¶ 1, 2, 8). John Montagne is the son of Michael and Diane Montagne, who worked at the farm and was also the vice president of MHI (doc. ## 119, pp 1-2, 70, pp. 4-5). Prior to the litigation, Ag Venture and the Montagnes had an ongoing business relationship for over ten years (doc. ## 251, ¶ 3, and 274, ¶ 3).

---

[2] In each instance, two references are cited: the first citation is from Ag Venture papers and the second is from the Montagnes' papers.

2. On November 18, 2005, Ag Venture made a $457,000 loan (Loan # 538) to MHI ("the Borrower"); the loan agreement was signed by Michael Montagne, Diane Montagne, and John Montagne; the loan agreement identified the purpose of the loan to be the "purchase of livestock" (doc ## 119-1 ¶ 1, 140, ¶ 1).

3. On November 18, 2005, MHI executed a commercial promissory note (the "Note") and a security agreement (the "Security Agreement") in favor of Ag Venture; they were signed by Michael Montagne, Diane Montagne, and John Montagne as officers and in their individual capacities (doc. ## 47, p. 2, and 119-1, Ex. 2). The collateral for this loan was described in relevant part in those two documents as follows:

> the Note - All of the Borrower's personal property, including without limitation all accounts, **livestock**, equipment, general intangibles, inventory and securities, whether now owned or hereafter acquired, **plus** any products, **proceeds**, or replacements **thereof**, including proceeds of any insurance policies thereon, as further described in a Security Agreement of even date herewith and/or Loan Agreement of even date herewith, whichever is applicable.
>
> the Security Agreement - All inventory, accounts, equipment, general intangibles, crops, farm products, receivable accounts, **livestock** and farm equipment**…[a]ll proceeds** (including insurance proceeds) of the sale…of any property described in this Collateral section.

[emphasis added] (doc. ## 60, Ex. A, B and C, 119-1 ¶ 5, and 140, ¶ 5)

4. In October 2006, Diane Montagne separated from Michael Montagne (doc. ## 60, p. 3; 83, p. 1; 251, Ex. 1, pp. 30-33; 274, ¶ 8).

5. The separation agreement between Michael Montagne and Diane Montagne, dated December 2006 (the "Diane Montagne Agreement") is a typed one page document that contains many hand-written interlineations; it describes a division of assets between Diane Montagne and Michael Montagne. Pursuant to this agreement, Diane Montagne would receive both money and certain parcels of land from Michael Montagne. Nowhere in the Diane Montagne Agreement is there any reference to Diane having a right to livestock or the proceeds from the sale of livestock (doc. # 251, Ex. 1, and Ex. 6; doc. #274, ¶ 15).

6. On September 17, 2007, pursuant to the Diane Montagne Agreement, Ag Venture released Diane Montagne from liability for the MHI debt to Ag Venture (the "Release"). The Release applied to multiple notes, including Loan # 538 (doc. ## 47-1 ¶ 1, 60-1 ¶ 1, and 251, Ex. 8). Thomas Bellevance, Ag Venture's President, signed the Release on behalf of Ag Venture. The Release does not refer to any security agreements MHI executed in favor of Ag Venture and has no provision that waives Ag Venture's security interest in livestock or proceeds of livestock. Id.

7. On November 13, 2007, a UCC-1 financing statement was filed on behalf of Diane Montagne. This UCC filing includes a broad array of collateral (doc. ## 60, p. 3, 119-1 ¶ 7, 140, ¶ 7),[3] described as follows:

> All dairy and breeding **livestock** wherever located, including but not limited to all cows, bred heifers, yearlings, calves, bulls, their offspring and youngstock of all ages and breeds; all products of livestock, including but not limited to milk, milk receivables and milk proceeds; all crops and feed inventory to be grown or stored on the debtors farms, including but not limited to all forward crops, grain and commodity inventories, accounts and receivables; all farm products, accounts receivable, inventory and supplies, documents of title and records; all replacements of, substitution for and increase, additions and accessions to the foregoing, together with **all proceeds thereof**, including insurance proceeds.

[emphasis added] (doc. # 60)

8. On November 20, 2007, Michael Montagne executed and delivered a promissory note in the amount of $100,000 to John Montagne as consideration for Michael Montagne's purchase of John Montagne's shares in MHI (doc. ## 23, Ex. E and D, and 119-1, ¶ 10, 11). On the same date, Michael Montagne executed a security agreement in favor of John Montagne which described the collateral as follows:

> All farm machinery and equipment wherever located, including but not limited to that described below along with all tools, parts and supplies related thereto; all crops and feed inventory to be grown or stored on the debtor farms, including but not limited to all forage crops, grain and commodity inventories, accounts and receivables; all farm products, accounts receivable, inventory and supplies, documents of title and records; all replacements of, substitutions for and increases, additions, attachments, accessories and accessions to the foregoing, together with all proceeds thereof, including insurance proceeds…"[4]

Id.

9. On November 24, 2007, Michael Montagne sold a herd of milk cows owned by MHI for a total price of $500,000 (doc. ## 47-1, ¶¶ 3, 5; 119-1, ¶¶ 12, 14, 16; and, 140, ¶¶ 12, 14, 15).

