Formatted for Electronic Distribution                                                                                                          For Publication

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT**

_____

**Michael F. Montagne,**
                **Debtor-in-Possession.**

_____

**Ag Venture Financial Services, Inc.,**
                **Plaintiff,**

v.

**Michael F. Montagne,** *et al.*,
                **Defendants.**

_____

**Chapter 12 Case
# 08-10916**

Filed & Entered
On Docket
September 15, 2009

**Adversary Proceeding
# 08-1023**

*Appearances:*    Lisa Chalidze, Esq.                        Gary Franklin, Esq. and
                         *for Diane Montagne*               Douglas Wolinsky, Esq.
                                                                 *for Ag Venture Financial
                                                                  Services, Inc.*

**MEMORANDUM OF DECISION
<u>GRANTING IN PART AND DENYING IN PART AG VENTURE FINANCIAL SERVICES, INC.'S
MOTION FOR SUMMARY JUDGMENT AND
DENYING DIANE MONTAGNE'S CROSS-MOTION FOR SUMMARY JUDGMENT
ON THE CONVERSION OF COLLATERAL CAUSE OF ACTION</u>**

        In its complaint, Ag Venture Financial Services, Inc. ("Ag Venture") asserted fraudulent transfer and conversion causes of action against Michael Montagne and Diane Montagne (doc. # 30, Counts IX-XII) based on "the Montagne Heifers Transfer to Diane Montagne" of $240,000 (<u>id.</u>, ¶ 23). These funds were the proceeds (the "Proceeds") from the sale of certain livestock that was collateral (the "Collateral") that Montagne Heifers Inc. had pledged to Ag Venture to secure a $457,000 loan. Ag Venture and Diane Montagne (the "Parties") have each moved for summary judgment on the fraudulent conveyance and conversion claims (doc. ## 250, 272). Following this Court's determination that Ag Venture possessed a perfected first priority security interest in the Collateral and its Proceeds (doc. # 293 amended at doc. # 312), this decision addresses the conversion claim in Ag Venture's complaint against Diane Montagne (Count X).[1] The issue presented is whether Ag Venture is entitled to judgment, as a matter of law, on the conversion cause of action against Diane Montagne as a result of her acceptance and retention of Proceeds generated by the sale of Ag Venture's Collateral.

        For the reasons set forth below, the Court finds that although Ag Venture has established the elements of conversion, the record fails to set forth sufficient undisputed facts material to the defense

---

[1] Fraudulent transfer claims contained in the same cross-motions will be addressed in a separate decision.

1

Diane Montagne has raised under Vermont UCC § 9-332. Moreover, the Parties have not briefed that issue sufficiently for this Court to find either party entitled to judgment as a matter of law. Therefore, the Court grants Ag Venture's motion for summary judgment to the extent that it has established the elements of conversion, but denies it in part since the Court cannot rule that Ag Venture is entitled to judgment as a matter of law on the conversion claim until the defense under Vermont UCC § 9-332 is adjudicated. The Court denies Diane Montagne's cross-motion for summary judgment on the conversion claim, subject to a determination on the merits of her defense.

## I. JURISDICTION

This Court has jurisdiction to enter a final order pursuant to 28 U.S.C. §§ 157(b)(2)(K) and 1334.

## II. PROCEDURAL HISTORY

On March 21, 2008, Ag Venture filed a multi-count complaint in Vermont state court against, inter alia, Michael Montagne, Diane Montagne, John Montagne, and Montagne Heifers, Inc. ("MHI") (doc. # 30). The complaint set out two causes of action against Diane Montagne individually: fraudulent transfer and conversion. On October 2, 2008, Michael Montagne filed a petition for relief under chapter 12 of the Bankruptcy Code, and promptly removed the state court litigation to this Court. On April 17, 2009 and May 8, 2009, the Parties filed cross-motions for summary judgment on the conversion and fraudulent transfer counts (doc. ## 250 and 272). They subsequently filed other documents in support of these cross-motions (see doc. ## 251, 274, 278, 279, 292).

