*Formatted for Electronic Distribution*                                                                                 *For Publication*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF VERMONT**

Filed & Entered
On Docket
September 30, 2009

| | |
|---|---|
| **Michael F. Montagne,**<br>    Debtor-in-Possession. | Chapter 12 Case<br># 08-10916 |
| **Ag Venture Financial Services, Inc.,**<br>    Plaintiff,<br>v.<br>**Michael F. Montagne,** *et al.,*<br>    Defendants. | Adversary Proceeding<br># 08-1023 |

*Appearances:*   Lisa Chalidze, Esq.                              Gary Franklin, Esq. and
                 for Diane Montagne                                Douglas Wolinsky, Esq.
                                                                   for Ag Venture Financial
                                                                       Services, Inc.

**MEMORANDUM OF DECISION**
**DENYING AG VENTURE FINANCIAL SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT AND**
**DENYING DIANE MONTAGNE'S CROSS-MOTION FOR SUMMARY JUDGMENT**
**ON THE FRAUDULENT TRANSFER CAUSE OF ACTION**

In its complaint, Ag Venture Financial Services Inc. ("Ag Venture") asserted fraudulent transfer[1] and conversion causes of action against both Michael Montagne and Diane Montagne (doc. # 30, Counts IX-XII) based on "the Montagne Heifers Transfer to Diane Montagne" of $240,000 (id., ¶ 23). The $240,000 check constituted proceeds (the "Proceeds") from the sale of certain livestock that was collateral (the "Collateral") that Montagne Heifers Inc. ("MHI") had pledged to Ag Venture to secure a $457,000 loan. Ag Venture and Diane Montagne (the "Parties") have each moved for summary judgment on the fraudulent transfer and conversion claims related solely to Diane Montagne[2] (doc. ## 250, 272). This Court has already determined that Ag Venture possessed a perfected first priority security interest in the Collateral and its Proceeds (doc. # 293, amended at doc. # 312). It has also granted in part and denied in part Ag Venture's motion for summary judgment on the conversion cause of action (Count X) against

---

[1] The chapter in the Vermont Statutes Annotated where the relevant statute is located is entitled "Fraudulent Conveyances and False Checks." 9 V.S.A. Ch. 57. That chapter is divided into two sections: Fraudulent Transfers (which includes the specific statutes discussed in this decision) and False Checks, Drafts or Orders. When the statute was amended in 1995, the new statute "substituted 'fraudulent transfers' for 'fraudulent conveyances' in the subchapter heading. 9 V.S.A. Ch. 57, History. Thus, while it appears that the terms "fraudulent conveyance" and "fraudulent transfer" could be used interchangeably, the more precise term under state law appears to be fraudulent transfer and hence, that is the term the Court will use in this decision.
[2] In its brief, Ag Venture also argued that Mrs. Montagne's counterclaims fail as a matter of law (doc. # 250, pp. 6-14). Diane Montagne has responded that her counterclaims are legally sufficient (doc. # 292, pp. 17-32). A decision concerning the sufficiency of the counterclaims will be addressed separately.

Diane Montagne, and denied Diane Montagne's cross-motion for summary judgment on the conversion claim (doc. # 328). This decision addresses the fraudulent transfer claim in Ag Venture's complaint against Diane Montagne (Count XII). The issue presented is whether Ag Venture is entitled to a fraudulent transfer judgment against Diane Montagne as a result of her acceptance and retention of Proceeds generated by the sale of Ag Venture's Collateral.

For the reasons set forth below, the Court finds that summary judgment on the fraudulent transfer claim against Diane Montagne is premature. In order to find Diane Montagne liable on that cause of action, the Court would first need to find that MHI, and/or Michael Montagne as President of MHI, effected a fraudulent transfer to Diane Montagne – and that matter has not been adjudicated. Consequently, the Court denies Ag Venture's motion for summary judgment and denies Diane Montagne's cross-motion for summary judgment on the fraudulent transfer cause of action.

## I. JURISDICTION

This Court has jurisdiction to enter a final order pursuant to 28 U.S.C. §§ 157(b)(2)(K) and 1334.

## II. PROCEDURAL HISTORY

On January 29, 2008, Ag Venture filed a multi-count complaint in Vermont state court against, inter alia, Michael Montagne, Diane Montagne, John Montagne, and Montagne Heifers, Inc., which was amended on March 21, 2008 (doc. # 30). The complaint set out two causes of action against Diane Montagne individually: fraudulent transfer and conversion. On October 2, 2008, Michael Montagne filed a petition for relief under chapter 12 of the Bankruptcy Code, and promptly removed the state court litigation to this Court. On April 17, 2009 and May 8, 2009, the Parties filed cross-motions for summary judgment on the conversion and fraudulent transfer counts (doc. ## 250 and 272). They subsequently filed other documents in support of these cross-motions (see doc. ## 251, 273, 274, 278, 279, 292).

