*Formatted for Electronic Distribution*                                    *For Publication*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT

_____

In re:

    **Michael F. Montagne,**                                    **Chapter 12 Case**
            **Debtor.**                          **# 08-10916**

_____                    Filed & Entered
                                                            On Docket
**Ag Venture Financial**                                    December 18, 2009
**Services, Inc.,**

        **Plaintiff,**

        v.                                          **Adversary Proceeding**

**Michael F. Montagne, John Montagne,**                     **# 08-1023**
**Diane Montagne, Montagne Heifers, Inc.,**
**Patenaude Grain, Ltd., Bourdeau Brothers, Inc.,**
        **Defendants.**

_____

*Appearances:*    *Lisa Chalidze, Esq.*        *Gary L. Franklin, Esq.*
                *Benson, VT*            *Douglas J. Wolinsky, Esq.*
                *For Diane Montagne*    *Primmer Piper Eggleston & Cramer PC*
                                            *Burlington, VT*
                                            *For Ag Venture Financial Services, Inc.*

## MEMORANDUM OF DECISION
### GRANTING SUMMARY JUDGMENT TO AG VENTURE FINANCIAL SERVICES, INC.,
### DISMISSING EIGHT CAUSES OF ACTION IN DIANE MONTAGNE'S COUNTERCLAIM,
### AND DENYING DIANE MONTAGNE'S CROSS-MOTION FOR SUMMARY JUDGMENT

    Ag Venture Financial Services, Inc. ("Ag Venture") filed an amended complaint (doc. # 30) in state court, in which two counts (conversion and fraudulent transfer) sought relief against Diane Montagne, wife of Debtor Michael Montagne. Mrs. Montagne responded by filing a counterclaim against Ag Venture that interposed eleven causes of action (the "Counterclaim") (doc. # 83). Subsequently, both parties filed cross-motions for summary judgment on the conversion and fraudulent transfer causes of action, and the causes of action in the Counterclaim. This decision addresses the motions for summary judgment with regard to the Counterclaim: for the reasons that follow, the Court denies Diane Montagne's motion, grants Ag Venture's motion, and dismisses eight of the eleven causes of action set out in the Counterclaim. The parties did not address the three remaining causes of action in the Counterclaim and therefore those claims remain.

## PROCEDURAL HISTORY

On March 21, 2008, Ag Venture filed a thirteen-count amended complaint (doc. # 30) against Michael F. Montagne, John M. Montagne, Diane M. Montagne, Montagne Heifers, Inc. ("MHI"), Patenaude Grain, Ltd., and Bourdeau Brothers, Inc. ("BBI") in Vermont state court (# S60-08Fe). Counts X and XII (fraudulent conveyance and conversion, respectively) named Diane Montagne specifically. It appears from the record that Diane Montagne never filed an answer to the amended complaint in state court (although she did file an answer with affirmative defenses on January 14, 2008 in this Court (doc. # 145)). Mrs. Montagne filed the Counterclaim against Ag Venture (doc. # 83) and Ag Venture answered (doc. # 87). In October 2008, after Michael Montagne filed for bankruptcy relief under chapter 12, the lawsuit was removed to this Court. On April 17, 2009, Ag Venture moved for summary judgment on counts X and XII of its amended complaint and on Diane Montagne's Counterclaim (doc. # 250). Diane Montagne opposed the motion and filed a cross-motion for summary judgment (doc. # 272, refiled as doc. # 292); Ag Venture filed a reply (doc. # 278).

The Court granted Ag Venture's motion for summary judgment and denied Diane Montagne's cross-motion for summary judgment on the conversion of collateral cause of action (count XII) (doc. ## 328, 352) and denied both Ag Venture and Diane Montagne's cross-motions for summary judgment on the fraudulent transfer cause of action (count X) (doc. # 335). Consequently, the issue remaining to be adjudicated on the parties' cross-motions for summary judgment (doc. ## 250, 272/292) is the viability of Diane Montagne's Counterclaim against Ag Venture.

Mrs. Montagne set forth 79 paragraphs of allegations in the Counterclaim, followed by eleven paragraphs of claims for relief under the following theories: unclean hands (¶ 80); violation of express contractual provisions (¶ 81); breach of the contractual duty of good faith and fair dealing (¶ 82); negligence (¶ 83); negligent provision of pecuniary information (¶ 84); fraudulent inducement, fraud and/or negative deceit (¶ 85); control by a lender over its borrowers (¶ 86); interference with actual and/or prospective contractual arrangements (¶ 87); punitive damages (¶ 88); express and positive fraud (¶ 89); and indemnification (¶ 90). Each paragraph that alleges a claim begins "The conduct of Ag Venture as described above." As a matter of drafting, the Counterclaim fails to set forth which specific facts in the 79 paragraphs of allegations support each claim. The paragraphs setting forth claims for (1) violation of express contractual provisions, (2) breach of the contractual duty of good faith and fair dealing, (3) negligence, (4) negligent provision of pecuniary information, (5) fraudulent inducement, fraud and/or negative deceit, (6) control by a lender over its borrowers, and (7) interference with actual and/or prospective contractual arrangements all contain the statement that the conduct complained of "foreseeably and proximately damaged Defendant(s) herein including but not limited to lost profits, emotional distress and anxiety accompanied by significant physical symptoms including loss of sleep and stress, improper fees and costs, and

attorneys' and bookkeeping fees in the instant matter and in collateral litigation" (id. ¶¶ 81, 82, 83, 84, 85, 86, 87).

## FACTS

Based upon the extensive record in this case, and in the absence of a stipulation of undisputed material facts, the Court finds the following facts to be material and undisputed:

1. In October 2006, Diane Montagne separated from Michael Montagne (doc. ## 251, ¶ 8, 274 ¶ 8).

2. The separation agreement between Michael Montagne and Diane Montagne, dated December 2006 (the "Diane Montagne Agreement"), is a typed one page document that contains many hand-written interlineations. It describes a division of assets between Diane Montagne and Michael Montagne. Pursuant to this Agreement, Diane Montagne would receive both money and certain parcels of land from Michael Montagne (doc. # 328, Finding of Fact ¶5; ex. 8 to doc. # 251).

3. One of the typewritten provisions in the Diane Montagne Agreement indicated: "Ag Venture to refinance Mr. Montagne solely for *all* remaining farm debt, including open accounts and payables, with no exposure for Mrs. Montagne" (ex. 8 to doc. # 251). A handwritten notation near this provision stated that "All deal[s] contingent on Diane being relieved of all debt described" with an arrow pointing to the provision that Ag Venture would refinance Mr. Montagne's remaining farm debt. The handwriting went on to say "& Ag Venture refinancing its existing debt, which it will use its [best] efforts to [illegible]."[1] Id. Thomas Bellavance, President of Ag Venture, Lisa Chalidze, attorney for Diane Montagne, and Michael Montagne signed the bottom of this page. They also put their initials near other handwritten additions and cross-outs. Id.

4. As part of the Diane Montagne Agreement, Mr. and Mrs. Montagne transferred certain parcels of real property between themselves. Mr. Montagne agreed to pay Diane Montagne $240,000 as partial consideration for the property his spouse conveyed to him (doc. # 251, ex. 1, p. 33; doc # 274 ¶ 15).