10. On November 28, 2007, Michael Montagne gave Diane Montagne a check in the amount of $240,000 which was part of the proceeds from that sale of cows (doc. ## 251, Ex. 15, p. 74, and 274, ¶ 28). The check was from David Rama, Inc., drawn on the Delaware National Bank of (word undecipherable), and made payable to MHI and Diane Montagne (doc ## 251, Ex. 15, p. 74). Diane Montagne's counsel currently holds that $240,000 in a client trust account (doc. ## 251, ¶¶ 28, 32, and Ex. 15, and 274, ¶¶ 28, 32).

---

[3] While Diane Montagne does not designate this fact as undisputed, the Court does not consider it disputed because it appears that Diane Montagne's sole objection is that the exhibit was not attached. See doc. ## 119-1 ¶ 7, and 140 ¶ 7.

[4] A listing of specific farm machinery is also included in the collateral description.

11. On November 30, 2007, Ag Venture filed a UCC-1 financing statement to perfect its security interest in the Collateral, as identified in its November 18, 2005 security agreement, relating to Loan #538 (doc. ## 119-1, ¶ 17, Ex. 7, 136, p. 5).

12. On December 4, 2007, John Montagne filed a UCC-1 financing statement to perfect his security interest in the collateral securing the $100,000 debt Michael Montagne owed to him for the purchase of John Montagne's MHI stock (doc. ## 47-1 ¶¶ 13, 14, 119-1, ¶ 18, Ex. 8).

## IV. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is proper if the record shows no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(C); Fed. R. Bankr. P. 7056. A genuine issue exists only when "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The substantive law identifies which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. See Anderson, 477 U.S. at 247. Factual disputes that are irrelevant or unnecessary are not material. See id. The court must view all the evidence in the light most favorable to the nonmoving party and draw all inferences in the nonmovant's favor. See Cruden v. Bank of New York, 957 F.2d 961, 975 (2d. Cir.1992). In making its determination, the court's sole function is to determine whether there is any material dispute of fact that requires a trial. See Anderson, 477 U.S. at 249; see also Palmieri v. Lynch, 392 F.3d 73, 82 (2d Cir.2004); Delaware & Hudson Ry. Co. v. Conrail, 902 F.2d 174, 178 (2d Cir.1990).

The Court finds that there are no material facts in dispute with respect to the perfection or priority of the security interests in the Proceeds and therefore that summary judgment on that issue is proper.

### B. Applicable State Statutes

Property interests are creatures of state law and must be construed in accordance with state law in bankruptcy cases. Butner v. U.S., 440 U.S. 48, 54 (1979). Uniform treatment of property interests by both state and federal courts serves to reduce uncertainty, discourage forum shopping, and prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy." Id. at 55 (quoting Lewis v. Mfrs. Nat'l Bank, 364 U.S. 603, 609 (1961)). "The justifications for application of state law … apply with equal force to security interests." Id.

In 2001, Vermont adopted the revised Uniform Commercial Code for secured transactions, 9A V.S.A. Article 9. Article 9 covers security interests, perfection requirements, and conflicting priorities amongst parties, and applies to "any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures." 9A V.S.A. § 9-102(1). It also applies to the "attachment

5

and enforceability of security interests" and governs the "perfection and priority of security interests." 9A V.S.A. §§ 9-203; 9-301.

C. **Application of the Pertinent State Statutes to the Undisputed Material Facts**

This Court is asked, inter alia, to determine the Parties' respective interests in the Proceeds. Before turning to this question, the Court must first determine whether Ag Venture had a security interest in the Proceeds, whether it was perfected, and if so, when. Secondly, the Court must determine if there are any other, competing security interests in the Collateral and, if so, the order of priority.

1. Did Ag Venture Have a Valid Security Interest in the Collateral?

Ag Venture argues that its security interest was enforceable against third parties pursuant to 9A V.S.A. § 9-203(a) and that its security interest attached to the Collateral on November 18, 2005 (doc. #119 pp. 4-6). Diane Montagne and John Montagne dispute that Ag Venture ever had a valid security interest in the Collateral (see, e.g. doc. # 47).

*(a) Did Ag Venture's Security Interest Attach? If So, When?*

Vermont's UCC provides that a security interest attaches to collateral when it becomes enforceable against the debtor and third parties, unless an agreement expressly postpones the timing of such attachment. See § 9-203(a). Generally, a secured party creates an enforceable security interest when: (1) it has given value to the debtor; (2) the debtor has rights in the collateral; (3) there is a security agreement; (4) the security agreement describes the collateral; and, (5) the security agreement is in writing and either has been signed by the debtor or is the subject of some other "authenticating event," as described in § 9-203(b)(3). 9A V.S.A. § 9-203. See Vermont Indus. Dev. Auth. v. Setze, 157 Vt. 427, 432, 600 A.2d 302, 305 (1991) (finding that the parties had not adhered to the statutory requirements necessary to create a valid and enforceable security interest in a loan transaction, so no security interest had been created).