## III. UNDISPUTED MATERIAL FACTS

Based upon the extensive record in this case, and in the absence of a stipulation setting forth the undisputed material facts, the Court finds the following facts to be material and undisputed (hereinafter the "Undisputed Material Facts"):[2]

1. Ag Venture is a lender that has made multiple loans to Montagne Heifers Inc., a dairy farm operation (doc. ## 251 ¶¶ 3, 4, and 274 ¶¶ 3, 4). Michael Montagne (the Debtor) is the owner and president of MHI (doc. ## 251, ¶ 2, and 274, ¶ 2). Diane Montagne is the estranged spouse of Michael Montagne and was the former treasurer of MHI (doc. ## 251, ¶¶ 2, 8, 274 ¶¶ 1, 2, 8). The Montagnes and Ag Venture have had a business relationship with each other for over ten years (doc. ## 251, ¶ 3, and 274, ¶ 3).

2. On November 18, 2005, Ag Venture made a $457,000 loan (Loan # 538) to MHI ("the Borrower"), so that MHI could "purchase livestock" (doc ## 119-1 ¶ 1, 140 ¶ 1).

3. On November 18, 2005, MHI executed a commercial promissory note (the "Note") and a security agreement (the "Security Agreement"), in favor of Ag Venture, signed by Michael Montagne, Diane Montagne, and John Montagne (doc. ## 251 ¶ 4, 274 ¶ 4). Diane Montagne signed both docu-

---

[2] In most instances, two references are cited: the first is from Ag Venture's papers and the second is from Diane Montagne's papers.

ments as treasurer of MHI as well as in her individual capacity (doc. # 274, ¶ 4). In both the Note and Security Agreement, the collateral was described as "livestock" and "proceeds" (doc. ## 251, Ex. 4, 5, 140 ¶ 5). The Note provided that an "event of default" included the "sale or encumbrance of or to any property constituting Collateral" and "default or breach of any condition contained herein or in any agreement. . . securing or otherwise relating to any Collateral for the Obligations" (doc. # 60, Ex. B, ¶ 2.1(d), (e)). The Remedies section of the Note provided that "All rights and remedies of the Lender are cumulative and are not exclusive of any rights or remedies provided by laws or any other agreement, and may be exercised separately or concurrently." Id., ¶ 2.2. The Sale of Collateral section of the Security Agreement provided that:

> [a]ll proceeds of any sale, consignment or transfer shall be made immediately available to Lender in a form jointly payable to Borrowed and Lender and that all accounts receivable and other non-cash proceeds shall be endorsed, assigned and delivered immediately to Lender as security for the indebtedness.

(doc. # 60, Ex. C, ¶ 5C). Among the listed "events of default" under the Security Agreement was "Breach by Borrower of any warranty or covenant or in any other agreement, document or instrument between Borrower and Lender." Id. ¶ 8B. The Security Agreement further provided that "upon the occurrence of any event of default. . . Lender shall have all rights and remedies provided by law, including those of a Secured Party under the Uniform Commercial Code, in addition to the rights and remedies provided herein or in any other agreements between Borrower and Lender." Id. ¶ 9.

4. In October 2006, Diane Montagne separated from Michael Montagne (doc. ## 251, ¶ 8, 274, ¶ 8).

5. The separation agreement between Michael Montagne and Diane Montagne, dated December 2006 (the "Diane Montagne Agreement"), is a typed one-page document with several handwritten interlineations that describes a division of assets between Diane Montagne and Michael Montagne. Pursuant to this agreement, Diane Montagne would receive money and certain parcels of land from Michael Montagne. Nowhere in this agreement is there any reference to Diane having a right to livestock or the proceeds from the sale of livestock (doc. ## 251, Ex. 1, pp. 2-3, and Ex. 6; 274, ¶ 15).

6. On September 17, 2007, pursuant to the Diane Montagne Agreement, Ag Venture released Diane Montagne from liability for MHI's debt to Ag Venture (the "Release"). The Release applied to multiple loan documents and promissory notes, including Loan # 538 (doc. # 47-1 ¶ 1, doc. # 60-1 ¶ 1; doc.# 251 Ex. 8). Thomas Bellevance, Ag Venture's president, signed the document on behalf of Ag Venture. The document did not refer to any security agreements that Michael Montagne or MHI had executed in favor of Ag Venture, nor did it set forth any waiver of Ag Venture's security interest in livestock or sale proceeds. Id.

7. On November 24, 2007, MHI sold a herd of milk cows for $500,000 (doc. ## 47-1, ¶ 3, 119-1, ¶¶ 12, 13).

8. On November 28, 2007, Diane Montagne was given a check that was payable to MHI and Diane Montagne (see doc. ## 251, Ex. 15, 274, ¶ 32), in the amount of $240,000, which was part of the proceeds from that sale of cows (doc. ## 251, Ex. 15, 274, ¶ 31). The check was from David Rama, Inc., drawn on the Delaware National Bank of Delhi (doc # 251, Ex 15, p. 74). This check was deposited into the client trust account of Mrs. Montagne's counsel on December 3, 2007 (doc. # 274, ¶ 32).