## III. UNDISPUTED MATERIAL FACTS

Based upon the extensive record in this case, and in the absence of a single document containing a stipulated set of undisputed material facts, the Court finds the following facts to be material and undisputed (hereinafter the "Undisputed Material Facts"):[3]

1. Ag Venture is a lender that has made multiple loans to Montagne Heifers Inc., a dairy farm operation (doc. ## 251 ¶¶ 3, 4, and 274 ¶¶ 3, 4). Michael Montagne (the Debtor) is the president of MHI (doc. ## 251, ¶ 2, and 274, ¶ 2). Diane Montagne is the estranged spouse of Michael Montagne and had been the treasurer of MHI (doc. ## 251, ¶¶ 2, 8, 274 ¶¶ 1, 2, 8). The Montagnes and Ag Venture had a business relationship with each other for over ten years (doc. ## 251, ¶ 3, and 274, ¶ 3).

2. On November 18, 2005, Ag Venture made a $457,000 loan (Loan # 538) to MHI ("the Borrower"), so that MHI could "purchase livestock" (doc ## 119-1 ¶ 1, 140 ¶ 1).

---

[3] In most instances, two references are cited: the first is from Ag Venture's papers and the second is from Diane Montagne's papers.

2

3. On November 18, 2005, MHI executed a commercial promissory note (the "Note") and a security agreement (the "Security Agreement"), in favor of Ag Venture, signed by Michael Montagne, Diane Montagne, and John Montagne (doc. ## 251 ¶ 4, 274 ¶ 4). Diane Montagne signed both documents as treasurer of MHI as well as in her individual capacity (doc. # 274, ¶ 4).

4. In October 2006, Diane Montagne separated from Michael Montagne (doc. ## 251, ¶ 8, 274, ¶ 8). As of February 13, 2009, the date of Mrs. Montagne's deposition, she was separated but still married (doc. # 251, Ex. 1, p. 32-33).

5. The separation agreement between Michael Montagne and Diane Montagne, dated December 2006 (the "Diane Montagne Agreement"), is a typed one-page document with several handwritten interlineations that describes a division of assets between Diane Montagne and Michael Montagne. Pursuant to this agreement, Diane Montagne would receive money and certain parcels of land from Michael Montagne. Nowhere in this agreement is there any reference to Diane having a right to livestock or the proceeds from the sale of livestock (doc. ## 251, Ex. 1, pp. 2-3, and Ex. 6; 274, ¶ 15).

6. On September 17, 2007, pursuant to the Diane Montagne Agreement, Ag Venture released Diane Montagne from liability for MHI's debt to Ag Venture (the "Release"). The Release applied to multiple promissory notes, including the note corresponding to Loan # 538 (doc. # 47-1 ¶ 1, doc. # 60-1 ¶ 1; doc.# 251 Ex. 8). Thomas Bellavance, Ag Venture's president, signed the document on behalf of Ag Venture. The document did not refer to any security agreements that Michael Montagne or MHI had executed in favor of Ag Venture, nor did it set forth any waiver of Ag Venture's security interest in livestock or sale proceeds. Id.

7. On November 24, 2007, MHI sold a herd of milk cows for $500,000 (doc. ## 47-1, ¶ 3, 119-1, ¶¶ 12, 13). This sale occurred without any notification to Ag Venture and without its approval as required by the terms of the Security Agreement (doc. # 251 ¶ 26).[4]

---

[4] Exhibit 2 to Ag Venture's Statement of Undisputed Material Facts was an affidavit by Thomas Bellavance, President of Ag Venture. Paragraph 21 of that affidavit provided: "On November 24, 2007, MHI sold all of its cattle for approximately $500,000. No one from Ag Venture was notified about this sale before it occurred" (doc. # 251, Ex. 2, ¶ 21). Mrs. Montagne's response to Ag Venture's Statement of Undisputed Material Facts that the cows were sold on November 24, 2007 and Ag Venture was not notified about the sale was: "Undisputed that the MHI herd was sold on or about November 24, 2007. Mrs. Montagne does not have knowledge of the remainder of the allegation." (doc. # 274 ¶ 26). Case law provides that a party cannot simply claim insufficient knowledge to form a belief in response to a [Rule] 56.1 Statement, but must either admit or deny with citations to admissible evidence. See Copeland v. Sears Roebuck & Co., 24 F. Supp. 2d 412, 419 n.2 (S.D.N.Y. 1998) ("In Plaintiff's Reply to Defendant's Statement of Undisputed Facts, Plaintiff denies these facts as well as numerous other facts by stating he lacks 'direct knowledge.' Plaintiff, however, has not created any issues of fact through this artifice.") Parks v. Lebhar-Friedman, Inc., 2008 WL 3833802 at * 6 (S.D.N.Y. Aug. 11, 2008). See Vt. LBR 7056-1(a)(3): "All material facts in the movant's statement of undisputed facts are deemed to be admitted except to the extent controverted by a statement of disputed material facts filed by the opposing party." Mrs. Montagne has not controverted Ag Venture's statement and therefore Ag Venture's fact in doc. # 251, ¶ 26 is deemed admitted. The Court notes, however, that on September 4, 2009, Mrs. Montagne moved for "Expedited Relief for Court Consideration of Supplemental Opposition to Motion for Summary Judgment (Counts X and XII) based on Evidence of Waiver of Ag Venture Security Interest" (doc. # 317). In that motion, she asked the Court to consider "newly-discovered evidence" -- an affidavit from David Rama, in which he asserted, inter alia, that he had