5. On September 17, 2007, pursuant to the Diane Montagne Agreement, Ag Venture released Diane Montagne from liability for fifteen different notes and loan agreements that Mrs. Montagne had signed in favor of Ag Venture  (the "Release") (doc. # 251, ex. 8). The Release provided that it was "strictly limited to the liability of Diane M. Montagne. It does not and shall not be construed or deemed as a release of any other obligor or guarantee by whomsoever

---

[1] The parties agreed that the section of the sentence that did not come out indicated that Ag Venture would use its "best efforts to refinance the debt with Mr. Montagne as the sole debtor" (doc. # 274 ¶ 10).

owed." Id. Thomas Bellavance signed the release on behalf of Ag Venture (doc. # 293, Fact ¶ 6; Ex. 8 to doc. # 251).

6. Mrs. Montagne and her counsel were aware that Ag Venture had no ability to release her from any third party debts (doc. # 274 ¶ 14).

7. Ultimately, in a November 2007 letter to Ag Venture, Mr. Montagne decided that he did not want to pursue the refinancing indicated in the Diane Montagne Agreement (doc. # 251, ex. 12; doc. # 274 ¶¶ 25, 33).

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the record shows no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(C); Fed. R. Bankr. P. 7056. A genuine issue exists only when "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The substantive law identifies which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. See Anderson, 477 U.S. at 247. Factual disputes that are irrelevant or unnecessary are not material. See id. The court must view all the evidence in the light most favorable to the nonmoving party and draw all inferences in the nonmovant's favor. See Cruden v. Bank of New York, 957 F.2d 961, 975 (2d. Cir.1992). In making its determination, the court's sole function is to determine whether there is any material dispute of fact that requires a trial. See Anderson, 477 U.S. at 249; see also Palmieri v. Lynch, 392 F.3d 73, 82 (2d Cir.2004); Delaware & Hudson Ry. Co. v. Conrail, 902 F.2d 174, 178 (2d Cir.1990). But if the opposing party does not come forward with specific facts to establish an essential element of that party's claim on which it has the burden of proof at trial, the moving party is entitled to summary judgment. See Celotex, 477 U.S. at 323-24, 325 ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . . [T]he burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.")"); State v. G.S. Blodgett Co., 163 Vt. 175, 180, 656 A.2d 984, 988 (1995).

## JURISDICTION AND RELEVANT LAW

This Court has jurisdiction over this adversary proceedings and these cross-motions for summary judgment under 28 U.S.C. § 1334, 28 U.S.C. § 157(b)(2)(B) and (C), and the parties' stipulation to this Court's entry of a final judgment on the causes of action relating to this Title 11 case, see doc. # 144, pp. 2-3. As all of the causes of action in the Counterclaim assert state law causes of action, state law must guide this Court's analysis and determination of the issues. See Butner v. U.S., 440 U.S. 48, 54 (1979).

### DISCUSSION

### I.    The Contract Claims

Diane Montagne has alleged two contract causes of action in the Counterclaim. She asserts that (1) Ag Venture's conduct violated express contractual provisions (i.e., breach of contract), based on the "various agreements described, including the [Diane Montagne] Agreement of December 2006" (doc. # 83 ¶ 81); and (2) Ag Venture breached the contractual duty of good faith and fair dealing (id. ¶ 82). She provides no specific facts to support her allegations in these two paragraphs.  Rather, she merely points to Ag Venture's conduct as she describes it in the Counterclaim's preceding 79 paragraphs.

A.  Legal Arguments

*1. Breach of Contract*

Ag Venture argues that the "various agreements" Mrs. Montagne alleges that Ag Venture breached include the Ag Venture loan agreements with the Montagnes and MHI; even if Ag Venture breached those agreements in some way, her claims fail because she has been released from all obligations and liability and therefore she is no longer a party to those contracts; since there is no contract between Ag Venture and Diane Montagne, there can be no breach; and as a result of the Release, Diane Montagne has no damages and without proof of damages, her breach of contract claim fails as a matter of law (doc. # 250 p. 7). Ag Venture then asserts that Mrs. Montagne's contention that Ag Venture is liable for breaching the December "Agreement" by failing to use its best efforts to refinance all of Mr. Montagne's Ag Venture debt and the remaining farm debt also fails as a matter of law because the Debtor gave no consideration for Ag Venture's promise. Alternatively, even if the Diane Montagne Agreement was valid, Ag Venture claims that it satisfied its obligation. Moreover, it points out that Diane Montagne has offered no evidence to support her allegation that Ag Venture insisted Mr. Montagne sign a fraudulent loan application to the Farm Services Agency ("FSA"), and this failure to provide evidence is fatal since this allegation is the basis for the breach of contract cause of action in the Counterclaim.

In general, Diane Montagne responds that Ag Venture's Release does not defeat her contractual claims because the parties did not exchange mutual releases; that Ag Venture's reliance on Ben & Jerry's Homemade, Inc. v. Coronet Priscilla Ice Cream Shop, 921 F. Supp. 1206 (D.Vt. 1996), for the proposition that contract claims disappear when a contract is terminated, is misplaced; and Ag Venture failed to produce any evidence that Mrs. Montagne suffered no damages (doc. # 292, pp. 17-20). Specifically addressing the breach of contract claim, Diane Montagne challenges Ag Venture's assertion that it received no consideration from the Diane Montagne Agreement because: (a) Mrs. Montagne's shareholder status in Ag Venture was terminated and that "protected Ag Venture from a shareholder derivative action that otherwise could have been brought by Mrs. Montagne"; (b) the Diane Montagne Agreement actually facilitated Ag Venture's continuing relationship with Mr. Montagne, because her deep suspicions and refusal

to sign any documentation was no longer a factor in Ag Venture's dealing with Michael Montagne; and (c) the resulting ease in dealing with Mr. Montagne paved the way for Ag Venture to seek a FSA loan on his behalf. Id. at 20. She then posits that even assuming "a lack of traditional consideration," the Diane Montagne Agreement was enforceable "because she performed on the strength of it by relinquishing her interest in valuable farm real estate and other assets, and surrendering her stock in Ag Venture, assuming $500,000 in debt in her name alone." Id. at 21. She then acknowledges that Ag Venture did actually exercise its best efforts to refinance the farm debt in Mr. Montagne's name alone, albeit with the nefarious purpose of attempting to draw Michael Montagne into a fraud on the FSA. Id.

   *2.  Breach of Contractual Duty of Good Faith and Fair Dealing*

Ag Venture asserts that the good faith and fair dealing claim is based on the same conduct as the breach of contract claim; under Vermont law, a good faith and fair dealing claim may be asserted only if it is based on conduct other than that underlying the alleged breach of contract; and therefore the claim fails (doc. # 250, p. 9). For her part, Mrs. Montagne cites Vermont law holding that a breach of contract action can be premised solely on a breach of the covenant of good faith and fair dealing, and declares that there is "substantial evidence" (without any citations to the record) of Ag Venture's improper conduct with regard to the parties' loan documents.