All five criteria for the creation of an enforceable security interest have been met here. Through Loan # 538, Ag Venture gave value to MHI (namely $457,000); MHI had rights in the assets identified and pledged as collateral (including the livestock and its proceeds) as the undisputed owner of these assets (i.e., "its herd") (doc. ## 119-1, ¶ 12, 140, ¶ 12); the parties executed the Security Agreement (doc. # 60, Ex. C); the Security Agreement describes the collateral to include "livestock" and "proceeds"; and the Security Agreement is in writing and is signed by the Debtor. Additionally no provision in the Security Agreement postponed the date of attachment. Thus, the transaction between the Parties resulted in the creation of a security interest in favor of Ag Venture that, as of November 18, 2005 satisfies the elements set out in § 9-203. Accordingly, Ag Venture's security interest attached to the Collateral and was enforceable as of that date.

Notwithstanding this transaction's compliance with UCC § 9-203, Diane and John Montagne contest the validity of Ag Venture's security interest in the Collateral based upon a myriad of theories. The Court will address those which raise legally viable arguments, seriatim.

*(b) Is Ag Venture's Security Interest Invalidated by its Description of Collateral in the Security Agreement?*

John and Diane Montagne assert that Ag Venture does not have a valid security interest because the Security Agreement did not describe the Collateral with sufficient precision (doc. # 136, p. 2). They posit that the term "livestock" is not sufficient to describe the specific cows concerned, and rely upon the fact that other security agreements with Ag Venture were allegedly more precise. Diane and John Montagne contend that this alone invalidates Ag Venture's security interest in the Collateral. They are mistaken.

The Vermont UCC makes clear that a description of collateral is sufficient if it identifies the collateral "by category." 9A V.S.A. 9-108(a-b). Section 9-108(a) and (b) state that "a description of personal or real property is sufficient whether or not specific, if it reasonably identifies what is described" and "a description of collateral reasonably identifies the collateral if it identifies the collateral by…category." "Livestock" is a category recognized by the courts, as is "proceeds."[5] See In re Grey, 29 B.R. 286, 290 (Bankr. D.Kan 1983) This Court has held that "'[p]roceeds' includes whatever is received when collateral or property is sold, exchanged, collected or otherwise disposed of. Money, checks and the like are 'cash proceeds.'" In re Muzzey, 134 B.R. 800, 805 (Bankr. D.Vt. 1991) (quoting prior 9A V.S.A. 9-306 the predecessor to (9A V.S.A. § 9-315).

Ag Venture used the term "livestock" and "proceeds" in its collateral description in the Security Agreement with MHI. See Undisputed Fact # 3. Michael Montagne (and via him, Diane Montagne) received cash proceeds from the sale of that livestock. See Undisputed Facts, ## 9, 10. Accordingly, Ag Venture's description of collateral was sufficient to satisfy the requirements for a valid security agreement and to create a valid security interest in the Collateral and Proceeds.

*(c) Is Ag Venture's Security Interest Invalidated by the Borrower's Use of the Loan Proceeds?*

Diane Montagne and John Montagne also argue that Ag Venture's security interest in the Collateral never attached because MHI did not use the loan funds for the purpose designated in the loan agreement, i.e. to buy livestock, but rather used the loan to pay off other Ag Venture loans (doc. # 136, pp. 2-4). In this regard, too, the Montagnes are mistaken; they are erroneously focusing on the requirements for a valid "purchase-money security interest" ("PMSI"), rather than for a garden variety security interest. To obtain a PMSI in collateral, a lender must show loan proceeds were used to acquire specific collateral. See In re Munzberg, 388 B.R. 529, 536-38 (Bankr. D.Vt. 2008) (discussing definition of PMSI in Vermont and quoting 9-103(b)(1) that a PMSI is created "to the extent that the goods are purchase-money collateral with respect to that security interst"). However, the Montagnes' argument is inapposite to the instant cross-

---

[5] Although there is little Vermont law directly on point. This Court, in In re Jerome, 31 B.R. 266, 267-68 (Bankr. D.Vt.1983), found that collateral identified as "farm products" includes livestock, per 9A V.S.A. § 9-109(3), and that "farm products" and "equipment used in farming operations," was sufficiently descriptive to perfect its security interest upon filing.

motions because Ag Venture does not assert it has a PMSI in the Collateral. Since there is no claim for a PMSI, there is no PMSI priority to be determined, and this argument is wholly unavailing.

*(d) Did Ag Venture Waive Its Security Interest in the Collateral or Proceeds?*

As their last-ditch argument, Diane and John Montagne assert that even if Ag Venture properly perfected its security interest, and that perfected security interest attached to the Proceeds, Ag Venture's release of Diane Montagne from liability on all loans that MHI owed to Ag Venture (including the loan in question here) extinguishes Ag Venture's interest in the Proceeds (doc. #47, pp 1-2). Diane and John Montagne claim that reading the Diane Montagne Agreement in tandem with the Ag Venture Release inevitably leads to this conclusion. The Court is not persuaded. The issue is not whether Diane Montagne has been released from liability on the loans, but whether Ag Venture waived its security interest in the Collateral such that it would have lost its right to the proceeds from the Collateral. The material undisputed facts are inconsistent with such a finding. See Undisputed Facts ## 5, 6.