9. Diane Montagne has not returned, or paid over, to Ag Venture any portion of this $240,000.[3]

## IV. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is proper if the record shows no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056. A genuine issue exists only when "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The substantive law identifies which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. See Anderson, 477 U.S. at 247. Factual disputes that are irrelevant or unnecessary are not material. See id. The court must view all the evidence in the light most favorable to the nonmoving party and draw all inferences in the nonmovant's favor. See Cruden v.. Bank of New York, 957 F.2d 961, 975 (2d Cir.1992). In making its determination, the court's sole function is to determine whether there is any material dispute of fact that requires a trial. See Anderson, 477 U.S. at 249; see also Palmieri v. Lynch, 392 F.3d 73, 82 (2d Cir.2004); Delaware & Hudson Ry. Co. v. Conrail, 902 F.2d 174, 178 (2d Cir.1990).

### B. Applicable State Statutes and the Common Law on Conversion

Property interests are creatures of state law and must be construed in accordance with state law in bankruptcy cases. Butner v. U.S., 440 U.S. 48, 54 (1979). Uniform treatment of property interests by both state and federal courts serves to reduce uncertainty, discourage forum shopping, and prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy." Id. at 55 (quoting Lewis v. Mfrs. Nat'l Bank, 364 U.S. 603, 609 (1961)). The Court therefore turns to state law to assess the merits of Ag Venture's conversion cause of action and Diane Montagne's defense.

---

[3] At a hearing on September 1, 2009, the Court stated that it was otherwise prepared to issue its decision on the cross-motions for summary judgment on the conversion cause of action, but needed to know whether it was an undisputed fact that Diane Montagne had not returned any of the $240,000 to Ag Venture. Ag Venture's counsel declared on the record that this was a true statement. Diane Montagne's counsel asked if she could have a couple of days to speak with her client and review her file before she answered the question. In an affidavit filed on September 5, 2009, Diane Montagne stated, "I believe that I have not released any money to Ag Venture since receiving the $240,000" (doc. # 316, ¶ 7).

4

In Vermont, to establish a claim for conversion, "the owner of property must show only that another has appropriated the property to that party's own use and beneficial enjoyment, has exercised dominion over it in exclusion and defiance of the owner's right, or has withheld possession from the owner under a claim of title inconsistent with the owner's title." P.F. Jurgs & Co. v. O'Brien, 160 Vt. 294, 299, 629 A.2d 325, 329 (1993). In Montgomery v. Devoid, 181 Vt. 154, 915 A.2d 270 (2006), the Vermont Supreme Court asserted that "[t]he key element of conversion, therefore, is the wrongful exercise of dominion over the property of another," id. at 160, 915 A.2d at 275, and commented that its definition of the tort of conversion was "consistent with" the definition found in the Restatement (Second) of Torts § 222A(1) (1979) (the "Restatement"): "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." Id. at 160, 915 A.2d at 275 (quoting Restatement § 222A(1)). The Restatement cites several factors to be applied in "determining the seriousness of the interference [in property rights] and the justice of imposing liability on the interfering party,"[4] including:

> (a) the extent and duration of the actor's exercise of dominion or control; (b) the actor's intent to assert a right of control; (c) the actor's good faith; (d) the extent and duration of the resulting interference with the other's right of control; (e) the harm done to the chattel; (f) the inconvenience and expense caused to the other.

Id. at 161, 915 A.2d. at 276 (quoting Restatement § 222A). "No one factor is always predominant in determining the seriousness of the interference, or the justice of requiring" full payment for the converted property, although courts consider "[n]ot only the conduct of the defendant, but also its consequences." Id. (quoting § 222A, cmt. d.). Additionally, the factors listed here "are not intended to be exclusive." Restatement § 222A, cmt. d.