8. On November 28, 2007, Diane Montagne was given a check payable to MHI and Diane Montagne (see doc. ## 251, Ex. 15, 274, ¶ 32), in the amount of $240,000, which was part of the proceeds from that sale of cows (doc. ## 251, Ex. 15, 274, ¶ 31). The check was from David Rama, Inc., drawn on the Delaware National Bank of Delhi (doc # 251, Ex 15, p. 74). This check was deposited into the client trust account of Mrs. Montagne's counsel on December 3, 2007 (doc. # 274, ¶ 32). Mrs. Montagne accepted the check knowing that the proceeds were from the sale of the MHI cows (doc. # 251, ¶ 30; doc. # 274, ¶ 30).

9. Diane Montagne has not returned, or paid over, to Ag Venture any portion of this $240,000 (doc. # 316, ¶ 7).

## IV. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is proper if the record shows no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056. A genuine issue exists only when "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The substantive law identifies which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. See Anderson, 477 U.S. at 247. Factual disputes that are irrelevant or unnecessary are not material. See id. The court must view all the evidence in the light most favorable to the nonmoving party and draw all inferences in the nonmovant's favor. See Cruden v.. Bank of New York, 957 F.2d 961, 975 (2d Cir.1992). In making its determination, the court's sole function is to determine whether there is any material dispute of fact that requires a trial. See Anderson, 477 U.S. at 249; see also Palmieri v. Lynch, 392 F.3d 73, 82 (2d Cir.2004); Delaware & Hudson Ry. Co. v. Conrail, 902 F.2d 174, 178 (2d Cir.1990).

### B. Applicable State Statutes and the Common Law on Fraudulent Transfers

#### 1. Vermont's Current Fraudulent Transfer Statute

Property interests are creatures of state law and must be construed in accordance with state law in bankruptcy cases. Butner v. U.S., 440 U.S. 48, 54 (1979). Accordingly, the rights and remedies asserted by Ag Venture and Diane Montagne under this state law fraudulent transfer cause of action must be decided pursuant to state law.

---

informed Mr. Bellavance on the evening of November 29, 2007 about the sale of the cattle (doc. # 318, Ex. 1). The Court denied Mrs. Montagne's motion (doc. # 321). In any event, when read carefully, this affidavit does not dispute the fact that Ag Venture was not notified about the sale before it occurred. Assuming arguendo that the affidavit is true, it still only provides post-sale and post-transfer notice to Ag Venture since the sale had occurred 4 days before the alleged notice and the transfer had occurred 1 day before the alleged notice.

Vermont adopted the Uniform Fraudulent Transfer Act ("UFTA"),[5] effective July 1, 1996, see 3 V.S.A. ch. 57, Subch. 1, Refs & Annos, incorporated into the Vermont Statutes Annotated at 9 V.S.A. §§ 2285 to 2295 (No. 179 (Adj. Sess.), § 14 (1995)). Section 2288, "Transfers fraudulent as to present and future creditors" sets out the standard for determining whether a transfer was fraudulent:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, <u>if the debtor made</u> the transfer or incurred the obligation:
>> (1) with actual intent to hinder, delay or defraud any creditor of the debtor; or
>> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and <u>the debtor</u>:
>>> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>> (B) intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.
>
> (b) In determining actual intent under subdivision (a)(1) of this section, consideration may be given, among other factors, to whether:
>> (1) the transfer or obligation was to an insider;
>> (2) the debtor retained possession or control of the property transferred after the transfer;
>> (3) the transfer or obligation was disclosed or concealed;
>> (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>> (5) the transfer was of substantially all the debtor's assets;
>> (6) the debtor absconded;
>> (7) the debtor removed or concealed assets;
>> (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
>> (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
>> (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
>> (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

9 V.S.A. § 2288 (emphasis added). The statute thus provides two bases for finding that a transfer is fraudulent – either the debtor effected the transfer with "actual intent" to defraud a creditor, or the debtor did not receive reasonably equivalent value for the transferred property and the elements of either § 2288(a)(2)(A) or (B) are satisfied. The latter type of fraudulent transfer is generally described as a "constructively fraudulent transfer." <u>Sensenich v. Molleur (In re Chase)</u>, 328 B.R. 675, 678-79 (Bankr. D.Vt. 2005).