   B.  Analysis

   *1.  Breach of Contract*

Although Mrs. Montagne expends many pages explaining the viability of her contract claims, she never explicitly argues that Ag Venture breached its duty under the loan agreements or notes. Her arguments concerning breach of contract focus on Ag Venture's alleged breach of the Diane Montagne Agreement.

In defining the elements of a breach of contract claim, the Vermont Supreme Court has stated, "'[i]n the obligation assumed by a party to a contract is found his duty, and his failure to comply with the duty constitutes a breach.'" Ben & Jerry's Homemade, Inc. v. Coronet Priscilla Ice Cream Shop, 921 F. Supp. 1206, 1212 (D.Vt. 1996) (quoting Lapoint v. Dumont Const. Co., 128 Vt. 8, 10, 258 A.2d 570 (1969)). "To prove breach of contract, plaintiff must show damages. Two types of damages are recoverable: direct damages that naturally and usually flow from the breach itself, and special or consequential damages, which must pass the tests of causation, certainty and foreseeability." Smith v. Country Village Intern., Inc., 183 Vt. 535, 537, 944 A.2d 240, 243 (2007). Special or consequential damages must also "be reasonably supposed to have been in the contemplation of both parties at the time they made the contract." EBWS, LLC v. Britly Corp., 181 Vt. 513, 517, 928 A.2d 497, 502 (2007).

On the question of whether Mrs. Montagne showed damages, the Court turns to the harm she alleges in the relevant breach of contract paragraph of the Counterclaim. Mrs. Montagne alleges that, as a

consequence of Ag Venture's breach of contract, she was denied the benefits of her bargain; she lost prof-

its; and she was compelled to pay improper fees and costs, attorneys' fees, and bookkeeping fees (doc. #

87 ¶ 81). To the extent that these damages are direct damages, Mrs. Montagne offers no factual undergird-

ing for these allegations. She has therefore waived this argument. See In re Montagne, 431 B.R. 148, 156

(Bankr. D.Vt. 2009) (citing Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir.1998) (holding that issues

"not sufficiently argued in the briefs are considered waived" and normally are not addressed on appeal);

American Tissue, Inc. v. DLJ Merchant Banking Partners, II, L.P., 2006 WL 1084392 at * 6 (S.D.N.Y.

Apr.20, 2006) (applying Norton rule to district courts); Fidelity Mortg. Group v. Mulvey, 2003 WL

25745703 *1 (Vt.2003) ("Briefs that do not set forth clear and cogent arguments are inadequate to aid our

review, and we do not entertain arguments that are not adequately briefed.").

Mrs. Montagne attempts to substantiate her alleged consequential damages (i.e., her separate liv-

ing expenses and the loss of her projected share of farm income over ten years) by pointing to the "undis-

puted" fact (without citation to the record) that "a significant contributing factor to the Montagnes' sepa-

ration was the uncertainty and tension over the state of the chaotic Ag Venture lending relationship" (doc.

# 292, p. 19). This unsupported, conclusory, and speculative assertion is not sufficient to warrant a finding

that she is entitled to consequential damages as a matter of law. The causative link between the Ag Ven-

ture lending relationship and the Montagnes' domestic situation is attenuated at best, and certainly was

not foreseeable or "reasonably . . . within the contemplation of the parties," Huard v. Henry, 2008 WL

2781189 (VT May Term, 2008), when the Montagnes and Ag Venture signed the various loan documents.

The loan agreements did not contain provisions relating to damages that the borrowers might encounter;

rather, the notes provided remedies to the lender in the event of the borrowers' default. See doc. # 251, ex.

4.

Furthermore, non-economic damages such as emotional distress, anxiety, loss of sleep, and stress,

based on Ag Venture's alleged breaches (doc. # 83, ¶¶ 81, 82), are not compensable in a breach of con-

tract action. See Chandler v. Bombardier Capital, Inc., 1992 WL 474798 (Vt., Oct. 8, 1992) ("To the ex-

tent that these claims seek tort damages exclusively on the basis of a simple breach of contract, they are

noncognizable. Generally as a matter of common law doctrine, tort damages for emotional distress and

related harms resulting from a breach of an employment contract are not recoverable.") (quotation and

citation omitted). See Restatement (Second) of Contracts § 353 ("Recovery for emotional disturbance will

be excluded unless the breach also caused bodily harm or the contract or the breach is of such a kind that

serious emotional disturbance was a particularly likely result."); 24 Williston on Contracts § 64:7 (4th ed)

("Mental suffering caused by a breach of contract, although it may be a real injury, is not generally consi-

dered as a basis for compensation in contract actions."). Mrs. Montagne did not allege that she suffered

bodily harm, nor was the nature of the contract such that a breach would be likely to result in serious emotional disturbance.

On the question of whether Ag Venture breached a contractual duty, Mrs. Montagne concentrates her arguments on Ag Venture's alleged breach of the December 2006 Diane Montagne Agreement, and seeks to rebut Ag Venture's assertion that the Agreement was not enforceable because Ag Venture received no consideration for signing it. "The existence of sufficient consideration for a contract is a question of law and is evaluated at the time the contract was formed." Weed v. Weed, 2008 VT 121, 968 A.2d 310, 313 (Vt. 2008) (quotation and citation omitted). "To constitute consideration, a performance or a return promise must be bargained for. Bargained-for consideration must induce a promise or performance, and not be a mere pretense of a bargain." Id. at 314 (quotation and citation omitted). A "bilateral contract involves mutual promises which simultaneously obligate the parties." Id. However, if there is a lack of mutuality – a lack of mutual promises – there is a concomitant lack of consideration. See 3 Williston on Contracts § 7:14 (4th ed.) ("The courts have often stated as a requirement for formation of simple contracts that there must be mutuality of obligation. Unfortunately, this form of statement may cause confusion for it has no definite meaning; it is, in fact, simply an awkward way of stating that there must be valid consideration.").

In the Diane Montagne Agreement, Diane and Michael Montagne made mutual promises to each other concerning the exchange of land and money. That Agreement was a bilateral contract between them. By contrast, Ag Venture's only obligation ran to Michael Montagne, viz., to use its best efforts to help him refinance the farm debt, with one of the 'terms' being "no exposure for Mrs. Montagne." Further, the fact that the property exchange between Diane and Michael Montagne set out in the Diane Montagne Agreement was "contingent" on Diane Montagne being relieved of all remaining farm debt was a condition of the Agreement between Diane and Michael; it did not impose a legally binding promise on Ag Venture. The Agreement recites no consideration or reciprocal promise from either Michael or Diane Montagne to Ag Venture in exchange for Ag Venture's "best efforts" promise. As a result, the Court finds the Diane Montagne Agreement did not constitute a legally valid contract between Ag Venture and either Diane Montagne or Michael Montagne, or both of them.[2] Moreover, even if the Diane Montage Agreement could be enforced against Ag Venture, Mrs. Montagne never explains how Ag Venture breached it.[3]

---

[2] The Court makes no finding on whether the Diane Montagne Agreement was valid as between Diane and Michael Montagne.