Additionally, the law on this point is not on the Montagnes' side. Section 9-315 generally provides protections to a secured party on disposition of collateral and in proceeds. While certain circumstances do result in a secured party losing its rights in collateral. most notably, if the secured party authorizes the disposition of the collateral "free of its security interest," the Montagnes have not demonstrated that this circumstance is present.[6] See 9A V.S.A. § 9-315, and cmt. 2. A creditor can expressly or impliedly authorize sale of collateral and thereby waive its security interest. See, e.g., First Nat. Bank & Trust Co. of Oklahoma City v. Iowa Beef Processors, Inc., 626 F.2d 764, 766-67 (10th Cir.1980) (applying former UCC § 9-306 provision and finding that the debtor had implied consent from a bank creditor to release cattle for sale, so long as the money received for the cattle was given to the bank); see also North Central Kansas Prod. Credit Ass'n v. Boese, 2 Kan.App.2d 231, 234, 577 P.2d 824, 827 (Kan.Ct. App. 1978) (finding that creditor directive to seller of cattle to send creditor "a check" is tantamount to creditor having expressly consented to the sale of livestock).

There is no statement, and no reference to any document, in the Undisputed Facts that even suggests that Ag Venture expressly authorized the sale of cows free of its security interest. Though a finding of implied waiver can be found in certain limited circumstances, the Montagnes have pointed to no material fact that could support a finding of an implied waiver. In re Sunrise R.V. Inc., 105 B.R. 587, 592 (Bankr. E.D.Cal. 1989) (citing cases holding that an implied waiver authorizing sale of vehicle as collateral for security interest should be found with extreme hesitancy). Diane and John Montagne highlight Ag Venture's knowledge and approval of the Diane Montagne Agreement and rely upon the Ag Venture Release as

---

[6] UCC § 9-315 is derived from former § 9-306 and has parallel provisions for the continuation of security interests in identifiable proceeds. Contrary to the former provision, however, § 9-315 explicitly requires that a creditor not only authorize disposition of the collateral, but that it specify that the such authorization permits disposition that is "free of the creditor's security interest." See § 9-315, cmt. 2.

8

the basis for their waiver argument. That is not sufficient. Based upon the record, the Court finds that Ag Venture never gave MHI authority to sell the Collateral and never waived its security interest in the Collateral, that it did not authorize or acquiesce in the disposition of the Collateral by the Debtor, and thus did not waive its security interest in the Proceeds.

Since the Court finds that Ag Venture complied with the state law requirements for creating an enforceable security interest and that none of the Montagnes' arguments attacking the validity of the Security Agreement have merit, the Court finds that Ag Venture's security interest attached to the Collateral on November 18, 2005 and has been enforceable since that date.

<u>2. Was Ag Venture's Security Interest Properly Perfected?</u>

Having determined that Ag Venture had a valid security interest brings the Court to the question of whether Ag Venture perfected its security interest in the Collateral and Proceeds.

*(a) Did Ag Venture Meet the UCC Requirements for Perfection of Its Security Interest?*

According to 9A V.S.A. § 9-308 "[e]xcept as otherwise provided in this section and § 9-309 [exceptions to filing not applicable here], a security interest is perfected if it has attached and all of the applicable requirements for perfection in sections §§ 9-310 through 9-316 have been satisfied." The applicable requirements are: (1) that the filing of a financing statement is the proper means for perfecting a security interest unless an exception to filing applies (§ 9-310)[7]; and (2) that the secured party's rights continue in proceeds after disposition of collateral subject to certain conditions (§ 9-315).[8] The Court will analyze the application of § 9-310 here, and of § 9-315 in part (e).

Ag Venture filed its UCC-1 financing statement with the Vermont Secretary of State on November 30, 2007, almost exactly two years after its security interest had attached and was enforceable. The Montagnes argue that Ag Venture's financing statement was not effective for perfecting Ag Venture's security interest. However, they have pointed to nothing in the record, and have provided no case law, to support the proposition that Ag Venture's security interest in the Collateral could not be perfected by filing a UCC-1 financing statement that complied with § 9-310. They have also presented no proof or legal basis for the Court to find that the security interest in question constitutes one of the exceptions to the general rule in § 9-310 that perfection may be accomplished by filing. Nor do the Montagnes present any proof or legal basis

---

[7] Generally, 9A V.S.A. § 9-310(a) requires that all security interests be perfected by filing a financing statement unless the transaction fits within a short list of specified exceptions. E.g. <u>In re Yantz,</u> 2004 WL 1397580, * 2 (Bankr. D.Vt. June 22, 2004). The list of statutory exceptions includes security interests: (1) per § 9-302(1)(d) for consumer goods; (2) per § 9-304(1) for collateral subject to temporary automatic perfection; and, (3) per § 9-305 for security interests perfected by possession, amongst others. <u>See</u> <u>Greg Rest. Equip. & Supplies, Inc. v. Valway</u>, 144 Vt. 59, 63, 472 A.2d 1241, 1243 (1984) (finding that when none of the Vermont UCC exceptions allowing for the perfection of a security interest in collateral in other than by filing apply, filing a financing statement is the correct method for perfection).