**C. Application of the Pertinent State Law to the Undisputed Material Facts**

  1. The Parties' Positions Regarding the Elements of Conversion

Ag Venture claims that, as the secured party, it had an immediate right to possession of the Proceeds from the November 2007 sale of MHI livestock, and that Diane Montagne's exercise of dominion over the Proceeds was an act in defiance of that right (doc. ## 30, p. 17; 250, pp. 5-6), thereby satisfying the conversion criteria established by Vermont common law. See P.F. Jurgs & Co., 160 Vt. at 299, 629 A.2d at 329. Ag Venture further asserts that Diane Montagne's conduct caused it harm, and caused it to incur costs, sufficient to constitute a conversion of its property (doc. # 30, p. 17). Diane Montagne disputes Ag Venture's right to pursue a conversion judgment, arguing that Ag Venture had no

---

[4] The Restatement commentary explains that the modern action for the tort of conversion is descended from the venerable common law action of trover, which was a remedy against the finder of lost goods who refused to return them to the rightful owner and "converted" them to his own use. Restatement § 222A, cmt. a. Courts extended trover to the dispossession of goods and possession by other than finders and, later, to interference with the possession of chattel or the right to its immediate possession. Id. Under the Restatement analysis, the measure of damages is the full value of the chattel at the time and place of the tort. Id.

5

ownership interest in the Proceeds and that lienholders cannot state a cause of action for conversion (doc. # 292, pp. 14-16). Ms. Montagne also argues that 9A V.S.A. § 9-332 serves as a defense to conversion: since the Proceeds were in the form of money, Ag Venture can only recover the Proceeds if it proves that she colluded with the Debtor to violate Ag Venture's rights, and it has not done so (doc. # 292, p. 16).

This Court has already determined that Ag Venture had a first position perfected security interest in the Collateral and that Ag Venture never waived its security interest in the Proceeds (see doc. # 293, 312). Accordingly, it will apply those findings and the pertinent law regarding conversion to the Undisputed Material Facts to determine if summary judgment is appropriate on Ag Venture's conversion claim against Diane Montagne.

2. Can Ag Venture, as Lienholder, Bring a Claim for Conversion?

In response to Diane Montagne's argument that, as a lienholder, Ag Venture is not an "owner" of the Proceeds and hence cannot establish a claim of conversion against her (doc. # 292, pp. 14-15), Ag Venture asserts that it is entitled to pursue a conversion claim as to the Proceeds based upon the rights it has under the Security Agreement executed by MHI and the three Montagnes (doc # 250, p. 6). Ag Venture is correct. The Vermont Supreme Court has recognized that, in addition to actual ownership, a right to "immediate possession" of property is a valid basis for a claim sounding in conversion. Miller v. Merchants Bank, 138 Vt. 235, 239 415, A.2d 196, 199 (1980) ("To make out a claim for conversion . . . plaintiff must show an immediate right to possession"). Additionally, contrary to Diane Montagne's arguments, it is well-settled in Vermont that the unauthorized sale of collateral subject to a security agreement may constitute conversion and that lienholders have a right of action for conversion in that circumstance. In Eastman v. Pelletier, 114 Vt. 419, 47 A.2d 298 (1946), the lienholder brought a conversion action after the proceeds check it had been given was returned for insufficient funds. The Vermont Supreme Court held that the "unauthorized sale of cattle covered by lien note was a conversion and gave lienholder a right of action in tort against the debtor." Id. at 424, 47 A.2d at 302. Similarly, in Burnham v. Marshall, 56 Vt. 365, 1883 WL 6969 (1883), a secured creditor demanded that defendants turn over collateral and proceeds, in the form of bees and the honey they produced, on which the secured creditor maintained a lien, and prevailed in its conversion claim. There, the Vermont Supreme Court ruled that the defendant had exercised dominion over the collateral, under a claim of ownership, and by his unauthorized sale of the property and taking the proceeds for his own use, he was guilty of conversion. Id. at * 1.

Moreover, the Vermont Supreme Court has long held that when a contract or agreement provides that a party has a right to immediate possession should some circumstance articulated in that contract come to pass, the party with that right may maintain a conversion action. In other words, the terms of the contract between the parties define the (secured) creditor's rights. For example, in Vermont Acceptance Corp. v. Wiltshire, 103 Vt. 219, 153 A. 199 (1931), the Court held:

6

> We think that on the general principles applying to the rights of a creditor, who retains or receives a lien on personal property to secure his debt, and of the debtor, the defendant is liable. In such a case the right of the debtor to the possession and use of the property, except as the same may be regulated by statute, is a matter of contract, express or implied. If the debtor, without the consent of the creditor, and in violation of his agreement, makes such an intentional and willful use or disposition of the property that it is lost or destroyed or passes from his possession and control so that he cannot comply with a demand of the creditor to deliver the property, he is guilty of a conversion of it, and is liable in an action of trover.