"The determination of a defendant's fraudulent intent is a fact-intensive inquiry and is nearly always proven from surrounding circumstances rather than direct evidence. In determining "actual intent"

---

[5] The UFTA has been adopted by 43 states, in addition to the District of Columbia. 3 V.S.A. ch. 57, Subch. 1, Refs & Annos.

under subsection (1) of § [2288(a)], consideration may be given, among other factors," to the eleven factors under § 2288(b). National Council on Compensation Ins., Inc. v. Caro & Graifman, P.C., 2008 WL 450413 at *21 (D.Conn. Feb. 15, 2008) (citations omitted).[6] These eleven factors have been referred to as "badges of fraud." Zapolsky v. Sacks, 191 Conn. 194, 201, 464 A.2d 30 (1983). See Shawmut Bank v. Brooks Development Corp., 46 Conn.App. 399, 405-06, 699 A.2d 283 (1997) ("The determination of the question of fraudulent intent is clearly an issue of fact which must often be inferred from surrounding circumstances ... Such a fact is, then, not ordinarily proven by direct evidence, but rather, by inference from other facts proven-the indicia or badges of fraud."). "When these badges of fraud are present in sufficient number, it may give rise to an inference or presumption of fraud." Greystone Community Reinvestment Association, Inc. v. Berean Capital, Inc., 2009 WL 2345120, at * 11 (D.Conn. July 29, 2009).

> Section 2289, entitled "Transfers fraudulent as to present creditors," provides:
>
> (a) A transfer made or obligation incurred <u>by a debtor</u> is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if <u>the debtor made</u> the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
>
> (b) A transfer <u>made by a debtor</u> is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

9 V.S.A. § 2289 (emphasis added).

The rule is that "[e]very conveyance made with the actual intent to defraud creditors is fraudulent as to creditors and will be set aside." Caro & Graifman, 2008 WL 450413 at *21. Section 2292 discusses both defenses available to, and liabilities of, transferees. A transfer is not voidable "against a person who took in good faith and for a reasonably equivalent value. . ." § 2292(a). On the other hand, to the extent that a transfer is voidable, a "judgment may be entered against the <u>first</u> <u>transferee</u> of the asset or the person for whose benefit the transfer was made." § 2292(b)(1) (emphasis added).

2.  Vermont's Previous Fraudulent Conveyance Statute & Relevant Common Law

When the Vermont Legislature adopted the UFTA, it repealed the state's "Fraudulent Conveyance" law, 9 V.S.A. §§ 2281-2283. Most of Vermont's fraudulent transfer case law has interpreted this earlier fraudulent conveyance statute. See, e.g., Becker v. Becker, 138 Vt. 372, 416 A.2d 156 (1980). The Vermont Supreme Court, in Becker, explained the relationship between the then fraudulent conveyance statute and case law: "This action is statutory, but it is subject to all the requirements of our case law since

---

[6] Due to the dearth of case law interpreting the Vermont UFTA, the Court looks to case law in Connecticut for guidance because Connecticut, like Vermont, is part of the Second Circuit and because it adopted the UFTA in 1991. See 3 V.S.A. Ch. 57, Subch. 1, Refs & Annos; C.G.S.A. §§ 52-552a to 52-552*l*.

the enactment of the statute of 13 Elizabeth c. 5 (1570), from which the Vermont statute derives." Id. at 375, 416 A.2d at 159. Analyzing earlier Vermont fraudulent conveyance case law, this Court held that such fraud had to be proved by "clear and convincing evidence." Glinka v. Bank of Vermont (In re Kelton Motors, Inc.), 130 B.R. 170, 181 (Bankr. D.Vt. 1991).

**C. Application of the Pertinent State Law to the Undisputed Material Facts**

    1.    <u>The Parties' Positions Regarding the Elements of a Fraudulent Transfer</u>

In its complaint, Ag Venture asserts that it is entitled to a fraudulent transfer judgment against Diane Montagne under § 2288(a)(1), because there was "actual intent" to defraud Ag Venture (doc. # 30, ¶ 68), and under § 2288(a)(2)(A) and (B), because MHI received "less than a reasonably equivalent value in exchange for the Montagne Heifers Transfer to Diane Montagne" (doc. # 30, ¶¶ 68-70). It also asserted claims under § 2289(a) and (b) (id., ¶ 71).