[3] As an additional argument, apparently in recognition of the fact that her arguments related to consideration might not carry the day, Mrs. Montagne offers up the possibility of estoppel supporting her position. In this argument, she cites Overlock v. Central Vermont Public Service, 126 Vt. 549, 237 A.2d 356 (1967), which in turn quotes the Restatement (Second) of Contracts, § 90, on promissory estoppel. In Overlock, the plaintiff sought to convert a relationship where there was "concededly no true contractual relationship" into a contract, as failure to do so would produce "injustice and unconscionable advantage." Id. at 552, 237 A.2d at 358. Other than conclusorily stating that promissory estoppel applies in this instance, however, Mrs. Montagne has not argued the elements of the doctrine or specified any fact that would support this theory. Therefore, the Court finds this argument to be without merit.

Accordingly, the Court finds that, as a matter of law, Diane Montagne's counterclaim for breach of contract fails and grants Ag Venture's motion for summary judgment on this cause of action.

2.    *Breach of Good Faith and Fair Dealing*

The implied covenant of good faith and fair dealing exists in every contract and ensures that each party work with "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." Carmichael v. Adirondack Bottled Gas Corp. of Vt. , 161 Vt. 200, 208, 635 A.2d 1211, 1216 (1993) (citing Restatement (Second) of Contracts § 205 cmt. a (1981)). "To carry its burden for the good-faith-and-fair-dealing claim, borrower must produce evidence that could lead a reasonable jury to conclude that [the lender] breached an implied-in-law promise not to do anything to undermine or destroy [borrower's] rights to receive the benefit of the parties' agreement." R & G Properties, Inc. v. Column Financial, Inc., 184 Vt. 494, 514, 968 A.2d 286, 300 (Vt. 2008) (citation omitted). "Good faith is ordinarily a question of fact. However, plaintiff must provide a basis on which the fact finder can find a violation." Id., 968 A.2d at 301.

Diane Montagne asserts that "substantial evidence has been adduced" that Ag Venture engaged in bad faith conduct, including: generating multiple versions of loan documents in varying amounts but with the same loan numbers, and creating the appearance that all versions had been signed by the borrowers; misapplying payments and generating inaccurate and misleading loan histories; disbursing loan proceeds in ways contrary to loan documents; charging improper interest; lying to Mrs. Montagne about the status of a supposedly pending refinance application when in fact they had been withdrawn; and attempting to gain Mr. Montagne's participation in a fraud on the U.S. government (doc. # 292 p. 24). Once again, however, Mrs. Montagne provides no citations to the record where such "substantial evidence" may be found.

It appears that, in this cause of action, Diane Montagne is pointing to Ag Venture's allegedly improper conduct in relation to the loan agreements from which she has been released, rather than to the Diane Montagne Agreement. Most of the conduct she alleges took place between Ag Venture and Mr. Montagne, not between Ag Venture and her. The only allegation of an Ag Venture breach of good faith and fair dealing that involves her is Ag Venture's "lie" to her about the status of a pending refinance application. As a matter of law, this is not sufficient to constitute a violation of good faith and fair dealing because the allegation concerns loan documents under which Diane Montagne had no liability: only Michael Montagne signed that loan application. As a matter of prudential standing, Mrs. Montagne cannot raise a cause of action based upon Mr. Montagne's legal rights under a contract; she may only assert a cause of action based upon her own rights. See Devlin v. Scardelletti, 536 U.S. 1, 7 (2002). Moreover, an allegation does not constitute evidence and Diane Montagne did not carry her burden on this claim. Therefore,

the Court denies her motion for summary judgment. Ag Venture proved its right to relief as a matter of

law and the Court therefore grants summary judgment to Ag Venture on this claim.

## II.    Negligence Claims

In the Counterclaim, Diane Montagne asserted causes of action for negligence as well as for negli-

gent provision of pecuniary information (doc. # 83, ¶¶ 83, 84).

A. Legal Arguments

1. *Negligence*

Ag Venture posits that Diane Montagne's general negligence claims are based solely on an alleged

breach of contractual duty, not on any duty that existed independently of the contracts; she has no cogniz-

able damage claims since the economic damages she seeks (lost profits, loan fees, bookkeeping costs)

cannot be recovered through tort law absent an independent duty to prevent economic loss and she has no

interest in the farming operations or MHI (doc. # 250, pp. 10-11). Ag Venture also asserts that Diane

Montagne's claims for non-economic damage (emotional distress, anxiety) fail because she does not meet

the test under Vermont law for negligent infliction of emotional distress. Id. at 11-12.

Mrs. Montagne asserts a scattershot of negligence arguments: (1) Ag Venture's conduct violates

the Vermont Licensed Lender Act, and that statute contains both a standard of care in the disbursement of

loan proceeds and a legal duty on the part of lenders to borrowers; (2) "violations such as failure to timely

effectuate promises [sic] refinancing agreements . . . are actionable under negligence" (with no citation to

case law); (3) whether a duty to avoid harm to another springs from contract or tort is not controlling; (4)

the economic loss rule cited by Ag Venture concerning damages is irrelevant in this case and Ag Ven-

ture's negligent conduct caused her to suffer significant physical symptoms; and (5) even if the economic

loss rule applies, her claims fit the exception articulated in O'Connell v. Killington, Ltd., 164 Vt. 73, 665

A.2d 39 (1995) (doc. # 292, pp. 25-28).

2. *Negligent Provision of Pecuniary Information*

Paragraph 75 of the Counterclaim sets forth the basis for the negligent provision of pecuniary in-

formation claim:

> Upon information and belief, in the wake of the failure of the planned Ag Venture/Michael
> Montagne refinancing, Ag Venture's related company, Bourdeau Brothers, Inc., in posses-
> sion of confidential financial information of both Michael Montagne and Diane Montagne
> provided by Ag Venture, identified the separately-owned assets of Diane Montagne, open-
> ly and honestly obtained, as a potential fund for repayment of the debt claimed by Bour-
> deau Brothers, Inc. – assets that could not be reached directly by Ag Venture, due to the
> orderly transition of these assets from Michael Montagne to Diane Montagne with the full
> knowledge and written consent of Ag Venture.

(doc. # 83, ¶ 75). Ag Venture maintains that the "confidential information" it is accused of providing to

BBI consisted of details about the real property owned by Mrs. Montagne that had been attached by BBI.

According to Ag Venture, information about this property was a matter of public record and was not "confidential" at all (doc. # 250 p. 12).

Mrs. Montagne reiterates paragraphs 60-64 of the Counterclaim, in which she made the following allegations: (1) Ag Venture funded loan # 538 for Montagne Heifers, Inc. in November 2005 in the amount of $457,000; (2) Ag Venture failed to provide copies of documents related to loan # 538, including a $33,112.55 advance, despite repeated requests; (3) late fees accrued almost immediately on the loan despite Ag Venture's "total control" over the Montagne Farm income via milk check assignment; (4) Ag Venture did not properly apply payments on the MHI debt, which would have reduced that debt to less than $90,000; and (5) the basis for Ag Venture's claim against Diane Montagne in this action concerns the disposition of MHI assets from a sale of cattle, but MHI's debt would have been nearly extinguished if Ag Venture had not misapplied payments (doc. # 292 p. 29). Mrs. Montagne then concludes, without any further argument, that "Ag Venture has submitted no evidence to the Court to suggest that these factual allegations [in paragraphs 60-64 of her counterclaim] are incorrect." Id.