[8] There are additional requirements for perfection which the Court finds inapplicable: (1) that the means of perfection adhere to applicable state or federal statutes, regulations and treaties (§ 9-311); (2) that the means of perfection adhere to special provisions for certain classifications of collateral (§ 9-312); (3) that the means of perfection adhere to the provisions for possession and delivery (§ 9-313); (4) that the means of perfection adhere to the provisions for perfection by control (§ 9-314); and, (5) that continued perfection exists following a change in governing law subject to certain conditions (§ 9-316).

to support a finding that Ag Venture's filing of the UCC-1 financing statement fails to satisfy any of the other perfection requirements set out in § 9-308. The Court finds that the filing of a financing statement was the appropriate way for Ag Venture to perfect its security interest in the Collateral.

UCC § 9-502 sets out the minimum informational requirements that a financing statement must include to be effective. Except for "as-extracted collateral or timber," a financing statement is sufficient to perfect a security interest as long as it: (1) states the name of the debtor; (2) states the name of the secured party or a representative of the secured party; and (3) describes the collateral covered by the financing statement. 9A V.S.A. § 9-502. Additional factors bearing on the effectiveness of a filing are set out in § 9-516 which states that: "[e]xcept as otherwise provided in subsection (b), communication of a record to a filing office and tender of the filing fee or acceptance of the record by the filing office constitutes filing." 9A V.S.A. § 9-516(a).[9] Ag Venture's financing statement was filed and properly indicates that the name of the debtor is "Montagne Heifers, Inc." and the name of the secured party is "Ag Venture." It sets forth Ag Venture's mailing address (matching the address set out in the Security Agreement), and describes the collateral covered by the filing to include two categories relevant here: "farm proceeds" and "livestock." The address provided in the financing statement for the debtor is "1503 Kellogg Road" (doc. #119-2, Ex. 7).

Consequently, the Court finds that Ag Venture met all the applicable statutory requirements under §§ 308 and 9-502 for perfection of its security interest.

### (b) Is the Financing Statement Fatally Flawed Due to an Insufficient Collateral Description?

Notwithstanding the fact that Ag Venture's financing statement met all the statutory requirements, Diane and John Montagne assert that Ag Venture's financing statement is invalid because it fails to describe the collateral in sufficient detail (doc. ## 70, p. 2, 136, p. 9). Like the parallel argument concerning the alleged inadequacy of the collateral description in the Security Agreement (see Part 1(b) supra), this argument is without merit. A financing statement is intended merely to put creditors on notice that further inquiry is prudent. 9A V.S.A. § 9-402; Northern Com. Corp. v. Friedman (In re Leichter), 471 F.2d 785, 787 (2d Cir. 1972) (finding that a financing statement is designed to provide "the minimum information necessary to put any searcher on inquiry") (citation omitted). With respect to the collateral description in a financing statement, this Court has held that "[a] general description of collateral in the financing statement is sufficient since it is designed merely to put creditors on notice that there is a need for further investigation as to the property covered by the security agreement." In re Kelton Motors, Inc. 117 B.R. 87, 95 (Bankr. D.Vt. 1990) (quoting In re Malzac, 1974 WL 21673 (Bankr. D.Vt. May 24, 1974)).

---

[9] The statute goes on to say, however, that filing does not occur with respect to a record that a filing office refuses to accept for certain reasons. See § 9-516(b).

10

Ag Venture's financing statement describes Ag Venture's security interest to cover collateral including "livestock" and "proceeds." More detail is not required. Ag Venture's financing statement includes the minimum information necessary to meet the intended purpose of putting parties on notice of its interest and thus the Montagnes' argument to the contrary is overruled

*(c) Is Ag Venture's Financing Statement Fatally Flawed Because of an Incorrect Address?*

John and Diane Montagne also assert that Ag Venture's financing statement must be deemed ineffective because it fails to include MHI's correct address (doc. ## 70, p. 2, 136, p. 9).  UCC § 9-506, however, provides broad leeway to the filer, stating that "[a] financing statement substantially satisfying the requirements of this part [of Article 9] is effective, even if it has minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading." 9A V.S.A. § 9-506.  The courts have found that an incorrect address, serving only a minimal purpose in filing, does not constitute a seriously misleading error or omission.   For example, in Hergert v. Bank of the West (In re Hergert), 275 B.R. 58, 68 (Bankr. D.Idaho 2002), the Court found

> [E]rrors in name or address on the UCC-1 financing statement cannot be viewed as rendering the filing of that statement ineffective to perfect the security interest in farm products as of the Effective Date. The structure of New Article 9 makes the absence of a name or address grounds for the filing officer to reject the statement, but if accepted for filing it will be effective. Errors in the secured party's address…are, by virtue of the structure of New Article 9, not seriously misleading, and do not vitiate the effectiveness of the filing.

Id. at 68. Additionally, the Official Comments to § 9-516 of the UCC give examples of what sorts of defects render a financing statement ineffective and makes clear this is not one of them. It states "[a]though some of these grounds would also be grounds for rendering a filed record ineffective (e.g., when an initial financing statement does not provide a name for the debtor), many others would not be (e.g., when an initial financing statement does not provide a mailing address for the debtor or secured party of record)." 9A V.S.A. § 9 -516, cmt. 3.  Based upon these authorities, even if Ag Venture had used an incorrect address on its financing statement, the Court would find that the essential requirements of § 9-502 were met.  Therefore, the Court concludes that Ag Venture's financing statement is sufficient and effective, and rejects the Montagnes' argument that the financing statement is ineffective based upon an allegedly incorrect address.