Id., 153 A. at 202. Even earlier, the Court had ruled on the right to immediate possession in a case involving bailment, which also supports Ag Venture's position. In Wilmarth v. Pratt, 56 Vt. 474, 474, 1884 WL 6570 (1884), the Court stated "But when in violation of his contract he sold the property, without right, his acts became tortuous, his rights were terminated, and the plaintiff became entitled to immediate possession [of the property]. . ."

Whether Ag Venture as a lienholder (rather than an owner) can succeed on its conversion claim thus depends on whether the legal rights established in the Note and Security Agreement included Ag Venture's right to immediate possession of the Proceeds upon sale of the Collateral. See United States v. Fullpail Cattle Sales, Inc., 640 F. Supp. 976, 980 (E.D.Wisc. 1986) ("[T]he viability of the plaintiff's conversion claim depends on its right to immediate possession of the cattle by virtue of its security interest therein.").

Both the Security Agreement and Note identify the Collateral and list certain actions involving the Collateral that trigger application of the default provisions. Both documents contain cross-default and remedies provisions that essentially provide that a default of one of the documents constitutes a default of the other (Undisputed Material Fact # 3). The Note states that an event of default includes any "sale or encumbrance . . . of or to any property constituting Collateral" (doc. # 60, Ex. B, p. 2). For purposes of its conversion claim, Ag Venture relies on the sale of its Collateral as the basis for the default that gave rise to its claimed right to immediate possession of the Proceeds (doc. # 250, p. 3). The Parties acknowledge the Collateral was sold (Undisputed Material Fact # 7). The Security Agreement gives Ag Venture the right to "immediate possession" of its Collateral in the event of default (i.e., when a sale occurs) – as it states that it also states that "[a]ll proceeds of any sale, consignment or transfer shall be made immediately available to Lender in a form jointly payable to Borrower and Lender" – and spells out that, in such a circumstance, "[a]ll obligations will become due and payable, at Lender's option . . ." (doc. # 60, Ex. C, ¶¶ 5, 8).

It is undisputed that a portion of the Proceeds from the sale of livestock were given to Diane Montagne (Undisputed Material Fact # 8). The Court has found that these Proceeds were identifiable (doc. # 293, p. 13). The Court now finds, first, that the November 2007 sale of the Collateral constituted an event of default based on the terms of the Note and Security Agreement between Ag Venture and MHI (doc. #

251, Ex. 5, Section 5 ¶ C), and second, that Ag Venture had a right to immediate possession of the Proceeds upon the sale of the Collateral under the express and unambiguous terms of the Security Agreement (see doc. # 251, Ex. 5).

With a scant reference, Diane Montagne attempts to rely on 9A V.S.A. § 9-315, defining a secured creditor's rights on the disposition of collateral, to support her argument that the most Ag Venture had was a security interest in the Proceeds, and that it never had the required ownership interest in the Proceeds (doc. # 292 pp. 15-16). Section 9-315 contains five different subsections. Ms. Montagne's one sentence, conclusory statement invoking the applicability of § 9-315 is insufficient to constitute and argument in this matter; it will not be considered by the Court. See Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir. 1998) (holding that issues "not sufficiently argued in the briefs are considered waived" and normally are not addressed on appeal); American Tissue, Inc. v. DLJ Merchant Banking Partners, II, L.P., 2006 WL 1084392 at * 6 (S.D.N.Y. Apr. 20, 2006) (applying Norton rule to district courts); Fidelity Mortg. Group v. Mulvey, 2003 WL 25745703 * 1 (Vt. 2003) ("Briefs that do not set forth clear and cogent arguments are inadequate to aid our review, and we do not entertain arguments that are not adequately briefed.").

Under the Vermont common law of conversion, the Restatement, and the Undisputed Material Facts, the Court finds that Ag Venture may interpose a claim for conversion in its capacity as a lienholder because the terms of the Security Agreement clearly articulate that Ag Venture had the right to immediate possession of the Proceeds upon the sale of the Collateral, the Collateral was sold, and the Proceeds were paid to the Diane Montagne rather than to Ag Venture.