In its motion for summary judgment, however, Ag Venture sought a fraudulent transfer judgment solely under § 2288(a)(1), based upon the allegation that MHI "made the transfer . . . with actual intent to hinder, delay or defraud. . ." (doc. # 250, p. 4). It asserted that at least three of the eleven factors under § 2288(b), often referred to as "badges of fraud," were present: Diane Montagne was an "insider" per § 2288(b)(1); the transfer was concealed per § 2288(b)(3); and, at the time of the transfer, "there was clearly a threat of litigation," per § 2288(b)(4) (id., pp. 4-5). Ag Venture concluded that "Mrs. Montagne took the Proceeds knowing full well that they were an asset of MHI and that MHI owed her no obligations. Mrs. Montagne also knew that she herself had pledged the Proceeds to secure MHI's debt to Ag Venture." (Id. p. 5.)

Diane Montagne responded that since Ag Venture had failed to allege that she incurred an "obligation" and since she was not a "debtor" in relation to Ag Venture at the time of the transfer, Ag Venture's claim was deficient (apparently under § 2288(a)) (doc. # 292 p. 7). In addition, Mrs. Montagne contended that she had no intent to defraud; instead, her intent was "to complete performance by all parties of the three-way agreement of December, 2006." Id. Notwithstanding that it was presented in the context of a motion for summary judgment, she relied on a number of facts which were not undisputed to support her argument, id. pp. 7-8. As to her legal analysis, Ms. Montagne first asserted that Ag Venture's claims involving intent were particularly ill-suited for summary disposition, id. at pp. 8-9. She next argued that Ag Venture could not establish "the necessary elements of its statutory claim." However, to support that position, she analyzed the applicability of the four elements of a fraudulent transfer set out in Becker,[7]

---

[7] In Becker, the Vermont Supreme Court wrote:
    The plaintiff must establish (1) that there existed a right, debt, or duty owed to her by the defendant, which debt, in this case arose before or near the time of the defendant's conveyance; (2) that the defendant conveyed property which was subject to execution in satisfaction of the defendant's debt; (3) that the conveyance here was without adequate consideration; and (4) if the conveyance was without adequate consideration, as here alleged, that the defendant acted fraudulently to the hindrance of the plaintiff's rights against him.

contending that either those elements did not apply or that a factual dispute underlay whether or not they applied. Id. at 10-14. Despite these alleged factual disputes, she claimed that "irremediable legal defects in Ag Venture's fraudulent transfer claim" against her entitled her "to judgment as a matter of law." Id. at pp. 9, 10-14. She did not contest Ag Venture's assertion that three "badges of fraud" applied to this case.

In its Reply Brief, Ag Venture took the position that Mrs. Montagne's argument that she was not liable because she was not a "debtor" was misplaced, and that the relevant inquiry is on the propriety of the transfer by the debtor, MHI, to Mrs. Montagne, "an insider with specific knowledge that the funds were pledged to Ag Venture" (doc. # 278, pp. 1-2). Ag Venture also contested Mrs. Montagne's assertion that it could not satisfy the four Becker elements. Id. at 2.

2. Analysis

    a.    Which Fraudulent Transfer Claims Are at Issue in the Cross-Motions for Summary Judgment?

Since Ag Venture argued that it was entitled to summary judgment solely on the question of actual fraud pursuant to § 2288(a)(1) in its brief, and Diane Montagne's cross-motion also focused on whether Ag Venture satisfied the requirements for a judgment based upon actual fraud, this memorandum of decision will address only whether either party is entitled to judgment as a matter of law on the claim of actual fraud under § 2288(a)(1).

    b.    Is the Becker Standard Applicable?

In her brief, Diane Montagne asserted that "[t]he elements of the statutory [fraudulent transfer] claim are set forth in Becker v. Becker, 138 Vt. 372, 416 A.2d 156 (1980)," and that Ag Venture had failed to demonstrate that Diane Montagne's conduct satisfied those four elements (doc. # 292, pp. 10-13). Mrs. Montagne noted that "[a]lthough Becker construed an earlier version of the Fraudulent Transfer Act, it continues to be cited by the Vermont Supreme Court as setting forth the elements of a statutory claim. See, e.g., Bacon v. Reimer & Braunstein, LLP, 182 Vt. 553, 555, 929 A.2d 723, 727 (2007)". Mrs. Montagne's analysis concerning the applicability of the Becker elements to fraudulent transfer causes of action under the UFTA is flawed. First, when the Vermont Supreme Court decided Becker, in 1980, it was interpreting the State's fraudulent conveyance statute that was subsequently repealed (in 1995) and replaced by §§ 2288 and 2289, et seq. The current statute sets forth a new fraudulent transfer standard. As a result, this Court finds it improper to assess Ag Venture's fraudulent transfer claim, based upon the 1995 statute, against the Becker rationale based upon a statute that has not been in effect for nearly 15 years. Second, although the Vermont Supreme Court mentioned Becker in passing in the 2007 case of Bacon, that fleeting reference cannot be read to resurrect the Becker standard in post-1995 cases. The Bacon

---

138 Vt. at 375, 416 A.2d at 159. Because these elements require a finding that the conveyance was without adequate consideration, this case law is relevant only to constructive fraud, under the precursor to § 2288(a)(2), rather than actual fraud under § 2288(a)(1). See Gore v. Green Mountain Lakes, Inc., 140 Vt. 262, 265,438 A.2d 373, 374 (1981) (observing that Becker "outlined a four-part test for cases. . . which allege that transfers of property were made without consideration.")