B. Analysis

   1. *Negligence*

The elements of common law negligence are: (1) the defendant owed a legal duty to protect the plaintiff from an unreasonable risk of harm; (2) the defendant breached that duty; (3) the defendant's conduct was the proximate cause of plaintiff's injuries; and (4) the plaintiff suffered actual damage. Knight v. Rower, 170 Vt. 96, 102, 742 A.2d 1237, 1242 (1999). Mrs. Montagne has cobbled together a number of cases from Vermont and elsewhere in an effort to show that some of the negligence elements have been established. Although she doesn't clearly articulate it, her theory appears to be that Ag Venture, as a licensed lender, has a duty to her under both the Licensed Lender Act ("LLA") and the various contracts, and should have exercised due care (for example, in disbursing loan proceeds and timely effectuating refinancing agreements). However, her arguments do not address how Ag Venture's conduct (for example, the alleged failure to refinance Michael Montagne's loans) was the proximate cause of her injuries – a necessary element of any negligence cause of action.

The element of duty "is central to a negligence claim, and its existence is primarily a question of law. The imposition of a duty is an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." O'Connell v. Killington, Ltd., 164 Vt. 73, 76, 665 A.2d 39, 42 (1995) (quotation marks and citations omitted). The Vermont Supreme Court has identified

   a number of factors to consider in determining whether a duty exists. These factors may include the degree of certainty that plaintiff suffered injury, the closeness of the connection between defendant's conduct and plaintiff's injury, the moral blame attached to defendant's conduct, the policy of preventing future harm, the burden to the defendant, the con-

sequences to the community of finding a duty, and the availability and cost of insurance…
[A]n additional factor is that plaintiff seeks a duty to prevent purely economic loss.

Id. at 77, 665 A.2d at 42. "The underlying analysis turns on whether there is a duty of care independent of any contractual obligations." Wentworth v. Crawford & Co., 174 Vt. 118, 127, 807 A.2d 351, 357 (2002) (citations and quotation marks omitted). "Negligence law does not generally recognize a duty to exercise reasonable care to avoid intangible economic loss to another unless one's conduct has inflicted some accompanying physical harm." O'Connell, 164 Vt. at 77, 665 A.2d at 42.

Assessment of damages must comply with the economic loss rule, which

prohibits recovery in tort for purely economic losses. The rule strives to maintain a separation between contract and tort law. In tort law, duties are imposed by law to protect the public from harm, whereas in contract the parties self-impose duties and protect themselves through bargaining. Thus, negligence actions are limited to those involving unanticipated physical injury, and 'claimants cannot seek, through tort law, to alleviate losses incurred pursuant to a contract.'

EBWS, LLC v. Britly Corp., 181 Vt. 513, 524, 928 A.2d 497, 507 (2007) (citations omitted). See also Springfield Hydroelectric Co. v. Copp, 172 Vt. 311, 315, 779 A.2d 67, 71 (2001) (economic loss doctrine bars recovery of damages for harm other than physical harm to persons or property under negligence principles).

Diane Montagne has cited, and the Court has found, no case that has held that the LLA imposes on lenders either a standard of care for lending or a tort duty to protect borrowers. If a party violates that statute (as the Court recently found to have occurred in this case, see doc. # 346), the LLA provides particular remedies; it does not set out a "standard of care" as that term is generally understood. The case cited by Mrs. Montagne, Marzec-Gerrior v. DCP Indus., 164 Vt. 569, 674 A.2d 1248 (1995), is wholly inapposite. It stands for the unremarkable proposition that federal and state occupational safety and health regulations establish a standard of care in a straightforward negligence case involving personal injury. Ag Venture had no independent duty to protect Diane Montagne's economic interests. Further, the facts Diane Montagne points to as constituting negligence all relate to Ag Venture's alleged breaches of contract (such as misapplying payments or failing to provide documents) and do not assert conduct outside the scope of the various contracts.

The other negligence theory propounded by Mrs. Montagne – that Ag Venture had a "duty" to refinance certain loans (see doc. # 83, ¶¶ 24, 25) – emanated specifically from the contract (the notes). This theory fails because Mrs. Montagne has attempted to dress a breach of contract cause of action in negligence clothing, which has no traction under Vermont law. For example, in Hoeker v. Department of Social & Rehabilitation Servs., 171 Vt. 620, 765 A.2d 495 (2000), the plaintiff asserted that Social and Rehabilitation Services ("SRS") was negligent in breaching the contract it had with her to serve as a foster parent because SRS failed to provide particular services. The Court wrote:

> Turning to the merits, we first clarify the type of claim that plaintiff raises. Despite plain-
> tiff's attempt to characterize her claims as negligence-based, the more persuasive analysis
> is that her claims are based on breach of contract. Plaintiff claims that her damages are a
> result of defendant's failure to provide wraparound services to [a child], a duty allegedly
> owed under the contract between the parties. Alternatively, plaintiff claims that those ser-
> vices were promised by a prior oral agreement between the parties. Under either claim, the
> 'duty' that defendant purported to breach arose out of a contract, rather than common law
> or statute.

Id. at 621, 765 A.2d at 498. Ag Venture has no statutory or common law duty of care to Diane Montagne. "Without a duty of care, an action for negligence cannot stand." Wentworth v. Crawford & Co., 174 Vt. 118, 807 A.2d 351, 357 (2002).

According to Mrs. Montagne, the basis for damages related to this cause of action (the "significant physical symptoms" that she allegedly suffered) were spelled out in paragraphs 76-80 of the complaint. The Court is not persuaded. Paragraph 76 concerned a separate lawsuit filed against her by BBI and is ir-relevant to the question of damages. Paragraph 77 concerned Ag Venture filing the complaint in this ac-tion which cast her and Michael Montagne "in a false light as dishonest people willing to abscond with assets, and taking advantage of the necessitous circumstances in which Plaintiff itself helped to place them, inter alia, in order to reach the assets of Diane Montagne to which Plaintiff has no right. . ." (doc. # 83 ¶ 77). There can be no injury resulting from false light, as the Court has found the allegations against Mrs. Montagne to be well-founded.[4] Paragraphs 78 and 79 stated that Ag Venture did not disclose that BBI was a related company, an allegation irrelevant to the question of injury; paragraph 80 included the unclean hands claim, also irrelevant to any injury Diane Montagne may have suffered as a result of Ag Venture's negligence.

In order to recover for non-economic damage – emotional distress, accompanied by significant physical symptoms – "a plaintiff must make a threshold showing that he or someone close to him faced physical peril." Brueckner v. Norwich Univ., 169 Vt. 118, 125, 730 A.2d 1086, 1092 (1999). The Ver-mont Supreme Court went on to say that "[t]he prerequisites for establishing a claim [of negligent inflic-tion of emotional distress] differ according to whether plaintiff suffered a physical impact from an exter-nal force." Id. If there was such an impact, the plaintiff may recover for emotional distress stemming from the incident; if not, the plaintiff must show that "(1) he was within the 'zone of danger' of an act negli-gently directed at him by defendant, (2) he was subjected to a reasonable fear of immediate personal in-jury, and (3) he in fact suffered substantial bodily injury or illness as a result." Id. Diane Montagne has pointed to absolutely no evidence, and in particular has referred to no medical or other records, that would support her emotional distress damages, nor does she even argue that the three elements of negligent in-fliction of emotional distress apply.