*(d) Did Ag Venture Timely Perfect its  Security Interest in the Collateral?*

Diane and John Montagne also argue that, under Vermont law, Ag Venture's window of opportunity to perfect its security interest in the Collateral closed when Ag Venture failed to perfect within 20 days of the attachment of its security interest (doc. # 47, pp. 2-3), and thus it categorically lacks a perfected security interest.  Ag Venture asserts that its delay in perfecting did not invalidate its security interest (doc. ## 60, p. 5, 119 pp. 5-6).  Ag Venture is correct.

Again, the Montagnes' argument is based on an erroneous premise that Ag Venture claims a purchase-money security interest ("PMSI") in the livestock. Ag Venture claims nothing more than a general security interest (doc. # 60-1, ¶ 5).[10] While it is true that, generally, a purchase-money security interest must be perfected within 20 days, this short time-frame does not apply to the perfection of general security interests.[11] Compare 9A V.S.A § 9-308 and § 9-324(a). Since Ag Venture does not assert a PMSI in the Collateral, the Montagnes' argument is entirely inapposite to the instant cross-motions.[12] Ag Venture's filing of a financing statement outside the 20-day period is not a basis for finding Ag Venture's security interest to be unperfected. Ag Venture timely perfected its general security interest in the Collateral.

### (e) Did Ag Venture's Post-Sale Perfection of its Security Interest in the Collateral Result in Ag Venture Having a Perfected Security Interest in the Proceeds?

Although not cogently articulated by the Montagnes, the most critical question presented with respect to the validity and scope of Ag Venture's perfected security interest, under the unusual facts presented here, is whether Ag Venture's perfection of its security interest in the Collateral, after the Collateral was sold, effectively perfected its security interest in the Proceeds (doc. ## 119-1 ¶¶ 12, 17, 140, ¶¶ 12, 17). The UCC addresses this point and provides the statutory basis for a three step analysis. First, 9A V.S.A. § 9-315 provides that a security interest "continues in collateral notwithstanding sale, lease, license, exchange, or other disposition" unless some provision of Article 9 provides an exception to this general rule. 9A VSA § 9-315(a)(1). It is also well-established that a security interest attaches to the proceeds of the collateral if the security interest in the original collateral was perfected. See (In re La Victoire Drilling & Blasting, Inc.), 2005 WL 1563439 at * 6 (Bankr. D.Vt. June 28, 2005) (finding that a perfected security interest in drilling equipment attaches to the proceeds from the sale of that equipment); see also Aircraft Trading Servs., Inc. v. Braniff, Inc., 819 F.2d. 1227, 1233 (2d Cir. 1987) (containing frequently-cited language that perfected security interest in collateral continues in proceeds after the sale of the collateral).

Second, the UCC unequivocally specifies that a perfected security interest attaches to and continues in proceeds where the proceeds are "identifiable." 9A V.S.A. §§ 9-315(a)(2), and 9-315(c). This Court has found that it is "well-established that a security interest attaches to the identifiable proceeds of collateral." In re LaVictoire Drilling and Blasting, 2005 WL 1563439 at * 6. That understanding comports with district court interpretations of former UCC § 9-306 (the predecessor to UCC § 9-315). See, e.g., Fleet Capital

---

[10] A PMSI offers a lienholder on goods, including livestock, several benefits. One of those benefits is that if perfection occurs within 20days of attachment, perfection relates back to the date of attachment, superseding any intervening perfected security interests. See, 9A V.S.A. § 9-324.

[11] Even with respect to a PMSI, § 9-324 cmt. 3 makes clear that the 20-day period is a "grace period," not a deadline. 9A VSA § 9-324 cmt. 3

[12] The courts have consistently held that acts which are insufficient to satisfy the meticulous prerequisites for creation of a PMSI may nevertheless be sufficient to create a general security interest in the collateral when a financing statement is properly filed. Greg Rest. Equip. & Supplies, Inc. v. Valway, 144 Vt. 59, 67, 472 A.2d 1241, 1245 (1984) (noting that when an amended PMSI filing occurs outside the 10 day grace period (now 20 days in the current UCC) for PMSI perfection is the creditor has at best only a general security interest in the collateral).)

12

Corp. v. Yamaha Motor Corp.,U.S.A., 2002 WL 31174470 at * 35 (S.D.N.Y. September 26, 2002) (noting that § 9-306 a perfected security interest in collateral resulting in identifiable cash proceeds from the disposition of that collateral remains perfected in the identifiable proceeds). In this adversary proceeding, the undisputed material facts leave no question that the Proceeds are identifiable and derive from the disposition of the Collateral. Undisputed Fact # 10, supra.

Third, the UCC sets no time limit, and the Montagnes have cited no case law that purports to impose a time limit, within which Ag Venture was required to perfect its security interest in either the Collateral or the Proceeds. Although there is no Vermont case law on this point, case law from another jurisdiction has interpreted the same pertinent provision of the UCC. In Heights v. Citizens Nat. Bank, 463 Pa. 48, 342 A.2d 738 (1975), the Pennsylvania state court held under prior § 9-306 that the UCC "does not impose a duty upon a secured creditor to perfect his security interest, nor does it impose any time period within which perfection must be accomplished." Id. at 58, 342 A.2d at 742.