### 3.  Do Cash Proceeds Constitute "Property" Sufficient to Support a Conversion Claim?

The subject of Ag Venture's conversion claim is cash proceeds from the sale of livestock collateral. Vermont's UCC defines "cash proceeds" as "proceeds that are money, checks, deposit accounts, or the like." 9A V.S.A. § 9-102(a)(9). Although a conversion cause of action typically involves "property" and "chattel," under Vermont case law, money as well as negotiable instruments, including checks, can support a conversion claim. In Tilden v. Brown, 14 Vt. 164, 1842 WL 3098 (1842), the Vermont Supreme Court ruled that checks and proceeds can each be a basis for a conversion claim. The Court held: "if the plaintiff was the owner of the check, whether it was made payable to him, or had been properly endorsed or not, he may maintain this action for its wrongful conversion." Id. A more recent Vermont decision on this subject, citing a string of Vermont cases, focused on tens of thousands of dollars of cash from a bank robbery that had been transferred to the father of the bank robber who then hid the money. The Court held that such funds were subject to a claim of conversion. Montgomery, 181 Vt. at 160, 915 A.2d at 275. In a footnote, the court discussed how the tort of conversion had evolved from imposing liability only for converting tangible personal property to encompass the conversion of money:

> Chattel is generally defined as tangible personal property, and not money. Black's Law Dictionary 251 (8th ed. 2004). Because of its historical roots, the tort of conver-

> sion traditionally applied only to tangible goods, but has since expanded to include intangibles merged in documents such as bonds, stock certificates, bills of exchange, Lyon v. Bennington College Corp., 137 Vt. 135, 137, 400 A.2d 1010, 1012 (1979), money, and negotiable instruments, see 1 D. Dobbs, The Law of Torts § 66, at 149 (2001) ("Although conversion did not traditionally lie for taking paper money, the plaintiff had an action of some kind and today the action may well be called one for conversion.").

Id. at 161 n.1, 915 A.2d at 275. Since the Vermont Supreme Court has found conversion claims to have been properly interposed where cash funds were appropriated, this Court finds that the Proceeds constitute property that may be the subject of a conversion claim.

    4. Did Diane Montagne Interfere with Ag Venture's Right to Possession of the Proceeds?

Having determined that Ag Venture, as lienholder, may bring a conversion cause of action, and that cash proceeds may be the subject of a conversion cause of action, the Court turns to the essence of the substantive claim, as defined in Montgomery: do the Undisputed Material Facts show that Diane Montagne seriously interfered with Ag Venture's right to immediate possession of the Proceeds? Conversion has been limited by the courts "to those serious, major, and important interferences with the right to control the chattel which justify requiring the defendant to pay its full value." Id. at 161, 915 A.2d at 276 (quoting Restatement, § 222A, cmt. c.). While several factors speak to the "seriousness" of the interference (see Section B, supra), the Restatement generally recognizes that "[o]ne who receives the possession of a chattel as purchaser, lessee, pledgee, donee . . . ordinarily exercises a dominion or control over the chattel which is a sufficiently serious interference with the right of another who is entitled to immediate possession to control the chattel to amount to a conversion." Restatement § 229, cmt. b.

Ag Venture claims that it had a right to immediate possession of the Proceeds and that Diane Montagne interfered with that right when she accepted the Proceeds check and arranged for it to be deposited in her counsel's bank account (doc # 250, p. 6). Many of the Restatement § 222A factors for assessing whether Diane Montagne "seriously interfered" with the rights of Ag Venture to immediate possession of the Proceeds, which would support a finding of conversion, are satisfied here. In late 2007, Diane Montagne received a $240,000 check, representing proceeds from sale of the Collateral. She has not released any of the Proceeds to Ag Venture, and continues to hold at least some of those funds[5] (Undisputed Material Facts ## 8, 9). Ag Venture had no control, and Diane Montagne had full control, over those funds. Accordingly, the extent and duration of Diane Montagne's exercise of dominion or control over those funds have been substantial, as has been the extent and duration of the resulting interference with Ag Venture's right of possession and control of the Proceeds. This satisfies sections (a) and (d) of the "serious interference" factors listed in Restatement § 222A. Further, Diane Montagne signed the Note and Security

---

[5] Subsequent to the filing of the cross-motions on the issue of conversion, Diane Montagne stated, without providing factual support, that Mrs. Montagne's Client Trust Account with her attorney contained $16,351.88 on the date of the entry of the memorandum of decision and order (doc. # 300, p. 2).