Court analyzed the fraudulent transfer claim under the current statute.182 Vt. at 555, 929 A.2d at 727. Moreover, immediately after referring to Becker, the Bacon Court inserted a footnote which emphasized that it was analyzing the fraudulent transfer cause of action under § 2288 and 2289. Id. at n.2. Finally, there is no undisputed material fact addressing whether or not the debtor received "reasonably equivalent value" for the transfer, which is the threshold question for whether a fraudulent transfer involved constructive fraud. (See § 2288(a)(2), referring to a debtor making a transfer "without receiving a reasonably equivalent value in exchange for the transfer. . .") Interestingly, Diane Montagne argues in her brief that the transfer was for reasonably equivalent value; if that were the case, the Becker standard (for transfers made "without adequate consideration") would not apply. Becker, 138 Vt. at 375, 416 A.2d at 159. See, e.g., Gore v. Green Mountain Lakes, Inc., 140 Vt. 262, 265, 438 A.2d 373, 374 (1981) (observing that Becker "outlined a four-part test for cases. . . which allege that transfers of property were made without consideration."). Accordingly, this Court finds the four Becker factors analyzing transfers made without consideration are not germane to this Court's analysis of Ag Venture's fraudulent transfer claim against Diane Montagne based upon actual fraud (doc. # 292, pp. 10-14; doc. # 278, p. 2), although Becker and other pre-UFTA cases are still applicable in other regards, as discussed below.

    c.    May a Fraudulent Transfer Judgment Be Entered Against Diane Montagne, as Transferee, at this Time?

Diane Montagne has argued that she was not a "debtor" in relation to Ag Venture at the time of the transfer, and that there were no allegations that she made a "transfer" or that she incurred an "obligation" and, based upon those statements, concluded that the statute does not apply to her (doc. # 292 p. 7). The controlling document in this regard is the complaint and it identifies the "debtor" for purposes of the transfer as MHI (and Michael Montagne as President of MHI[8]), not Diane Montagne (doc. # 30 ¶¶ 18, 23). The statute defines debt as "liability on a claim." 9 V.S.A. § 2285(5). It is undisputed that MHI executed the Note and Security Agreement in favor of Ag Venture (Undisputed Material Fact # 3) and thus MHI was properly identified as a debtor. The complaint identifies the relevant transfer as MHI's/Michael Montagne's delivery of the $240,000 check to Diane Montagne (id., ¶¶ 23, 68). The delivery of the check to Diane Montagne satisfies the statutory definition of transfer, which is "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease and creation of a lien or other encumbrance." § 2285(11). Since the statute provides that either "a transfer was made or [an] obligation was incurred," in the alternative, § 2288(a), and the Court has determined there was a transfer, it need not determine whether an obligation was incurred in order for the statute to apply. Since the complaint properly identifies the "debtor" and a "transfer" that clearly fall within the scope of Vermont's fraudulent transfer statute, and the

---

[8]  The complaint states: "Upon information and belief, Michael F. Montagne, in his capacity as the President of Montagne Heifers, distributed the initial payment of $240,000 to Diane M. Montagne (the "Montagne Heifers Transfer to Diane M. Montagne"). It was not distributed to Plaintiff or held by Montagne Heifers for its creditors." (doc. # 30, ¶ 23).

9

subject transfer from that debtor was to her, the Court rejects Mrs. Montagne's argument that the statute is not a basis for granting relief to Ag Venture against her.

Mrs. Montagne's arguments, however, raise important questions about both the scope of the fraudulent transfer cause of action as well as the liability of transferees of an allegedly fraudulent transfer. As mentioned above, Ag Venture included a separate fraudulent transfer claim against Mr. and Mrs. Montagne (see doc. # 30, ¶ 23; Claim IX against Michael Montagne and Claim X against Diane Montagne) regarding the $240,000 payment to Diane Montagne. However, to date, Ag Venture has not filed a motion for summary judgment with respect to the fraudulent transfer cause of action against Michael Montagne. This tees up the question of whether relief can be granted against a transferee prior to a determination that the transferor made a fraudulent transfer.