---

[4] This Court has already held that Ag Venture had a right to the proceeds from the sale of MHI livestock and that Diane Mon-tagne converted $240,000 of those proceeds. See doc ## 328, 352.

13

The Court therefore denies Diane Montagne's motion for summary judgment, and grants Ag Venture's motion for summary judgment, on the negligence claim.

*2.  Negligent Provision of Pecuniary Information*

The Court notes a disconnect between the two paragraphs in the Counterclaim that describe this claim (¶¶ 74, 85) and the argument Mrs. Montagne makes in her brief in support of judgment on this claim. In the Counterclaim, Diane Montagne asserts that Ag Venture negligently provided confidential financial information to BBI concerning her separately-owned assets which could be used as a potential fund for repayment of BBI debt and which could not be reached directly by Ag Venture due to the transfer of those assets from Michael Montagne to Diane Montagne. By contrast, in her brief (doc. # 292 p. 28), Mrs. Montagne cites the Restatement (Second) of Torts § 552, which sets out a cause of action for negligent misrepresentation. Diane Montagne has cited, and this Court can find, no case decided by the Vermont Supreme Court that has recognized "negligent provision of pecuniary information" as a stand-alone cause of action in Vermont, or as a species of general negligence. However, negligent misrepresentation is well-established in this State, which has adopted the Restatement's definition of this tort:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable case or competence in obtaining or communicating the information.

Howard v. Usiak, 172 Vt. 227, 230-31, 775 A.2d 909, 913 (2001) (citing cases). While what constitutes "reasonable care or competence depends on the circumstances, and will vary depending on many factors; the question is, therefore, generally for the factfinder, id., negligent misrepresentation claims may be addressed on summary judgment. Repucci v. Lake Champagne Campground, Inc., 251 F. Supp. 2d 1235, 1239 (D.Vt. 2002). The Howard Court was cognizant that negligent misrepresentation should not bleed into breach of contract theories.

> We have emphasized in prior cases the need to keep tort and contract theories separate so that negligence concepts do not overrun the limitations on contractual rights and remedies. We do so here by holding that 'information' for purposes of the elements of negligent misrepresentation does not normally include the intention to perform a contractual commitment.

Id. at 232, 775 A.2d at 913-14.

Paragraphs 60-64 of the Counterclaim, quoted by Diane Montagne in her brief and summarized above, constitute the basis for this cause of action and concern Ag Venture's failure to provide copies of loan documents which caused late fees to accrue, and its failure to properly apply payments on a debt. Not only does she fail to identify any "false information," that Ag Venture provided, she also fails to articulate any resultant damages, see Repucci, 251 F. Supp. 2d at 1239. All of the issues Diane Montagne raises

14

relate to performance of contractual commitments and therefore are not legally cognizable under the negligent misrepresentation tort.

Mrs. Montagne has waived her argument that paragraph 75 of the Counterclaim supports her "negligent provision of confidential information" claim because she has not argued it in her brief. See Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal."); In re Montagne, 413 B.R. 148, 156 (Bankr. D.Vt. 2009) (citing cases that apply Norton rule concerning inadequately briefed arguments to district courts). That argument would have no traction in any event because, as Ag Venture points out, the "confidential information" allegedly provided to BBI was about real property owned by Mrs. Montagne that was a matter of public record. Furthermore, Diane Montagne has not shown why Ag Venture should be liable because another entity, BBI, attached her property.

In the grander scheme of things, Mrs. Montagne's argument on this cause of action consists of an extensive quote from the Restatement, a lengthy repetition of factual paragraphs from the Counterclaim, followed by a conclusory statement that the opposing party has not shown that those facts are incorrect. That is insufficient to obtain relief on a motion for summary judgment. The Court concludes that Diane Montagne's argument on negligent misrepresentation fails, see Schnabel v. Nordic Toyota, Inc., 168 Vt. 354, 362, 721 A.2d 114, 120 (1998) (stating that Court will not address assertions unaccompanied by facts, law or reasoning), and Ag Venture is entitled to summary judgment as a matter of law on this claim.

### III.   Fraud Claims

Mrs. Montagne sets out two fraud-based causes of action in the Counterclaim. She alleges that Ag Venture's conduct "constitutes fraudulent inducement, fraud and/or negative deceit, inter alia in presenting promissory notes purportedly for one purpose to which all parties agreed, with proceeds actually applied to other purpose." (doc. # 83 ¶ 85). She also alleges "express and positive fraud as a result of Ag Venture: (a) altering promissory notes to append signature pages from other documents when the borrowers had not, in fact, signed the promissory notes to which the photocopied signature pages were appended in 2005 and 2006; (b) knowingly and intentionally understating debt and overstating assets in the loan application to FSA in or about November 2007; and (c) failing to disclose material facts known only to Plaintiff, including misapplication of loan proceeds contrary to the agreement of the parties." Id. ¶ 89.

A. Legal Arguments

Ag Venture asserts that both fraud claims fail for two reasons: (1) they are not factually distinguishable from the contract claims, and Smith v. Country Village Int'l, Inc., 183 Vt. 535, 944 A.2d 240 (2007) requires fraud to be extraneous to the contract, rather than fraudulent nonperformance of the contract itself; and (2) no damages flow from the alleged fraud since Mrs. Montagne had been released from her obligations on the Ag Venture loan agreements (doc. # 250, p. 13).

The sum total of Mrs. Montagne's argument on both fraud claims consists of a lengthy quote of six paragraphs from her Counterclaim (the paragraph numbers are not specified), followed by three sentences claiming that the <u>Smith</u> case cited by Ag Venture is not applicable.

## B. Analysis

The absence of argument by Diane Montagne leads the Court to deny her motion for summary judgment on both fraud claims. <u>See</u>, <u>e.g.</u>, <u>International Soc. for Krishna Consciousness, Inc. v. Lee</u>, 505 U.S. 672, 676-77 (1992) (observing that absence of argument on a claim caused district court to grant summary judgment). In addition, all of the paragraphs from the complaint Mrs. Montagne cites in support of fraud begin "Upon information and belief." She has not come forward with any specific facts to establish the elements of her claim on which she has the burden of proof at trial, and thus she is not entitled to judgment as a matter of law.[5] <u>See</u> <u>G.S. Blodgett Co.</u>, 163 Vt. 175, 180, 656 A.2d 984, 988 (1995). The question before the Court is whether Ag Venture is entitled to dismissal of these causes of action as a matter of law.