The Court has previously found that Ag Venture properly perfected in the original collateral – the livestock - on November 30, 2007.  Therefore, Ag Venture's security interest in Proceeds of that Collateral was likewise perfected as of that date.

The Montagnes have presented no argument, citation to case law or statute that would support a determination that Ag Venture's perfected security interest in the Proceeds was ever extinguished.

After due consideration of the Vermont UCC, the undisputed material facts, and the arguments of the Parties, the Court finds that Ag Venture had a perfected security interest in the Proceeds even though the Collateral had been sold before Ag Venture perfected its security interest because: (i) there was no date by which Ag Venture was required to perfect its security interest; (ii) Ag Venture had a sufficient and properly filed financing statement that perfected its security interest in the Collateral as of November 30, 2007; and (iii) the Proceeds were unequivocally traceable to the Collateral and identifiable as of November 30, 2007. See 9A VSA § 9-315(a)(1); doc. # 60, Ex. C. Thus, the fact that Ag Venture did not perfect its security interest in the Collateral until after the Collateral was sold does not in any way diminish the effectiveness of its perfected security interest in the Proceeds.

In sum, based on the Undisputed Facts and applicable law, and in the absence of any persuasive argument by the Montagnes to the contrary, the Court finds that Ag Venture had a valid security interest in the Collateral and Proceeds, filed a sufficient and valid financing statement identifying both the cows and the sale proceeds allocable to those cows, had properly perfected its security interest in the Collateral effective as of November 30, 2007, and consequently had a perfected security interest that extended to the Proceeds as of that date.  That perfected security interest must now be assessed against any competing security interest to determine whether Ag Venture has a first priority security interest in the Proceeds.

3.   Which Creditor Holds the First Priority Perfected Security Interest in the Proceeds?

John Montagne asserts he has a perfected security interest in the Proceeds that is superior to any Ag Venture security interest (doc. # 47, p. 3). Ag Venture counters that its perfected security interest has priority over any security interest of Diane or John Montagne because its perfection occurred "first in time" (doc. # 119, pp. 6,7). The Undisputed Facts show that Ag Venture perfected its security interest in the Collateral on November 30, 2007, and John Montagne perfected his security interest in the Collateral on December 4, 2007. Undisputed Facts ## 11, 12. The thrust of the Montagnes' argument is that John Montagne's security interest has "first in time" priority because although his security interest attached after Ag Venture's security interest attached: (1) he perfected within 20 days of when his security interests attached to the Collateral, (2) that perfection relates back to the date his security interest attached, and (3) the date his security interest had attached was earlier than the date Ag Venture perfected its security interest (doc. # 47, p. 5). The law does not support this argument.

Section 9-322 sets out the priorities among competing secured creditors who claim security interests in the same collateral. This Court has applied this statute to competing perfected security interests, holding that as between two valid perfected security interests, the priorities are determined based on the "first in time, first in right" rule. <u>Midlantic Natl. Bank North, N.A., v. Borg-Warner Acceptance Corp</u>. (<u>In re Mayo)</u>, 112 B.R. 607, 646 (Bankr. D.Vt. 1990) (interpreting § 9-312 the predecessor to current § 9-322). The statute provides in relevant part:

> (a) Except as otherwise provided in this section, priority among conflicting security interests and agricultural liens in the same collateral is determined according to the following rules:
>> (1) Conflicting perfected security interests and agricultural liens rank **according to priority in time of filing or perfection**. Priority dates from the earlier of the time a filing covering the collateral is first made or the security interest or agricultural lien is first perfected, if there is no period thereafter when there is neither filing nor perfection.
>> (2) A perfected security interest or agricultural lien has priority over a conflicting unperfected security interest or agricultural lien.
>> (3) The first security interest or agricultural lien to attach or become effective has priority if conflicting security interests and agricultural liens are unperfected.

9A V.S.A. § 9-322(a) (emphasis added). As found above, Ag Venture properly perfected its security interest in the Collateral on November 30, 2007 by filing a financing statement. John Montagne filed a financing statement less than a week later, on December 4, 2007, to perfect his security interest in, <u>inter alia</u>, the same Collateral. It appears the Montagnes are arguing that John Montagne has priority over Ag Venture in the Collateral based on his right to a PMSI preference. They contend that John is entitled to PMSI priority (<u>see</u> 9A VSA § 9-324) because: (1) John filed his financing statement within 20 days from the date his security interest attached, (2) his security interest relates back to November 20, 2007, and (3) his perfection date is thus approximately two weeks earlier than Ag Venture's, and (4) therefore his perfected security interest has priority over Ag Venture's perfected security interest.

14

In order to receive the benefit of relation back perfection, however, John Montagne's security interest must satisfy the criteria for creating a PMSI. See 9A V.S.A. § 9-324(a). Section 9-103 determines whether a creditor holds a PMSI in goods. With some distinctions not applicable here, a security interest in goods is a purchase-money security interest to the "extent that the goods are purchase-money collateral with respect to that security interest." 9A V.S.A § 9-103. Purchase money collateral is defined as "goods or software that secures a purchase-money obligation incurred with respect to that collateral". In turn, purchase-money obligation means "an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used." 9A V.S.A. § 9-103(a)(1-2).