Agreement (Undisputed Material Fact # 3), and therefore cannot credibly claim that she did not know that Ag Venture had a lien on the Collateral and Proceeds. In addition, Diane Montagne had actual knowledge of the fact that this money came from the sale of cows that were collateral for the Ag Venture loan (Undisputed Material Facts ## 3, 8). These two points raise the question of "the actor's good faith" (Restatement § 222A) in controlling the funds. However, the Court will not rely upon this factor in its analysis since what Mrs. Montagne believed about the propriety of accepting the funds is a question of fact[6] which is not dispositively addressed by the Undisputed Material Facts. Factor (b) – the actor's intent to assert a right of control – may be inferred from the fact that Diane Montagne has not repaid any of the funds to Ag Venture (Undisputed Material Fact # 9). Factor (e) – the harm done to the chattel – does not apply since the property in question is money rather than chattel. There is no record to support whether factor (f) – the inconvenience and expense caused to Ag Venture – is applicable.

It is not necessary to satisfy all of the elements listed there in order to find that the interference with a party's property rights was serious. See Restatement § 222A, cmt. d. Here, the Court finds that, as a matter of law, factors (a), (b), and (d) are present, they all weigh in favor of Ag Venture and, given the Undisputed Material Facts of this case, are sufficient to demonstrate serious interference by Diane Montagne with Ag Venture's right to immediate possession of the Proceeds.

Applying the pertinent statutes and case law to the Undisputed Material Facts, the Court finds that Diane Montagne's conduct constitutes conversion under Vermont law. Having considered all of the arguments of the Parties with respect to Ag Venture's conversion cause of action, the Court finds that Ag Venture is entitled to judgment on its conversion claim, as a matter of law, unless Diane Montagne has a valid defense that is legally sufficient to preclude entry of judgment in favor of Ag Venture.

### 5. Does 9A V.S.A. § 9-332 Provide Diane Montagne with a Defense to Conversion?

Diane Montagne argues that she has such a defense under 9A V.S.A § 9-332(a) (doc. # 292, p. 16). This statute provides that "[a] transferee of money takes the money free of a security interest unless the transferee acts in collusion with the debtor in violating the rights of the secured party." § 9-332(a). The UCC official comments state that § 9-332 "affords broad protection to transferees who take funds from a deposit account and to those who take money." § 9-332 cmt. 2.

Section 9-332 was enacted in 2000 as part of Revised Article 9. It is

---

[6] Even if Diane Montagne's interference in Ag Venture's rights arose from a mistake on her part – namely, that she had a claim to the Proceeds that was superior to Ag Venture's, or that Ag Venture allegedly consented to the Diane Montagne Agreement which authorized her to take the Proceeds – that would not shield her from liability for conversion because the Vermont Supreme Court has stated:
> An actor is not relieved of liability to another for trespass to a chattel or for conversion by his belief, because of mistake of law or fact not induced by the other, that he (a) has possession of the chattel or is entitled to its immediate possession, or (b) has the consent of the other or of one with power to consent for him, or (c) is otherwise privileged to act.

P.F. Jurgs & Co., 160 Vt. at 300, 629 A.2d at 329.

a codification of comment 2(c) to section 9-306 of Prior Article 9. Section 9-306 of Prior Article 9 contained the basic rule that a secured party's security interest continued in proceeds of the original collateral. Comment 2(c) noted, however, that this general rule only applied to a transferee of cash proceeds if the transferee took the proceeds outside of the ordinary course of business.

General Electric Capital Corp. v. Union Planters Bank, N.A. (In re Machinery, Inc.), 342 B.R. 790, 798 (E.D. Mo. 2006). The policy behind the creation of § 9-332 was "to ensure that security interests in cash proceeds and deposit accounts do not impede the flow of funds in the banking system." 9A V.S.A. § 9-332 cmt. 4. In Keybank Nat. Ass'n v. Ruiz Food Prods., Inc., 2005 WL 2218441 (D.Idaho Sept. 9, 2005) the court discussed how the "drafters of Article 9 recognized that it is necessary to balance the interests of the secured creditor against the interests of an innocent transferee of cash proceeds." Id. at * 5. It stated that "despite valid concerns for the secured creditor, an interest in ensuring the free flow of funds and in ensuring the finality of a completed transaction, trumps the interests of a secured creditor." Id.