Case law under Vermont's earlier Fraudulent Conveyance Act specifically addressed the liability of grantee and/or transferees in fraudulent conveyance causes of action. Under that case law, where the transfer was for consideration, "the creditor must show that the grantor-debtor and the grantee knowingly participated in the fraudulent conveyance. On the other hand, where the conveyance [was] without adequate consideration, the creditor may avoid the transfer with proof of the grantor's fraud alone." Becker, 138 Vt. at 376-77, 416 A.2d at 160 (cases omitted). See Cole v. Cole, 117 Vt. 354, 366, 91 A.2d 819, 826 (1952) ("[T]o make a conveyance for a valuable consideration fraudulent, there must be a fraudulent intent both on the part of the grantor and grantee."). Since there are no Vermont cases under the UFTA that adjudicate the liability of grantees or transferees, the Court turns to recent Connecticut fraudulent transfer cases for guidance.[9] In Hamrah v. Emerson, 2009 WL 2963281 at *5 (Conn.Super. Aug. 20, 2009), the state trial court quoted Gaudia v. Gaudio, 23 Conn.App. 287, 307, 580 A.2d 1212 (1991) for the proposition that "Actual fraud requires a showing that the conveyance was made with a fraudulent intent and that the transferee of the property participated in the fraud." Accord Nastro v. D'Onofrio, 263 F. Supp. 2d 446, 460 (D. Conn. 2003); Greystone, 2009 WL 2345120 at *11. This case law does not in any way contradict Vermont's current statute, § 2292, which states that, if a transfer is voidable, a "judgment may be entered against the first transferee of the asset or the person for whose benefit the transfer was made." § 2292(b)(1) (emphasis added).

This Court finds that in order to determine whether Ag Venture is entitled to a judgment against Diane Montagne, as a transferee, it must first determine whether the transfer from MHI/Michael Montagne satisfies the elements of a fraudulent transfer. We begin with the language of the statute itself. As noted above, both § 2288(a) and § 2289(a) and (b) focus on the actions of the debtor, in relation to a creditor, when determining whether a transfer is fraudulent. Therefore, according to still-applicable fraudulent transfer case law, only if MHI/Michael Montagne made the transfer with actual intent to defraud could

---

[9] See footnote 6.

this Court then be able to determine whether judgment may be entered against Diane Montagne as transferee of a fraudulent transfer. See Lightowler v. Esparo, 2007 WL 4733096 at *2 (Conn. Super. Dec. 18, 2007) ("[I]n a case where an intentional fraudulent transfer was alleged, as here, the [party] had to prove wrongdoing on the part of both the transferor and transferee.") Since neither Ag Venture, MHI, nor Michael Montagne has filed a summary judgment motion on Ag Venture's fraudulent transfer cause of action against MHI/Michael Montagne, and the Court has not otherwise made a determination with respect to whether MHI/Michael Montagne conveyed the Proceeds to Diane Montagne with fraudulent intent, it is premature for the Court to rule on the fraudulent transfer cause of action against the transferee.[10]

        d.        Has Ag Venture Proven Aany Badges of Fraud?

Although the Court has found that it cannot grant either party summary relief on Count X until it determines whether MHI/Michael Montagne, as transferor, made a fraudulent transfer, it does have a sufficient record before it to rule on whether Ag Venture has established the presence of certain "badges" that would imply fraudulent intent. Ag Venture has argued that that three of § 2288(b)'s eleven badges of "actual intent" apply here. While it may be generally true, as Mrs. Montagne claims, that questions of intent are not appropriate for summary disposition (doc. # 292 pp. 8-9), the case law is clear that the facts showing "actual intent" under the UFTA are "not ordinarily proven by direct evidence, but rather, by inference from other facts proven – the indicia or badges of fraud" found in § 2288(b). Shawmut Bank., 46 Conn.App. at 405-06. See National Loan Investors, L.P. v. Lan Assocs. XII, 2002 WL 1821298 at * (Conn. Super. June 28, 2002) (interpreting Connecticut fraudulent transfer statute and stating "Because fraudulent intent is rarely susceptible to direct proof, courts have developed badges of fraud to establish the requisite actual intent to defraud.") (quoting In re Kaiser, 722 F.2d 1574, 1582 (2d Cir. 1983)).