### 1. Fraudulent Inducement, Fraud, and/or Negative Deceit

In order to succeed on a fraud claim in Vermont, a plaintiff must show that a defendant (1) intentionally misrepresented an existing fact; (2) the misrepresentation affected the essence of the transaction between the parties; (3) the misrepresentation was false and known to be false by the maker; (4) the fact at issue was not open to the defrauded party's knowledge; and (5) was relied upon by the defrauded party to her detriment. <u>Silva v. Stevens</u>, 156 Vt. 94, 102, 489 A.2d 852 (1991). To establish fraud, there must be "some affirmative act, or . . . concealment of facts by one with knowledge and a duty to disclose." <u>Sugarline Assocs. v. Alpen Assocs.</u>, 155 Vt. 437, 444, 586 A.2d 1115, 1119 (1990). "Where such a duty is present, the failure to disclose a material fact coupled with an intention to mislead or defraud rises to the level of material misrepresentation." <u>White v. Pepin</u>, 151 Vt. 413, 416, 561 A.2d 94, 96 (1989). "Liability in fraud extends only to harm caused by the [party's] justifiable reliance on the misrepresentation." <u>Proctor Trust Co. v. Upper Valley Press, Inc.</u>, 137 Vt. at 351, 405 A.2d at 1224-25.

"Silence alone is insufficient to constitute fraud unless there is a duty to speak. Where there is a duty to speak, however, Vermont has long recognized the doctrine of negative deceit." <u>Sutfin v. Southworth</u>, 149 Vt. 67, 70, 539 A.2d 986, 988 (1987). With regard to fraudulent inducement, "[i]t is well established that a party induced into a contract by fraud or misrepresentation can rescind the contract and avoid liability for any breach thereon. . . . A misrepresentation is fraudulent when made with knowledge

---

[5]  In addition, Diane Montagne's insertion of "<u>inter</u> <u>alia</u>" to describe the underpinnings of this claim (Ag Venture's conduct "constitutes fraudulent inducement, fraud and/or negative deceit, <u>inter</u> <u>alia</u> in presenting promissory notes purportedly for one purpose to which all parties agreed, with proceeds actually applied to other purposes.") is especially in adequate since V.R.C.P. 9(b) requires fraud to be pled "with particularity" and to aver intent or knowledge generally. As pled, the fraudulent inducement, fraud and/or negative deceit counterclaim fails to meet that standard.

of its falsity." Sarvis v. Vermont State Colleges, 172 Vt. 76, 80, 772 A.2d 494, 498 (2001) (citations omitted).

The fraudulent inducement, fraud and/or negative deceit cause of action in Mrs. Montagne's Counterclaim is premised on Ag Venture "presenting promissory notes purportedly for one purpose to which all parties agreed, with proceeds actually applied to other purposes" (doc. # 83 ¶ 85). The paragraph from her complaint that relates to this particular claim (¶ 54) alleges improper application of proceeds based on the terms of the loans and other agreements. The "factual" underpinnings of this claim attempt to present contract-based claims as fraud, as Ag Venture's duty to properly apply proceeds from a promissory note arises from the loan agreements and promissory notes themselves. The Court finds persuasive Ag Venture's argument that the fraudulent inducement, fraud and/or negative deceit claim Diane Montagne asserts is fatally flawed because it is factually indistinguishable from her breach of contract claim, see Follo v. Florindo, 970 A.2d 1230, 1241 (Vt. 2009); Smith, 183 Vt. at 536, 944 A.2d at 243; Bevins v. King, 147 Vt. 203, 204, 514 A.2d 1044, 1045 (1986). Therefore, Ag Venture is entitled to judgment, as a matter of law, on this claim.

   2.   *Express and Positive Fraud*

The Court has found 17 Vermont cases issued between 1826 and 1921 that mention positive fraud, and three Vermont cases issued between 1848 and 1853 that mention express fraud, and none since that time that refer to either term. This leads the Court to concludes that the terms "express fraud" and "positive fraud" are antiquated descriptions of actual fraud. See, e.g., Hitchcock v. Kennison, 95 Vt. 327, 115 A.156, 160 (1921) (equating positive fraud with actual fraud). It is not clear why Mrs. Montagne did not include the predicates for this cause of action in the prior fraud claim. In any event, the three premises underlying this claim are that Ag Venture: (a) altered signature pages of promissory notes; (b) knowingly understated debt and overstated assets for a November 2007 loan application to the FSA; and (c) misapplied  loan proceeds and payments contrary to the agreement of the parties (doc. # 83, ¶ 89). This third premise was raised and disposed of in the fraud section above.

Mrs. Montagne has neither constitutional nor prudential standing that would allow her to raise any claim of fraud pertaining to Michael Montagne's November 2007 loan application to the FSA. As this Court explained in In re Montagne, __ B.R. __, 2009 WL 3816119 (Bankr. D.Vt. Nov. 13, 2009):

> In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498 (1975).The standing inquiry "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." As far as the constitutional limitations . . . "a claimant must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling." Davis v. Federal Election Com'n, __ U.S. __, 128 S.Ct. 2759, 2768 (2008) (internal quotation marks and citations omitted). . .

Prudential standing is not a constitutional consideration but rather "embodies 'judicially self-imposed limits on the exercise of federal jurisdiction.'" Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11 (2004) (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)). Prudential standing considerations include, inter alia, "'the general prohibition on a litigant's raising another person's legal rights. . ." Devlin v. Scardelletti, 536 U.S. 1, 7 (2002) (quoting Allen, 468 U.S. at 751). In other words, "the injured party must assert its own claims, rather than another's," to have prudential standing. In re Wilhelm, 407 B.R. 392, 398 (Bankr. D.Idaho 2009).

Id. at *6-7.

Only Mr. Montagne signed the FSA loan application; Mrs. Montagne did not. See doc. # 251, ex. 9. Diane Montagne was not a party to the contract and therefore can claim no injury under it. Moreover, she cannot raise Mr. Montagne's legal rights. Accordingly, she has no standing to rely upon this second factual predicate for her fraud claim.

As to the final premise of the express and positive fraud counterclaim – Ag Venture's alleged substitution of signature pages on the promissory notes for loans # 517 and 584 – Mrs. Montagne does not point to any fact in the record supporting this allegation; she only points to allegations in the Counterclaim. Nor does she explain how she was damaged by these alleged frauds. See Smith v. Country Village Inter., Inc., 183 Vt. 535, 944 A.2d 240 (2007) ("Failure to prove damages is fatal to a claim . . . for fraud."). An assertion of damages would be particularly difficult for Mrs. Montagne to show because Ag Venture released her from her obligations, and she has no liability on these notes.

Accordingly, the Court denies Diane Montagne's motion for summary judgment and grants Ag Venture's motion for summary judgment on the fraud claims set out in the Counterclaim.

### IV.    Lender Control Over a Borrower and Interference with Actual and/or Prospective Contractual Relations

From this Court's review, it does not appear that Vermont recognizes a cause of action for "Lender Control over a Borrower." This impression is reinforced by the fact that Mrs. Montagne does not cite a single Vermont case and instead relies solely upon a 1989 California law review article and what appears to be either a book or an article on lender liability ("Lender Liability" § 1603 by Capello (3d ed. 1999)) to describe the parameters of this cause of action (doc. # 292, p. 32, n.62). Only the Vermont Supreme Court or the Vermont Legislature possesses the prerogative to recognize a new cause of action, not a party. See, e.g., Langle v. Kurkul, 146 Vt. 513, 520, 510 A.2d 1301, 1305-06 (1986) ("Our Court should not recognize a new cause of action or enlarge an existing one without first determining whether there is a compelling public policy reason for the change.").