John Montagne's security interest has its genesis in a pre-existing obligation: it secures the $100,000 note Michael Montagne executed in connection with his purchase of John Montagne's shares in MHI. The security interest attached on November 20, 2007, upon the execution of the security agreement and promissory note. See § 9-203(a). John Montagne gave value by conveying his shares in MHI to Michael Montagne, Michael Montagne signed (on behalf of MHI) a security agreement in favor of John Montagne, and the debtor had rights in the collateral identified in the security agreement. The collateral Michael Montagne pledged to John Montagne to secure this share purchase obligation included "farm products" and "proceeds thereof" (as well as equipment and other collateral not germane to the cross-motions).[13] Undisputed Fact, # 8. On December 4, 2007, John Montagne perfected his security interest by filing a UCC-1 financing statement. 9A V.S.A. § 9-310. Hence, it is true that John Montagne perfected his security interest in the Collateral within 20 days of attachment, as required to perfect a PMSI. However, that does not convert a general security interest into a PMSI. John Montagne's argument that this prompt perfection triggers a relation back right, effectively giving him a security interest deemed perfected as of the date of attachment misapprehends the law. John Montagne did not have a PMSI in the (livestock) Collateral because the obligation to repurchase farm shares on which his security interest arose was not one that was incurred to enable Michael Montagne to acquire rights in that same (livestock) Collateral. § 9-103. Rather, the debt in question was incurred for the purchase of stock. John Montagne, like Ag Venture, therefore has a general (non-purchase-money) security interest in the Collateral and cannot benefit from the PMSI's relation back perfection priority.

Accordingly, the lien priority between Ag Venture and John Montagne is determined by the date of filing since that date was the date of perfection for each creditor's security interest. The analysis is one of "first in time, first in right." Ag Venture filed its financing statement on November 30, 2007. John Montagne filed his financing statement on December 4, 2007. Hence, Ag Venture has priority over John Montagne in the Proceeds because it was first to perfect its security interest in the Collateral.

---

[13] "Farm products" include goods such as livestock under 9A V.S.A. § 9-102(34).

Diane Montagne does not squarely assert that she has a perfected interest or any secured interest in either the Collateral or the Proceeds. Instead, she relies on the invalidity of Ag Venture's claims, and/or the priority of John Montagne's interests, to support her right to retain the Proceeds (doc. # 136, p. 8). To create a valid and enforceable security interest, there must be, at a minimum, a written security agreement or authenticating event that describes the collateral and is signed by the debtor. 9A V.S.A. § 9-203. Section 9-203 operates in the "manner of a Statute of Frauds. Its function is to minimize disputes about the existence of an agreement." See J. White and R. Summers, Uniform Commercial Code, at 967-68 (3rd. ed.1988); Setze, 157 Vt. at 434, 600 A.2d at 306 (in the absence of compliance with Article 9 documentation requirements, the Court cannot conclude that the party had a valid and enforceable security interest). Nothing in the Undisputed Facts refers to any security interest Diane Montagne might have in the Collateral or Proceeds.[14] The Diane Montagne Agreement is the only document Diane Montagne relies upon to support her rights to the Proceeds and it does not mention the Collateral or Proceeds at issue in these cross-motions (doc. # 251, Ex. 6). Nor are there any other "authenticating events" identified in the summary judgment record that might take the place of a security agreement. See 9A V.S.A. § 9-203 (discussing authenticating events). Hence, Diane Montagne has no security interest in the Collateral or Proceeds and cannot compete with Ag Venture for the superior claim to the Proceeds.

Based upon the forgoing, the Court finds that John Montagne's perfected security interest in the Collateral and the Proceeds is subordinate to that of Ag Venture, and that Diane Montagne has no security interest in the Collateral or Proceeds.

## V. CONCLUSION

For the reasons set out above, the Court finds the facts material to the question of which party has the first position perfected security interest in the Proceeds are not in dispute and that summary judgment on that issue is proper. The Court further finds that Ag Venture has a properly perfected security interest in the Proceeds and that John Montagne's perfected security interest in the Proceeds is subordinate to that of Ag Venture. The Court grants Ag Venture's cross-motion for summary judgment (doc. # 119) as to the validity and priority of its perfected security interest in the Collateral and Proceeds over any interest of Diane or John Montagne; and denies Diane and John Montagne's motion for summary judgment (doc. # 47) on that issue.

The Court has considered all of the arguments of the Parties; to the extent any argument is not specifically addressed herein it is because the Court has found it to be without merit.

---

[14] Moreover, Diane Montagne cannot rely upon the financing statement covering the Collateral that was filed in her name (Undisputed Fact, 7) because it is well-established that "a financing statement cannot serve as a security agreement nor may a description contained in a financing statement have the effect of enlarging the security agreement so as to create a security interest in collateral not described therein." In re Kelton Motors, Inc., 117 B.R. at 90; See also, Mitchell v. Shepherd Mall State Bank, 458 F.2d 700, 704 (10th Cir. 1972) (assessing use of security agreement and financing statement documentation, and finding that while descriptions of collateral may overlap, the documents serve fundamentally different functions).

This memorandum of decision constitutes this Court's findings of fact and conclusions of law.

August 13, 2009                                              Colleen A. Brown
Rutland, Vermont                                       United States Bankruptcy Judge