As a result, "only truly 'bad actor' transferees of cash proceeds are not protected by the collusion standard of § 9-332(a)."[7] Id.; see 9A V.S.A. § 9-332 cmt. 4. This presents a substantial burden on parties seeking to prove conversion claims involving money. "To deal with the question of the 'bad actor,' [§ 9-332] borrows 'collusion' language from Article 8. See, e.g., Sections 8-115, 8-503(e). This is the most protective (i.e., least stringent) of the various standards now found in the UCC." 9A V.S.A. 9-332, cmt. 4. Article 8 borrows its collusion standard from the Restatement (Second) of Torts § 876 (1979) – the "acting in concert" provision.[8] Restatement § 876 sets out three alternative tests to establish collusion:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he –
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

Restatement § 876.

The Parties have not identified, and the Court has not found, any Vermont case that analyzes the elements of collusion under § 9-332 as a defense to a conversion claim. However, the Vermont cases that cite "persons acting in concert" apply Restatement § 876 in other contexts. See, e.g., Cooper v. Cooper, 173 Vt. 1, 18, 783 A.2d 430, 443 (2001) (contrasting Restatement approach under § 874 cmt. c, attaching

---

[7] Although few courts have dealt with this new provision, those that have done so have recognized that there are now situations "where the secured party would have prevailed under comment 2(c) to section 9-306 but cannot prevail under the more deferential collusion standard contained [in] section 9-322(a) of Revised Article 9." General Electric Capital Corp. v. Union Planters Bank, N.A (In re Machinery, Inc.), 342 B.R. 790, 798 (Bankr. E.D.Mo. 2006) (citing White & Summer, Uniform Commercial Code § 33-19.5 (5th ed. 2005)).

[8] Article 8 invokes the collusion language to protect a security intermediary or a broker unless it is shown that they are truly "bad actors," i.e., that they acted in collusion with the wrongdoer in violating the rights of the adverse claimant. 9A V.S.A. § 8-115(2). Section 8-503 also uses the "collusion" test to protect a purchaser or transferee/intermediary of a financial asset from various forms of property interest actions. 9A V.S.A. § 8-503(e).

liability for "knowingly assisting" breach of fiduciary duty, to the approach taken under § 876(b)); Montgomery, 181 Vt. at 169, 915 A.2d at 281 (discussing whether apportionment of damages is appropriate in circumstances where persons act in concert).

Diane Montagne's pleading of the § 9-332 defense is sufficient to warrant a denial of summary judgment at this time. If the § 9-332(a) defense is available, Diane Montagne would take the Proceeds free of Ag Venture's security interest unless the record establishes that Diane Montagne "collu[ded] with the debtor in violating the rights of the secured party." § 9-332(a). However, the record is not sufficiently developed in terms of either the Undisputed Material Facts or the legal argument related to the § 9-332 defense, for the Court to determine whether § 9-332(a) applies in the first instance and, if it does, whether there was collusion.

### 6. Other Arguments

The papers filed by the Parties in connection with these cross-motions contain many arguments more pertinent to questions pending in other motions. The Court has considered all of the arguments raised, and to the extent they are not addressed here, it is because the Court found them to be inapposite and/or without merit.

### V. CONCLUSION

For the reasons set forth above, and based upon the Undisputed Material Facts, the Court finds that Ag Venture was entitled to immediate possession of the Proceeds upon the sale of the Collateral based on the text of the Security Agreement and Note; that Ag Venture, in its capacity as a lienholder, may bring a cause of action for conversion against Diane Montagne; that the Proceeds constitute "property" susceptible to a conversion claim; that Diane Montagne seriously interfered with Ag Venture's right to immediate possession of the Proceeds; and that the Undisputed Material Facts and applicable law demonstrate that the elements of conversion under Vermont law have been established. However, the Court also finds that Diane Montagne has properly interposed a possible defense to the conversion cause of action under § 9-332 which may be sufficient to preclude entry of judgment in favor of Ag Venture, but which cannot be adjudicated on the present record. Therefore, the Court grants in part Ag Venture's motion for summary judgment on the question of whether it has established the elements of conversion, but denies entry of judgment at this time because the defense under Vermont UCC § 9-332 has yet to be adjudicated. The Court denies Diane Montagne's cross-motion for summary judgment on the conversion claim, at this time, subject to her right to present evidence and further argument on the merits of this defense. The Court will give the Parties an opportunity to supplement their motions with respect to the § 9-332 defense if they wish to pursue further summary judgment on the conversion cause of action.

This memorandum of decision constitutes this Court's findings of fact and conclusions of law.

September 14, 2009  
Rutland, Vermont

Colleen A. Brown  
United States Bankruptcy Judge

13