First, Ag Venture argues that Ms. Montagne was an "insider," satisfying § 2288(b)(1), because she was an officer of MHI at the time of the transfer (doc. # 250 p. 4). In its Statement of Undisputed Material Facts, Ag Venture stated: "At this time [the November 28, 2007 cattle sale], Mrs. Montagne was still an officer of MHI. See Exhibit 14 (MHI Corporate Resolution dated March 2008 and signed by Mrs. Montagne)." (doc. # 251 ¶ 29). Mrs. Montagne responded: "Mrs. Montagne had agreed in December, 2006 to give up all interest in MHI. She does not know whether all paperwork had been completed by the corporation at that time" (doc. # 274, ¶ 29). Mrs. Montagne's response concerning her alleged intentions and agreements is unsupported by any documents and is essentially non-responsive to Ag Venture's factual statement. Her statement does not contradict the legal effect of her signature as treasurer of MHI on a corporate resolution dated March 2008 (doc. # 251, Ex. 14). This exhibit provides undisputed evidence that she was an officer of MHI at the time of the cattle sale. The fraudulent transfer statute defines "insid-

---

[10] The Court is not making a determination at this time as to whether the transferee is also required to have fraudulent intent, or just had to participate in the fraud.

er," if the debtor is a corporation, as, <u>inter</u> <u>alia</u>, "a director of the debtor" and "an officer of the debtor." 2285(6)(B)(i) and (ii). Mrs. Montagne clearly constitutes an "insider" under the statute. Moreover, at the time of the transfer, Diane Montagne was the separated spouse of Michael Montagne. The statute defines "insider," if the debtor is an individual[11] as, <u>inter</u> <u>alia</u>, "a relative of the debtor," § 2285(6)(A)(i), and a "relative" as, <u>inter</u> <u>alia</u>, "a spouse," § 2285(10). Under this definition as well, Mrs. Montagne was an "insider." <u>See</u>, <u>e.g.</u>, <u>In re Holloway</u>, 955 F.2d 1008, 1015 (5th Cir. 1992) (concluding that even husband's ex-wife was insider at time of transfer and setting it aside as fraudulent conveyance). Therefore, the Court finds that this badge of fraud is present.

Second, Ag Venture contends that transfer was concealed, per § 2288(3), because it was not notified in advance about the cattle sale or payment to Diane Montagne, and the Montagnes did not get Ag Venture's prior written approval of the sale, as required by the loan documents. (doc. # 250, p. 3). As indicated above, <u>see</u> footnote 4, Diane Montagne's response to Ag Venture's Statement of Undisputed Fact ¶ 26 does not create a disputed question of fact, and therefore this badge of fraud is deemed uncontested and present.

Third, Ag Venture contends that, at the time of the transfer, "there was clearly a threat of litigation, as Mr. Montagne had decided to forgo the refinancing, sell the assets of MHI and default on its obligations, and use the Proceeds to satisfy his personal obligations. . . Indeed, in his letter of November 29, 2007, Mr. Montagne indicated that he intended to pursue litigation against Ag Venture" (doc. # 250 p. 4-5). Ag Venture points to a handwritten note to Tom Bellavance, dated November 29, 2007, signed by Michael Montagne, stating: "Tom, It is unlikely that I will be going through with the refinance package and my family and I believe we have claims against you and Ag Venture for the way our loans have been handled."(doc. # 251, Ex. 12). In the Court's view, this correspondence, by itself, is not sufficient to constitute a "threat of litigation" as a matter of law, pursuant to § 2288(b)(4), particularly since it was dated the day <u>after</u> the $240,000 transfer occurred, and the statute requires the threat of litigation to be made <u>before</u> the transfer was made. Thus, the Court declines to find that Ag Venture has established this particular badge of fraud.

Accordingly, the Court finds that Ag Venture has established the two "badges of fraud" set out in § 2288(b)(1) and (3): Diane Montagne was an "insider" and the transfer was concealed.

---

[11] Ag Venture states in its complaint that "Michael F. Montagne, in his capacity as the President of Montagne Heifers, distributed the initial payment of $240,000 to Diane M. Montagne (the "Montagne Heifers Transfer to Diane M. Montagne.)" (doc. # 30, ¶ 23). Paragraph 68 of the Amended Complaint provides that "Montagne Heifers made the Montagne Heifers Transfer to Diane M. Montagne. . ." <u>Id.</u>, ¶ 68. It is unclear whether Ag Venture is proceeding on a veil-piercing theory as to the entity that made the transfer. Regardless of whether the transferor was a corporation or an individual, though, Diane Montagne qualifies as an "insider" since she was both an officer of the corporation and a relative of the individual.

## V. CONCLUSION

For the reasons set forth above, and based upon the Undisputed Material Facts, the Court finds that in order to determine whether Ag Venture is entitled to a judgment against Diane Montagne, in her capacity as a transferee, on its fraudulent transfer cause of action against her, the Court must first adjudicate the fraudulent transfer cause of action against MHI/Michael Montagne. Consequently, the Court denies both Ag Venture's motion for summary judgment and Diane Montagne's cross-motion for summary judgment on Count X of the Amended Complaint (doc. # 30).

This memorandum of decision constitutes the Court's findings of fact and conclusions of law.

September 30, 2009  
Rutland, Vermont

Colleen A. Brown  
United States Bankruptcy Judge