For its part, Ag Venture cites a Fifth Circuit case, Kirvo Ind. Supply Co. v. Nat'l Distillers & Chemical Corp., 483 F.2d 1098, 1105 (5th Cir. 1973), addressing a piercing the corporate veil action, in support of its right to summary judgment on this claim. That case held that if

> a lender becomes so involved with its debtor that it is in fact actively managing the deb-
> tor's affairs, then the quantum of control necessary to support liability under the 'instru-
> mentality' theory may be achieved. . . . Courts require a strong showing that the creditor
> assumed actual, participatory, total control of the debtor. Merely taking an active part in
> the management of the debtor corporation does not automatically constitute control. . .

Id. at 1105. This is a high standard. If it were applicable, Diane Montagne's assertions of improper control by Ag Venture, with no factual support, fail to meet it.

Diane Montagne concludes the lender control section of her brief with this statement: "A fair read-ing of the counterclaim suggests plainly that Ag Venture's conduct interfered with the Montagnes' ability to perform under agreements. This . . . itself supports a control cause of action" (doc. # 292, p. 32). It would appear that Mrs. Montagne has equated the lender control claim with her interference with actual and/or prospective contractual relations claim (particularly since she did not specifically respond in her brief to Ag Venture's motion for summary judgment on the interference with actual and/or prospective contractual relations). In Vermont, the elements of the tort entitled "tortious interference with prospec-tive[6] contractual relationships" is as follows:

> (1) the existence of a valid business relationship or expectancy;
> (2) knowledge by the interferer of the relationship or expectancy;
> (3) an intentional act of interference on the part of the interferer;
> (4) damage to the party whose relationship or expectancy was disrupted; and
> (5) proof that the interference caused the harm sustained.

Gifford v. Sun Data, Inc., 165 Vt. 611, 613, 686 A.2d 472, 474 (1996) (quoting Triple R Indus., Inc. v. Century Lubricating Oils, Inc., 912 F.2d 234, 236 (8th Cir.1990)). In determining whether an actor's con-duct in intentionally interfering with a contract of a prospective contractual relation of another is impro-per, consideration is given to the following factors:

> (a) the nature of the actor's conduct,
> (b) the actor's motive,
> (c) the interests of the other with which the actor's conduct interferes,
> (d) the interests sought to be advanced by the actor,
> (e) the social interests in protecting the freedom of action of the actor and the contractual
> interests of the other,
> (f) the proximity or remoteness of the actor's conduct to the interference, and
> (g) the relations between the parties.

Id. at  613 n.1, 686 A.2d at 474 n.1 (quoting Restatement (Second) of Torts § 767 (1979)).

> '[T]o be liable for interference with a contractual relationship, the defendant must have in-
> tentionally and improperly induced or caused [a third party] not to perform under [his] con-
> tract with the plaintiff.' Williams v. Chittenden Trust Co., 145 Vt. 76, 80, 484 A.2d 911,
> 913 (1984) (emphasis added). The right protected is the right to be secure in one's business
> relations. Mitchell v. Aldrich, 122 Vt. 19, 23, 163 A.2d 833, 836 (1960). Not every act that
> disturbs a contract is actionable, however. Blake v. Levy, 191 Conn. 257, 464 A.2d 52, 54

---

[6] The tort is not entitled tortuous interference with actual and/or prospective contractual relations, as Mrs. Montagne has deno-minated it.

(1983). The act of interference must be wrongful or improper, see <u>Williams</u>, 145 Vt. at 80, 484 A.2d at 913, by some measure beyond the fact of interference itself. <u>Blake</u>, 464 A.2d at 55.

<u>Kollar v. Martin</u> , 167 Vt. 592, 593, 706 A.2d 945, 946 (1997).

Mrs. Montagne's cause of action focusing on interference with actual and/or prospective contractual relations suffers from the same malady besetting many of her other claims. Her complaint presents no factual predicate to support this claim, and her brief, as indicated above, sets out only a one-sentence conclusory statement in the "lender control" section that Ag Venture's conduct "interfered with the Montagnes' ability to perform under agreements" (citing old cases from outside this Circuit). The Court is left to guess what third party contract she is referring to in which Ag Venture supposedly interfered. If Diane Montagne is alleging that Ag Venture interfered in her agreement with Michael Montagne concerning the $240,000 payment, that contention is without merit, as this Court has already held that Ag Venture properly asserted its rights with respect to that collateral. <u>See</u> doc. ## 293/312, pp. 5-15; # 328 pp. 5-10; # 352. If she is contending that Ag Venture interfered in Mr. Montagne's FSA loan, that is also without merit, as discussed above. In sum, these two claims fail for lack of both legal and factual support. The Court therefore denies summary judgment to Diane Montagne and grants Ag Venture summary judgment on these causes of action in the Counterclaim.

## V.    The Remaining Counterclaim Causes of Action

Although Mrs. Montagne also raised unclean hands, punitive damages, and indemnification causes of action in the Counterclaim (doc. # 83, ¶¶ 80, 88, 90), the parties did not address them in their cross-motions for summary judgment. The Court declines to enter summary judgment for either party <u>sua sponte</u> because the record is insufficient for it to determine whether any material facts are in dispute and whether either party is entitled to judgment as a matter of law. <u>See</u> <u>Ramsey v. Coughlin</u>, 94 F.3d 71, 74 (2d Cir.1996) ("[w]here it appears clearly upon the record that all of the evidentiary materials that a party might submit in response to a motion for summary judgment are before the court" and "those materials show that no material dispute of fact exists and that the other party is entitled to judgment as a matter of law," a district court does not err in *sua sponte* granting summary judgment against the plaintiff); <u>cf.</u> <u>First Financial Ins. Co. v. Allstate Interior Demolition Corp</u>., 193 F.3d 109, 114-15 (2d Cir.1999) (noting that a <u>sua</u> <u>sponte</u> grant of summary judgment may be upheld "[w]here it appears clearly on the record that all of the evidentiary materials that a party might submit in response to a motion for summary judgment are before the court").

Therefore, these three claims are still extant and will remain on for trial unless Diane Montagne withdraws them.

## CONCLUSION

For the reasons articulated above, the Court grants Ag Venture's motion for summary judgment (doc. # 250) and dismisses the breach of contract, breach of good faith and fair dealing, negligence, negligent provision of pecuniary information, fraudulent inducement/fraud/negative deceit, express and positive fraud, lender control over a borrower, and interference with actual and/or prospective contractual relations causes of action in Diane Montagne's Counterclaim, and denies Mrs. Montagne's cross-motion for summary judgment on these claims (doc. # 272/292). The remaining claims – unclean hands, punitive damages, and indemnification – remain outstanding.

This constitutes the Court's findings of fact and conclusions of law.

Rutland, Vermont
December 18, 2009

Colleen A. Brown
United States Bankruptcy Judge