*Formatted for Electronic Distribution*           *For Publication*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT**

_____

In re:
    Michael F. Montagne,           Chapter 12 Case
         Debtor.                             # 08-10916
_____

Ag Venture Financial Services, Inc.,
         Plaintiff,
  v.                                     Adversary Proceeding
Michael F. Montagne, <u>et al.</u>,           # 08-1023
         Defendants.
_____

Filed & Entered
On Docket
May 4, 2010

*Appearances:*      Lisa Chalidze, Esq.           Gary L. Franklin, Esq.
                            Benson, VT                  Douglas J. Wolinsky, Esq.
                            For John Montagne        Primmer Piper Eggleston & Cramer PC
                                                                 Burlington, VT
                                                                 For Ag Venture Financial Services, Inc.

<u>**MEMORANDUM OF DECISION**</u>
<u>GRANTING IN PART & DENYING IN PART SUMMARY JUDGMENT TO AG VENTURE FINANCIAL SERVICES, INC.
AS TO REMAINING COUNTERCLAIMS AND AFFIRMATIVE DEFENSE OF JOHN MONTAGNE</u>

      Ag Venture Financial Services, Inc. ("Ag Venture") filed an amended complaint (doc. # 30) in state court, in which one count for breach of contract (Count VIII) sought relief against John Montagne. Mr. Montagne responded by filing an answer asserting thirteen affirmative defenses, with a counterclaim interposing fourteen causes of action against Ag Venture (doc. # 40). Subsequently, Ag Venture filed a motion for summary judgment on the fourteen counterclaims and thirteen affirmative defenses (doc. # 382). In his opposition to Ag Venture's motion for summary judgment (doc. # 396), John Montagne withdrew all counterclaims against Ag Venture except for the counterclaims for breach of contract and agreement (Count 1), breach of duty of good faith and fair dealing (Count 2), negligence (Count 3), commercial unreasonableness and violation of public policy/law (Count 9), and punitive damages (Count 14), and withdrew all affirmative defenses against Ag Venture except for the affirmative defense of breach of contract. For the reasons set forth below, the Court grants in part and denies in part Ag Venture's motion for summary judgment as to John Montagne's remaining affirmative defense and counterclaims.

### JURISDICTION AND RELEVANT LAW

This Court has jurisdiction over this adversary proceeding and Ag Venture's motion for summary judgment under 28 U.S.C. §§ 1334, 157(b)(2)(B) and (C), and the parties' stipulation to this Court's entry of a final judgment on the causes of action relating to this Title 11 case.  See doc. # 144, pp. 2–3.  As John Montagne asserts only state law causes of action and defenses in his remaining affirmative defense and counterclaims, state law must guide this Court's analysis and determination of the issues.  See Butner v. United States, 440 U.S. 48, 54 (1979).

### UNDISPUTED FACTS

Based upon the extensive record in this case, and in the absence of a stipulation of undisputed material facts, the Court finds the following facts to be undisputed:

1. John Montagne is the son of Michael Montagne (doc. # 40, p.7, ¶ 12; doc. # 63, ¶ 12).
2. Ag Venture is a Vermont licensed lender created in or about 1998 pursuant to the laws of the State of Vermont (doc. # 40, p.6, ¶ 3; doc. # 63, ¶ 3).
3. Thomas Bellavance has served continuously as President of Ag Venture from its inception to the present day, and has acted as representative on behalf of Ag Venture, and as line lender on the loan to Montagne Heifers, Inc. ("MHI"), at all relevant times (doc. # 40, p.6, ¶ 4; doc. # 63, ¶ 4).
4. MHI was incorporated in March 2002 for the purpose of raising cattle and heifers and to conduct farming activities (doc. # 382-1, ¶ 1; doc. # 401, ¶ 1).
5. From 2002 through 2005, MHI boarded and raised heifers owned by other individuals or entities in exchange for payment (doc. # 40, p.7, ¶ 16; doc. # 63, ¶ 16).
6. John Montagne became a shareholder of MHI in April 2002 with a 20% stake in the company (doc. # 382-1, ¶ 2; doc. # 401, ¶ 2).
7. John Montagne worked for MHI from its inception through January 2008, running the day-to-day milking operations (doc. # 382-1, ¶ 3; doc. # 401, ¶ 3).
8. In April 2005, MHI entered into a lease agreement for the Brodeur farm (doc. # 382-1, ¶ 8; doc. # 401, ¶ 8).
9. John Montagne participated in the purchasing of cows and the milking operations on the Brodeur farm (doc. # 382-1, ¶ 9; doc. # 401, ¶ 9).
10. On November 18, 2005, MHI entered into a loan agreement with Ag Venture for a loan in the amount of $457,000 ("MHI loan") (doc. # 382-1, ¶ 11; doc. # 401, ¶ 11).
11. Also on November 18, 2005, John Montagne executed a promissory note, security agreement, and notice of loan agreement in favor of Ag Venture (doc. # 40, p.9, ¶ 28; doc. # 63, ¶ 28).

2

12. John Montagne signed the promissory note in his individual capacity as a co-signer (doc. # 382-1, ¶ 12; doc. # 401, ¶ 12).

13. In addition, John Montagne signed the unlimited guaranty as a guarantor of the MHI loan (doc. # 382-1, ¶ 13; doc. # 401, ¶ 13).

14. On November 28, 2005, MHI executed a producer milk check assignment to Ag Venture for the monthly payment due on the MHI loan, which was signed by Michael Montagne and Diane Montagne on behalf of MHI and by Melissa Buckley on behalf of Ag Venture (doc. # 40, p.10, ¶ 33; doc. # 63, ¶ 33; doc. # 382-1, ¶ 18; doc. # 401, ¶ 18).

15. In August 2007, John Montagne sold his MHI shares back to MHI for $100,000. John Montagne was not paid cash for these shares, but rather received a promissory note signed by Michael Montagne in the amount of $100,000 (doc. # 382-1, ¶ 22; doc. # 401, ¶ 22).

16. John Montagne has not been released as a guarantor on the MHI loan (doc. # 382-1, ¶ 24; doc. # 401, ¶ 24).

17. On November 24, 2007, MHI sold its cattle for $500,000 (doc. # 382-1, ¶ 25; doc. # 401, ¶ 25).

18. $75,000 of the sale proceeds are being held in escrow pursuant to an agreement between Michael Montagne and Ag Venture (doc. # 382-1, ¶ 26; doc. # 401, ¶ 26).

19. On December 4, 2007, John Montagne filed a UCC financing statement with the Vermont Secretary of State (doc. # 30, ¶ 27, p. 192; doc. # 40, p. 3, ¶ 27, p. 13, ¶ 47; doc. # 63, ¶ 47).

SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the record shows no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c)(2); Fed. R. Bankr. P. 7056. A genuine issue exists only when "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The substantive law identifies which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. See Anderson, 477 U.S. at 248. Factual disputes that are irrelevant or unnecessary are not material. See id. The court must view all the evidence in the light most favorable to the nonmoving party and draw all inferences in the nonmovant's favor. See Cruden v. Bank of New York, 957 F.2d 961, 975 (2d Cir. 1992). In making its determination, the court's sole function is to determine whether there is any material dispute of fact that requires a trial. See Anderson, 477 U.S. at 249; see also Palmieri v. Lynch, 392 F.3d 73, 82 (2d Cir. 2004); Delaware & Hudson Ry. Co. v. Consolidated Rail Corp., 902 F.2d 174, 177–78 (2d Cir. 1990). If the opposing party does not come

forward with specific facts to establish an essential element of that party's claim on which it has the burden of proof at trial, the moving party is entitled to summary judgment. See Celotex, 477 U.S. at 323–25 ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case"); see also State v. G.S. Blodgett Co., 163 Vt. 175, 180, 656 A.2d 984, 988 (Vt. 1995).

## DISCUSSION

Ag Venture's motion for summary judgment focuses on the alleged absence of evidence to support John Montagne's remaining counterclaims and affirmative defense. Therefore, the Court focuses its decision on that basis for summary judgment, rather than the more typical question of whether there is a material dispute of fact that requires a trial. See Celotex, 477 U.S. at 325.

**A.    Breach of Contract**

As a threshold matter, Ag Venture argues that John Montagne lacks standing to bring claims on behalf of MHI (doc. # 382, pp. 4–5; doc. # 421, p. 2). John Montagne responds that Ag Venture waived its right to challenge his standing by failing to assert it as an affirmative defense in response to Mr. Montagne's counterclaim (doc. # 396, pp. 1–4). Mr. Montagne is mistaken. This argument was previously raised and addressed by this Court. See Ag Venture Fin. Servs. v. Montagne (In re Montagne), 421 B.R. 65, 79 (Bankr. D. Vt. 2009) ("Cases have held that the question of prudential standing may be raised at any stage of the proceedings, and even if the parties themselves have not raised the issue"); (citing MainStreet Org. of Realtors v. Calumet City, 505 F.3d 742, 747–48 (7th Cir. 2007); Thompson v. County of Franklin, 15 F.3d 245, 248 (2d Cir. 1994) (examining subject matter jurisdiction, including prudential standing, sua sponte, even when court below had not passed on it and if parties failed to raise it, because it implicates the court's subject matter jurisdiction)). John Montagne's substantive – and more compelling – argument with respect to standing is that he is asserting direct claims for his own damages, and that he is not asserting claims on behalf of MHI or as a former shareholder of MHI (doc. # 396, pp. 4, 6–7). Based on these arguments, John Montagne has waived his right to argue that he has standing to bring claims on behalf of MHI or in his capacity as a former shareholder of MHI. Accordingly, Ag Venture's motion for summary judgment is GRANTED on the issue of whether John Montagne has standing to assert claims on behalf of MHI or in his capacity as former shareholder. By contrast, to the

4

extent that Ag Venture argues that John Montagne lacks standing to assert a direct claim for his own damages, Ag Venture's motion for summary judgment is DENIED.[1]

Ag Venture also argues that John Montagne's affirmative defense and counterclaim for breach of contract fails as a matter of law because there is no evidence of (1) which contract John Montagne claims Ag Venture breached; (2) what consideration John Montagne provided; and (3) how Ag Venture breached any contract that it had with him (doc. # 382, pp. 5, 14; doc. # 421, pp. 2–3).[2] See Celotex, 477 U.S. at 325. The Court will address each of the three prongs of Ag Venture's argument as to the breach of contract issue separately.

"In defining the elements of a breach of contract claim, the Vermont Supreme Court has stated, 'in the obligation assumed by a party to a contract is found his duty, and his failure to comply with the duty constitutes a breach.'" Ben & Jerry's Homemade, Inc. v. Coronet Priscilla Ice Cream Shop, 921 F. Supp. 1206, 1212 (D.Vt. 1996) (quoting Lapoint v. Dumont Const. Co., 128 Vt. 8, 10, 258 A.2d 570 (1969)). "The existence of sufficient consideration for a contract is a question of law and is evaluated at the time the contract was formed." Weed v. Weed, 2008 VT 121, ¶ 11, 185 Vt. 83, 88, 968 A.2d 310, 313 (Vt. 2008) (quotation and citation omitted). "To constitute consideration, a performance or a return promise must be bargained for. Bargained-for consideration must induce a promise or performance, and not be a mere pretense of a bargain." Id. at 314 (quotation and citation omitted). "A single and undivided consideration may be bargained for and given as the agreed equivalent of one promise or of two promises or of many promises . . .. Very generally, there is only a single consideration given for the promises of a principal obligor (P) and surety (S), as where a loan of money is made to P in return for P's note and for a collateral guaranty by S." 2-5 Corbin on Contracts § 5.12.

Regarding the first prong, which contract John Montagne claims Ag Venture breached, John Montagne's counterclaim incorporates by reference allegations that address the MHI loan documents signed and executed by John Montagne on November 18, 2005, including the promissory note, the notice of loan agreement containing the producer milk check assignment provision, and the unlimited guaranty (doc. # 40, pp. 9–11, ¶¶ 28, 30–33, p. 16, ¶¶ 58–59). It is an undisputed fact that MHI and Ag Venture

---

[1] The Court notes that a request for relief on the basis of lack of prudential standing is more properly pled as a motion to dismiss for lack of subject matter jurisdiction. See Thompson v. County of Franklin, 15 F.3d at 247–48; Fed. R. Civ. P. 12(b)(1); Fed. R. Bankr. P. 7012. To the extent that Ag Venture's request could be construed as such, it is granted in part and denied in part for the reasons set forth above.

[2] Ag Venture also argues in its reply memorandum that the notice of loan agreement and milk check assignment are not contracts (doc. # 421, p. 1). However, the Court finds below that the MHI loan agreement, including the notice of loan agreement containing the producer milk check assignment provision, is a valid contract, and thus Ag Venture's argument fails (see p. 6, infra).

5

entered into the MHI loan agreement on November 18, 2005 (see Undisputed Facts ¶ 10, supra). John Montagne also addresses the MHI loan agreement in his opposition papers, in which he alleges that Ag Venture breached the promissory note and notice of loan agreement (see doc. # 396, p. 11). It is clear that John Montagne claims that Ag Venture breached the November 18, 2005 MHI loan agreement, including express terms of the promissory note and notice of loan agreement. Ag Venture has not demonstrated that it is entitled to judgment as a matter of law on the first prong of its argument, i.e., due to a lack of clarity as to which contract is at issue, because there is evidence of which contract John Montagne claims Ag Venture breached, and Ag Venture fails to identify undisputed material facts that constitute a basis for judgment as a matter of law. Accordingly, Ag Venture's motion for summary judgment on this basis is DENIED.

Regarding the second prong of Ag Venture's argument, namely what consideration John Montagne provided, John Montagne alleges in his affidavit and statement of disputed material facts that Ag Venture purported to loan MHI $457,000 for the purchase of cows in exchange for John Montagne's incurrence of debt and an obligation to make a monthly payment in the amount of $7,352.71 on the principal amount beginning on January 1, 2006, as well as his promise to invest his time, labor, and specialized knowledge by continuing to work at the MHI heifer facility (doc. # 397, ¶ 10; doc. # 399, ¶¶ 10, 16). There is no indication in the record that John Montagne provided bargained-for consideration in the form of a promise to invest his time, labor, and specialized knowledge by continuing to work at the MHI heifer facility. However, it is an undisputed fact that John Montagne executed a promissory note, security agreement, and notice of loan agreement in favor of Ag Venture on November 18, 2005, that he signed the promissory note in his individual capacity as a co-signer, and that he signed the unlimited guaranty as a guarantor of the MHI loan (see Undisputed Facts ¶¶ 11–13, supra). The Court finds that John Montagne gave a promise to pay and incurred debt in consideration of the MHI loan, and thus that the MHI loan agreement is a valid contract. Ag Venture has not demonstrated that it is entitled to judgment as a matter of law because there is evidence that John Montagne provided consideration for the MHI loan, and Ag Venture fails to identify undisputed material facts that constitute a basis for judgment as a matter of law. Thus, Ag Venture's motion for summary judgment on the second prong of its argument is DENIED since John Montagne has put forth evidence that could show consideration for the MHI loan in the form of a promise to pay and incurrence of debt. However, Ag Venture has demonstrated that it is entitled to judgment on the limited basis that there is no evidence that John Montagne provided bargained-for consideration in the form of a promise to continue working at the MHI heifer facility. Accordingly, Ag Venture's motion for summary judgment is GRANTED as to John

6

Montagne's argument that he provided consideration in the form of a promise to continue working at the MHI heifer facility.

Regarding the third prong, how Ag Venture breached the contract, John Montagne claims that Ag Venture breached the MHI loan agreement in three different ways.  First, John Montagne alleges in his affidavit and statement of disputed material facts that Ag Venture breached the MHI loan agreement by taking an excess payment from the milk check assignment of approximately $10,000 per month in addition to taking the repayment amount of $7,352.71 specified in the MHI loan documents (doc. # 397, ¶¶ 11–12, 14; doc. # 399, ¶¶ 10–11, 15, 17, 26–27).  Although it is not clear that John Montagne has personal knowledge of these facts as asserted in his affidavit, Mr. Montagne references additional documents in further support of his claim, including the promissory note (doc. # 382-1, pp. 10–15), notice of loan agreement (doc. # 399-1), St. Albans Cooperative Creamery monthly statements (doc. # 399-7), and excerpts from the deposition of Thomas J. Bellavance taken February 12, 2009 (doc. # 402, pp. 3–34).

The promissory note provides that "[t]he Borrower shall repay this Note in consecutive installments of principal and interest of $7,352.71 beginning January 1, 2006" (doc. # 382-1, p. 10).  The notice of loan agreement further provides that "[a] milk check assignment will be taken with the St. Albans Cooperative Creamery for the full monthly payment amount" (doc. # 399-1, ¶ 4).  The monthly statements indicate semi-monthly assignments of $8,500 to Ag Venture from November 2005 through at least November 2007 (doc. # 399-7 passim).  Mr. Bellavance agreed in his deposition that Ag Venture did not comply with paragraph 4 of the notice of loan agreement (doc. # 402, pp. 23–24).  The Court finds that Ag Venture received milk check assignments of $8,500 semi-monthly from November 2005 through November 2007.  Ag Venture has not demonstrated that it is entitled to judgment as a matter of law because there is evidence that Ag Venture may have breached the MHI loan agreement by taking a payment from the milk check assignment in excess of the repayment amount specified in the MHI loan documents.  Accordingly, Ag Venture's motion for summary judgment on the basis that John Montagne has not put forth evidence that could show a breach of contract is DENIED with respect to the amount of the milk check assignment.  The parties may introduce evidence at trial regarding Ag Venture's alleged taking of payments in excess of the repayment amount set forth in the promissory note.

Second, John Montagne alleges in his affidavit and statement of disputed material facts that Ag Venture breached the MHI loan agreement by failing to apply the monies received from the milk check

7

assignment to reduce the balance of the MHI loan (doc. # 397, ¶ 14; doc. # 399, ¶¶ 10–11, 28),[3] and supports these allegations with specific references to the promissory note (doc. # 382-1, pp. 10–15), notice of loan agreement (doc. # 399-1), and excerpts from the Bellavance deposition (doc. # 402, pp. 3–34). As indicated above, the promissory note provides for repayment of principal and interest in the amount of $7,352.71 (doc. # 382-1, p. 10), and the notice of loan agreement provides that a milk check assignment will be taken for the full monthly payment amount (doc. # 399-1, ¶ 4). Mr. Bellavance indicated in his deposition that the full amount of the milk check assignment was not referenced in the borrower ledger card for the MHI loan for the months of November 2005, April 2006, August 2006, and September 2006 (doc. # 402, pp. 31–34). Ag Venture has not demonstrated that it is entitled to judgment as a matter of law because there is evidence that Ag Venture may have breached the MHI loan agreement by failing to apply the monies received from the milk check assignment to reduce the balance of the MHI loan, and Ag Venture fails to identify undisputed material facts that constitute a basis for judgment as a matter of law on this point. Accordingly, Ag Venture's motion for summary judgment on the basis that John Montagne has failed to present evidence that would support a breach of contract cause of action is DENIED on this point. The parties may present evidence at trial as to Ag Venture's alleged failure to properly apply payments to the MHI loan balance.

Finally, John Montagne alleges in his affidavit and statement of disputed material facts that Ag Venture breached the MHI loan agreement by misusing monies that were to be disbursed to MHI under the MHI loan agreement for purposes unrelated to MHI and unrelated to the purposes specified in the MHI loan documents (doc. # 397, ¶¶ 12–13, 15; doc. # 399, ¶¶ 12, 19–25), based upon a provision in the notice of loan agreement that states "USE OF LOAN PROCEEDS: Purchase Livestock" (doc. # 399-1, ¶ 6). This term is commonly understood as one that dictates how the borrower is to use the loan proceeds, and the Court finds no express term in the MHI loan agreement that specifically requires Ag Venture to disburse funds only for that purpose. Ag Venture has demonstrated that it is entitled to judgment as a matter of law because there is no evidence that Ag Venture breached an express term of the MHI loan agreement by failing to disburse MHI loan monies for the purpose of purchasing livestock. Accordingly,

---

[3] In its reply memorandum, Ag Venture argues that John Montagne's affirmative defense and counterclaim for breach of contract fails as a matter of law because there is an absence of evidence to support the counterclaim as to any obligation on Ag Venture's part to apply the additional amounts to the MHI loan debt (doc. # 421, pp. 3–4). Ag Venture failed to raise this argument in its motion for summary judgment, and John Montagne has had no opportunity to respond. Accordingly, the Court declines to consider that argument as part of the motion for summary judgment.

8

Ag Venture's motion for summary judgment on this basis is GRANTED. This argument still stands, however, with respect to John Montagne's counterclaim for breach of the implied covenant of good faith and fair dealing, and will be addressed below (see § B, infra).

In summary, regarding John Montagne's affirmative defense and counterclaim for breach of contract, it is undisputed that MHI and Ag Venture entered into the MHI loan agreement on November 18, 2005, that John Montagne executed a promissory note and notice of loan agreement on November 18, 2005, that he signed the promissory note in his individual capacity as a co-signer, and that he signed the unlimited guaranty as a guarantor of the MHI loan. Further, the Court finds that John Montagne gave a promise and incurred debt in consideration of the MHI loan, that the MHI loan agreement is a valid contract, and that Ag Venture received semi-monthly milk check assignments of $8,500 from November 2005 through November 2007. Ag Venture shall have a judgment in its favor to the extent that John Montagne seeks relief based on any claims John Montagne is asserting on behalf of MHI or in his capacity as former shareholder of MHI, consideration John Montagne gave in the form of a promise to continue working at the MHI heifer facility, and Ag Venture's alleged breach of an express term of the MHI loan agreement by failing to disburse MHI loan monies for the purpose of purchasing livestock.

### B.     Breach of the Implied Covenant of Good Faith and Fair Dealing

Ag Venture argues that John Montagne's counterclaim for breach of the implied covenant of good faith and fair dealing fails as a matter of law because there is no evidence of a breach of the implied covenant based on conduct different than the alleged breach of contract (doc. # 381, p. 5).[4] See Celotex, 477 U.S. at 325.

"The implied covenant of good faith and fair dealing exists in every contract and ensures that each party works with 'faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.'" Carmichael v. Adirondack Bottled Gas Corp. of Vt., 161 Vt. 200, 208, 635 A.2d 1211, 1216 (Vt. 1993) (citing Restatement (Second) of Contracts § 205 cmt. a (1981)). "To carry its burden for the good-faith-and-fair-dealing claim, borrower must produce evidence that could lead a reasonable jury to conclude that [the lender] 'breached an implied-in-law promise not to do anything to undermine or destroy [borrower's] rights to receive the benefit of the parties' . . . agreement.'" R & G Props., Inc. v. Column Fin., Inc., 2008 VT 113, ¶ 46, 184 Vt. 494, 514, 968 A.2d 286, 300 (Vt. 2008) (citation omitted). "Good faith is ordinarily a question of fact. However, plaintiff must provide a basis on

---

[4] Ag Venture also argues that John Montagne's counterclaim for breach of the implied covenant of good faith and fair dealing fails because there is no contract (doc. # 382, p. 5; doc. # 421, p. 4). However, the Court already found that there is a contract and denied Ag Venture's motion for summary judgment as to John Montagne's affirmative defense and counterclaim for breach of contract on that basis (see § A, supra). Hence, that argument fails here as well.

9

Case 08-01023   Doc    445   Filed 05/04/10   Entered   05/04/10 13:14:16
                Desc    Main Document         Page      10 of 20

which the fact finder can find a violation." <u>Id.</u>, 968 A.2d at 301 (citation omitted). "A breach for violation of the implied covenant may form a separate cause of action than for breach of contract, as long as the counts are based on different conduct." <u>Harsch Props. v. Nicholas</u>, 2007 VT 70, ¶ 14, 182 Vt. 196, 202, 932 A.2d 1045, 1050 (Vt. 2007) (citation omitted). "A cause of action for breach of the covenant of good faith can arise only upon a showing that there is an underlying contractual relationship between the parties." <u>Id.</u> (quotation and citation omitted).

John Montagne alleges that Ag Venture breached the implied covenant of good faith and fair dealing in two ways. Mr. Montagne alleges that Ag Venture first breached the implied covenant in its actions prior to the MHI loan agreement entered into on November 18, 2005 (doc. # 396, p. 14). However, there can be no breach of the implied covenant where there is no underlying contractual relationship. John Montagne admits in his statement of disputed facts that he "had no lending relationship with Ag Venture other than as part of [the MHI loan agreement]. He had no liability to Ag Venture prior to November 18, 200[5]" (doc. # 399, ¶ 9). Ag Venture is entitled to judgment as a matter of law for any claim based on pre-November 2005 conduct because there is no evidence of a contractual relationship between Ag Venture and John Montagne prior to November 18, 2005. Accordingly, Ag Venture's motion for summary judgment on the counterclaim for breach of the implied covenant of good faith and fair dealing is GRANTED with respect to John Montagne's claims based on Ag Venture's conduct prior to the MHI loan agreement.

John Montagne alleges in his affidavit and statement of disputed facts that Ag Venture also breached the implied covenant of good faith and fair dealing by using monies that were to be disbursed to MHI under the MHI loan agreement and then holding John Montagne liable for these other non-MHI loans and accounts, because he had never agreed to pay these loans. In particular, he points to $4,315.49 that was moved to a suspense account under Ag Venture's control and credited toward a loan known as "Loan 516," $3,788.10 that was moved to a suspense account under Ag Venture's control, and $33,112.55 moved to a pre-closing account under Ag Venture's control, from which account $8,935.23 was credited toward a loan known as "Loan 284," and $28,125 was paid to a payee known as "Ag Sales Unlimited" (doc. # 397, ¶ 12–13, 15; doc. # 399, ¶¶ 19–25). These allegations are supported by Ag Venture's loans receivable registers relating to the MHI loan from November 18, 2005 through January 18, 2008 (doc. # 399-6) and excerpts from the Bellavance deposition (doc. # 402, pp. 3–34).

The Court generally addressed these allegations above, in the context of John Montagne's affirmative defense and counterclaim for breach of contract, and granted Ag Venture's motion for summary judgment on the basis that John Montagne had failed to present sufficient evidence showing a

10

breach of an express term of the contract (see § A, supra). As such, Mr. Montagne's counterclaim for breach of the implied covenant on these grounds is not duplicative. Ag Venture is not entitled to judgment as a matter of law because there is evidence that could establish a breach of the implied covenant that is based on conduct that is different than the alleged breach of contract, and Ag Venture fails to identify undisputed material facts that constitute a basis for judgment as a matter of law. Accordingly, Ag Venture's motion for summary judgment on John Montagne's counterclaim for breach of the implied covenant of good faith and fair dealing is DENIED as to that basis. The parties may introduce evidence at trial on Ag Venture's use of monies that were to be disbursed to MHI under the MHI loan agreement, and whether it sought to hold John Montagne liable for non-MHI loans and accounts that he had never agreed to pay.

In summary, regarding John Montagne's counterclaim for breach of the implied covenant of good faith and fair dealing, Ag Venture shall have a judgment in its favor to the extent that John Montagne seeks relief based on Ag Venture's conduct prior to the MHI loan agreement.

**C.     Negligence**

Ag Venture argues that John Montagne's counterclaim for negligence fails as a matter of law because there is no evidence of either non-economic damages or of professional services provided by Ag Venture to John Montagne giving rise to the exception to the economic-loss rule (doc. # 382, p. 6; doc. # 421, p. 4).[5] See Celotex, 477 U.S. at 325.

The elements of common law negligence are: (1) the defendant owed a legal duty to protect the plaintiff from an unreasonable risk of harm; (2) the defendant breached that duty; (3) the defendant's conduct was the proximate cause of plaintiff's injuries; and (4) the plaintiff suffered actual damage. Knight v. Rower, 170 Vt. 96, 102, 742 A.2d 1237, 1242 (Vt. 1999). The element of duty "is central to a negligence claim, and its existence is primarily a question of law. The imposition of a duty is an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." O'Connell v. Killington, Ltd., 164 Vt. 73, 76, 665 A.2d 39, 42 (Vt. 1995) (quotation and citations omitted). The Vermont Supreme Court has identified:

> a number of factors to consider in determining whether a duty exists. These factors may include the degree of certainty that plaintiff suffered injury, the closeness of the connection between defendant's conduct and plaintiff's injury, the moral blame attached to defendant's conduct, the policy of preventing future harm, the burden to the defendant, the

---

[5] Ag Venture also argues that John Montagne improperly re-casts his negligence counterclaim as one for professional malpractice (doc. # 421, p. 4). An exception to the economic-loss rule for negligence actions may apply under certain circumstances involving a professional duty, as the Court discusses below (see pp. 11–14, infra). John Montagne has not presented a claim for professional malpractice. The Court thus finds Ag Venture's argument to be without merit.

11

consequences to the community of finding a duty, and the availability and cost of insurance… an additional factor . . . is[] that plaintiff seeks a duty to prevent purely economic loss.

Id. at 77, 665 A.2d at 42 (citation omitted). "The underlying analysis turns on whether there is a duty of care independent of any contractual obligations." Wentworth v. Crawford & Co., 174 Vt. 118, 127, 807 A.2d 351, 357 (Vt. 2002) (quotation and citations omitted). "Negligence law does not generally recognize a duty to exercise reasonable care to avoid intangible economic loss to another unless one's conduct has inflicted some accompanying physical harm." O'Connell, 164 Vt. at 77, 665 A.2d at 42 (citations omitted). The Vermont Supreme Court has stated:

> The economic-loss rule prohibits recovery in tort for purely economic losses. The rule strives to maintain a separation between contract and tort law. In tort law, duties are imposed by law to protect the public from harm, whereas in contract the parties self-impose duties and protect themselves through bargaining. Thus, negligence actions are limited to those involving unanticipated physical injury, and claimants cannot seek, through tort law, to alleviate losses incurred pursuant to a contract.

EBWS, LLC v. Britly Corp., 2007 VT 37, ¶ 30, 181 Vt. 513, 524, 928 A.2d 497, 507 (Vt. 2007) (quotation and citations omitted).

A narrow exception to the economic loss rule exists "in a limited class of cases involving violation of professional duty," id., which requires "a special relationship between the alleged tortfeasor and the individual who sustains purely economic damages sufficient to compel the conclusion that the tortfeasor had a duty to the particular plaintiff and that the injury complained of was clearly foreseeable to the tortfeasor." Springfield Hydroelectric Co. v. Copp, 172 Vt. 311, 316, 779 A.2d 67, 71 (Vt. 2001) (quotation and citation omitted).

John Montagne asserts that Ag Venture provided several kinds of specialized professional services for which the above exception to the economic-loss rule should apply. First, John Montagne alleges in his affidavit and statement of disputed material facts that Ag Venture, through Mr. Bellavance, presented itself as a financial advisor and that John Montagne relied on Ag Venture to provide him with financial advice (doc. # 397, ¶ 16; doc. # 399, ¶¶ 30–32). Mr. Montagne further alleges that Ag Venture decided what it would do with the milk check assignment monies each month, without consulting or informing him, and that Ag Venture had sole control over both the milk check assignment monies and the account into which all MHI loan payments were deposited (doc. # 397, ¶ 16; doc. # 399, ¶ 32). These allegations are supported by excerpts from the deposition of Melissa Buckley taken February 12, 2009 (doc. # 402, pp. 35–41).

12

            Desc    Main Document    Page    13 of 20

Ms. Buckley indicates in her deposition that monies received from MHI were deposited into Ag Venture's general operating account, and that Mr. Bellavance gave her direction as to the application of loan payments from November 2005 through the end of her employment in April 2007 (doc. # 402, pp. 36, 39). Ag Venture is not entitled to judgment as a matter of law because there is evidence that Ag Venture was acting as financial advisor to John Montagne and had sole control over the milk check assignment monies and the account into which they were deposited, which could give rise to the exception to the economic-loss rule, and Ag Venture fails to identify undisputed material facts that constitute a basis for judgment as a matter of law on the negligence counterclaim in this regard. Accordingly, Ag Venture's motion for summary judgment is DENIED on the issue of whether Ag Venture had control over monies from the milk check assignment as John Montagne's financial advisor. The parties may introduce evidence at trial on whether Ag Venture was acting as financial advisor to John Montagne and had sole control over the milk check assignment monies and the account into which they were deposited.

Additionally, Mr. Montagne alleges in his affidavit and statement of disputed facts that Ag Venture, through Thomas Bellavance, acted as a lender, tax preparer, and payroll administrator for MHI (doc. # 397, ¶ 16; doc. # 399, ¶¶ 30–31). However, there is no indication in the record that Ag Venture's tax preparation or payroll administration services were the proximate cause of any injury to Mr. Montagne. Further, the Court is unaware of any cases imposing a duty upon a lender to protect a borrower from economic losses under circumstances apposite to this case.[6] Ag Venture is entitled to judgment as a matter of law because there is no evidence that Ag Venture's other conduct in its capacity as a lender, tax preparer, or payroll administrator could give rise to the exception to the economic-loss rule, and there is no evidence of non-economic damages. Accordingly, Ag Venture's motion for summary judgment on the basis that there is no evidence of non-economic damages is GRANTED as to

---

[6] John Montagne cites two cases for the proposition that such a duty of care could arise between a borrower and a lender (doc. # 396, pp. 16–17). In the first case, in the context of a motion to dismiss an action for breach of fiduciary duty, the court noted that New York courts recognize a fiduciary duty between an underwriter and its issuers, but stressed that the fiduciary duty recognized was limited to the underwriter's role as advisor. Lasala v. Needham & Co., 2006 U.S. Dist. LEXIS 7388, *39, n.80, 2006 WL 452024, *7, n.80 (S.D.N.Y. Feb. 24, 2006). In the second case, in the context of an appeal of a decision granting summary judgment to the defendant on, inter alia, a breach of fiduciary duty action, the court found that "a lender may actively participate in or exercise control over the business of a borrower to such an extent that a fiduciary relationship arises," but control "does not arise unless the plaintiff can show that the creditor has obtained the power to direct the day-to-day management of the debtor." FAMM Steel, Inc. v. Sovereign Bank, 571 F.3d 93, 103 (1st Cir. 2009) (quotation and citations omitted). Here, there is no indication in the record, and no allegation by John Montagne, that Ag Venture obtained the power to direct the day-to-day management of MHI.

whether Ag Venture acted negligently in its capacity as a lender, tax preparer, and payroll administrator for MHI.

In summary, regarding John Montagne's negligence counterclaim, Ag Venture shall have a judgment in its favor to the extent that John Montagne seeks relief based Ag Venture's conduct in its capacity as a lender, tax preparer, or payroll administrator.

### D. **Commercial Unreasonableness and Violation of the Vermont Licensed Lender Act**

Ag Venture argues that John Montagne's counterclaim labeled "commercial unreasonableness and violation of public policy/law," which alleges that Ag Venture "acted with commercial unreasonableness, [and] violated public policy and federal and state lending laws and applicable regulations" (doc. # 40, ¶ 75), fails as a matter of law for three reasons. First, Ag Venture argues that the "commercial unreasonableness" portion of the counterclaim fails as a matter of law because there is no evidence that Ag Venture disposed of any collateral and so the commercial unreasonableness doctrine does not apply (doc. # 382, pp. 10–11). See Celotex, 477 U.S. at 325. John Montagne responds in his opposition papers that the Vermont Uniform Commercial Code ("UCC") links commercial reasonableness with good faith, and cites to 9A V.S.A. § 3-103(a)(4) as the basis of his counterclaim (doc. # 396, p. 18).

During the relevant time period,[7] the Vermont Uniform Commercial Code ("UCC") provided that "'[g]ood faith' means honesty in fact and the observance of reasonable commercial standards of fair dealing." 9A V.S.A. § 3-103(a)(4) (amended 2008); see also Bourdeau Brothers, Inc. v. Montagne (In re Montagne), 2010 Bankr. LEXIS 432, *26–27, 2010 WL 538216, *10 (Bankr. D. Vt. Feb. 8, 2010) (citations omitted). The Court addressed above Mr. Montagne's counterclaim for breach of the implied covenant of good faith and fair dealing (see § B, supra), which the UCC linked with commercial reasonableness. There is no need for the Court to address John Montagne's counterclaim for breach of the implied covenant of good faith and fair dealing a second time under the guise of counterclaim for commercial unreasonableness. To the extent that John Montagne seeks to interpose an independent counterclaim for failure to act in a commercially reasonable manner based upon disposition of collateral, see In re Montagne, 2010 Bankr. LEXIS 432 at *26, 2010 WL 538216 at *10, Ag Venture is entitled to judgment as a matter of law because there is no evidence, and John Montagne does not allege, that Ag Venture disposed of any collateral. Accordingly, Ag Venture's motion for summary judgment is GRANTED as to the commercial unreasonableness portion of John Montagne's counterclaim.

---

[7] 9A V.S.A. § 3-103(a)(4) was deleted effective July 1, 2008. See 2007 Vt. Adj. Sess. No. 99, § 11, eff. July 1, 2008. John Montagne's counterclaim for breach of the implied covenant of good faith and fair dealing relates to Ag Venture's alleged conduct from November 18, 2005 through January 18, 2008 (see § B, supra).

14

Second, Ag Venture argues that the "violation of public policy/law" portion of the counterclaim fails as a matter of law because there is no evidence as to what federal or state lending law John Montagne claims Ag Venture violated (doc. # 382, pp. 10–11). See Celotex, 477 U.S. at 325. However, John Montagne alleges in his opposition papers that Ag Venture violated section 2233 of the Vermont Licensed Lender Act, 8 V.S.A. § 2233 (doc. # 396, p. 17). Mr. Montagne further alleges in his affidavit and statement of disputed facts that Ag Venture (1) improperly charged interest on the full amount of the MHI loan when portions of it were not disbursed, including $4,513.49 placed in a suspense account under Ag Venture's control on November 18, 2005 and $3,788.10 placed in a suspense account under Ag Venture's control on October 31, 2006; (2) improperly charged interest on the MHI loan balance by failing to credit monies from the milk check assignment and imposing unwarranted late fees; and (3) improperly received interest on MHI loan payments placed into an account under Ag Venture's control (doc. # 397, ¶¶ 13–14; doc. # 399, ¶¶ 20, 23, 26, 29, 34). The Court will therefore treat the "violation of public policy/law" portion of the counterclaim as a counterclaim for violation of the Vermont Licensed Lender Act ("LLA"). Ag Venture is not entitled to judgment as a matter of law because there is evidence that John Montagne claims that Ag Venture violated the LLA, and Ag Venture fails to identify undisputed material facts that constitute a basis for judgment as a matter of law on this claim. Accordingly, Ag Venture's motion for summary judgment on the basis that there is no evidence as to what lending law John Montagne claims Ag Venture violated is DENIED. The parties shall present their proof at trial with respect to John Montagne's claim that Ag Venture violated the LLA.

Finally, Ag Venture argues that the "violation of public policy/law" portion of the counterclaim fails as a matter of law because there is no evidence of a breach of public policy or law that would entitle John Montagne to damages, as the LLA does not provide a private cause of action for damages (doc. # 421, p. 5).[8] See Celotex, 477 U.S. at 325.

8 V.S.A. § 2233, provides in pertinent part:

[N]o person who is required to be licensed under this chapter, shall directly or indirectly charge, contract for, or receive any interest, discount, consideration or charge greater than is authorized by section 41a or 46 of Title 9. No such loan for which a greater rate of interest, finance charge, consideration or charges than is authorized by section 41a or 46 of Title 9 has been charged, contracted for, or received shall be enforced in this state, and

---

[8] Ag Venture also argues that John Montagne lacks standing to bring a claim for violation of the LLA because he does not have a borrower/lender relationship with Ag Venture (doc. # 382, p. 11). Ag Venture cites no legal authority in support of the proposition that a co-signer or guarantor lacks standing to bring a claim under section 2233 of the LLA, and the Court is not aware of any such case. The Court thus finds Ag Venture's argument to be without merit.

15

every person in any way participating therein in this state shall be subject to the provisions of this chapter.

8 V.S.A. § 2233(a).[9] Section 41a of Title 9, (referred to in § 2233(a)), provides in pertinent part:

> (a) Except as specifically provided by law, the rate of interest or the sum allowed for forbearance or use of money shall be twelve percent per annum computed by the actuarial method.
>
> (b) The rate of interest or the sum allowed:
>
>> (1) For single payment loans by lenders regulated by Title 8 and federal savings and loan associations, the finance charge shall not exceed 18 percent per annum.
>
> …
>
> (d) Actuarial method
>
>> (1) Unless otherwise specifically provided by law, all interest on closed-end accounts, loans or extensions of credit charged under this or any section shall be computed only on the outstanding balance subject to finance charge by the actuarial method of calculation . . .. Interest shall not be paid, deducted or added to principal in advance . . ..

9 V.S.A. § 41a(a), (b), (d).

As this Court has previously held, "§ 2233 requires the Court to declare a loan unenforceable if the lender received additional monies from a variety of other sources – whether interest, consideration, finance charges, discounts, or other charges – that exceed what is allowed by § 41(a)(d)." In re Montagne, 421 B.R. at 89. Ag Venture is entitled to judgment as a matter of law on the limited basis that there is no evidence of a breach public policy or law that would entitle John Montagne to damages, as section 2233 of the LLA does not provide a cause of action for damages. Accordingly, Ag Venture's motion for summary judgment is GRANTED on the issue of whether John Montagne may recover damages for the alleged violation of the LLA. However, this is without prejudice to the parties' rights to present evidence at trial as to whether the MHI loan may be declared unenforceable based upon Ag Venture's alleged violation of the LLA.

In summary, regarding John Montagne's counterclaim for commercial unreasonableness and for violation of the LLA (previously styled as a counterclaim for violation of public policy/law), Ag Venture shall have a judgment in its favor to the extent that John Montagne seeks relief based on an independent counterclaim for failure to act in a commercially reasonable manner based, and recovery of damages under section 2233 of the LLA.

---

[9] 8 V.S.A. § 2233 was amended by the state legislature in 2009. Many of the LLA provisions have undergone multiple amendments over the last 25 years. None of the amendments affects this analysis.

16

**E.    Punitive Damages**

Ag Venture argues that John Montagne's counterclaim for punitive damages fails as a matter of law because there is no evidence to show actual malice by Ag Venture or Thomas Bellavance (doc. # 382, pp. 12–13).  See Celotex, 477 U.S. at 325.

"Punitive damages are generally not available in breach of contract actions.  We recognize an exception to this general rule for cases in which the breach has the character of a wilful and wanton or fraudulent tort, and when the evidence indicates that the breaching party acted with actual malice." Monahan v. GMAC Mortg. Corp., 2005 VT 110, ¶ 53, 179 Vt. 167, 187, 893 A.2d 298, 315–16 (Vt. 2005) (citation omitted).  "[P]unitive damages are available in tort actions for breach of the implied covenant of good faith if, as with all other tort actions, the plaintiff can show that the defendant's conduct demonstrates actual malice."  Id. at ¶ 54, n.5, 179 Vt. at 187, n.5, 893 A.2d 316, n.5.  "[A]ctual malice may be shown by conduct manifesting personal ill will or carried out under circumstances evidencing insult or oppression, or even by conduct showing a reckless or wanton disregard of one's rights."  Id. at ¶ 56, 179 Vt. at 188, 893 A.2d at 317 (quotation and citation omitted).  In addition, "[b]ecause the purpose of punitive damages is to punish conduct that is 'morally culpable' and 'truly reprehensible,' [the Vermont Supreme Court] has set a high bar for plaintiffs seeking such damages."  Id. at ¶ 55, 179 Vt. at 188, 893 A.2d at 316 (citation omitted).

John Montagne's counterclaim for punitive damages alleges that, "[b]y their actions," Ag Venture and Thomas Bellavance "are liable to John Montagne for punitive damages" (doc. # 40, ¶ 85), and Mr. Montagne alleges in his opposition papers that "Ag Venture's conduct in receiving double interest on funds placed in the suspense account, diverting some $10,000 per month in payments made, and the other conduct described above, meets the standard [for punitive damages], including a reckless or wanton disregard of the rights of John Montagne" (doc. # 396, p. 18).  The Court addressed above John Montagne's allegation that Ag Venture improperly charged and received interest on the MHI loan in violation of the LLA, and granted Ag Venture's motion for summary judgment on the issue of whether John Montagne may recover damages for the alleged violation of the LLA (see § D, supra).  Additionally, there is no indication in the record, and John Montagne does not allege, that Ag Venture's alleged conduct relating to Mr. Montagne's affirmative defense and counterclaim for breach of contract has the character of a wilful and wanton or fraudulent tort.  Ag Venture is entitled to judgment as a matter of law on the limited basis that John Montagne has presented no evidence that would entitle him to punitive damages under his violation of the LLA and breach of contract theories.  Accordingly, Ag Venture's motion for summary judgment on John Montagne's counterclaim for punitive damages is GRANTED as to the

alleged conduct relating to John Montagne's counterclaim for violation of the LLA and his affirmative defense and counterclaim for breach of contract.

However, John Montagne also claims a right to punitive damages based on Ag Venture's alleged breach of the implied covenant of good faith and fair dealing by using monies that were to be disbursed to MHI under the MHI loan agreement for non-MHI purposes, and then holding John Montagne liable for those non-MHI loans and accounts that he had never agreed to pay (see § B, supra). Additionally, John Montagne claims a right to punitive damages based on Ag Venture negligently controlling monies from the milk check assignment in its capacity as financial advisor to John Montagne (see § C, supra). Ag Venture is not entitled to judgment as a matter of law on these aspects of the punitive damages counterclaim because there is evidence that Ag Venture's alleged conduct relating to John Montagne's counterclaim for breach of the implied covenant and counterclaim negligence may be sufficient to show actual malice, and Ag Venture fails to identify undisputed material facts that constitute a basis for judgment as a matter of law in its favor on this aspect of the punitive damages counterclaim. Accordingly, Ag Venture's motion for summary judgment on John Montagne's counterclaim for punitive damages is DENIED with respect to the counterclaim for breach of the implied covenant of good faith and fair dealing and the counterclaim for negligence.

In summary, regarding John Montagne's counterclaim for punitive damages, Ag Venture shall have a judgment in its favor to the extent that John Montagne seeks relief based on Ag Venture's alleged conduct relating to John Montagne's counterclaim for violation of the LLA and his affirmative defense and counterclaim for breach of contract.

## CONCLUSION

For the reasons set forth above, Ag Venture's motion for summary judgment on John Montagne's remaining counterclaims and affirmative defense is GRANTED in part and DENIED in part.

Ag Venture's motion for summary judgment on John Montagne's affirmative defense and counterclaim for **breach of contract** is GRANTED and judgment shall be entered in favor of Ag Venture on the issue of whether John Montagne may obtain relief based on:

(1) any claims John Montagne is asserting on behalf of MHI or in his capacity as former shareholder of MHI;

(2) any consideration John Montagne gave in the form of a promise to continue working at the MHI heifer facility; and

(3) Ag Venture's alleged breach of an express term of the MHI loan agreement by failing to disburse MHI loan monies for the purpose of purchasing livestock.

18

Ag Venture's motion for summary judgment on John Montagne's affirmative defenses and counterclaim for breach of contract is DENIED as to:

    (1) whether John Montagne has standing to assert a direct claim for his own damages;

    (2) which contract John Montagne claims Ag Venture breached;

    (3) whether John Montagne incurred debt in consideration of the MHI loan;

    (4) whether Ag Venture breached the MHI loan agreement by taking a payment from the milk check assignment in excess of the repayment amount specified in the MHI loan documents; and

    (5) whether Ag Venture breached the MHI loan agreement by failing to apply the monies received from the milk check assignment to reduce the balance of the MHI loan.

Ag Venture's motion for summary judgment on John Montagne's counterclaim for **breach of the implied covenant of good faith and fair dealing** is GRANTED and judgment shall be entered in favor of Ag Venture on the issue of whether John Montagne may obtain relief based on Ag Venture's conduct prior to the MHI loan agreement. Ag Venture's motion for summary judgment on John Montagne's counterclaim for breach of the implied covenant of good faith and fair dealing is DENIED on the issue of whether John Montagne's counterclaim is based on conduct distinct from the conduct underlying the alleged breach of contract.

Ag Venture's motion for summary judgment on John Montagne's counterclaim for **negligence** is GRANTED and judgment shall be entered in favor of Ag Venture on the issue of whether John Montagne may obtain relief based on Ag Venture's conduct in its capacity as a lender, tax preparer, or payroll administrator. Ag Venture's motion for summary judgment on John Montagne's counterclaim for negligence is DENIED on the issue of whether Ag Venture was acting as financial advisor to John Montagne and had sole control over the milk check assignment monies and the account into which they were deposited such that the exception to the economic-loss rule might apply.

Ag Venture's motion for summary judgment on John Montagne's counterclaim based upon **commercial unreasonableness and violation of the LLA** is GRANTED and judgment shall be entered in favor of Ag Venture on the issue of whether John Montagne may obtain relief based on:

    (1) an independent counterclaim for failure to act in a commercially reasonable manner based; and

    (2) a recovery of damages under section 2233 of the LLA.

Ag Venture's motion for summary judgment on John Montagne's counterclaim for violation of the LLA is DENIED on the issue of what lending law John Montagne claims Ag Venture violated.

19

Ag Venture's motion for summary judgment on John Montagne's counterclaim for **punitive damages** is GRANTED and judgment shall be entered in favor of Ag Venture on the issue of whether John Montagne may obtain relief based on Ag Venture's alleged conduct relating to John Montagne's counterclaim for violation of the LLA and affirmative defense and counterclaim for breach of contract. Ag Venture's motion for summary judgment on John Montagne's counterclaim for punitive damages is DENIED on the issue of whether Ag Venture's alleged conduct relating to John Montagne's counterclaim for breach of the implied covenant of good faith and fair dealing and counterclaim for negligence constitutes actual malice.

The Court has considered all of the arguments of the parties, and to the extent any argument is not specifically addressed herein it is because the Court has found it to be without merit.

This memorandum of decision constitutes the Court's findings of facts and conclusions of law.

May 4, 2010  
Burlington, Vermont

Colleen A. Brown  
United States Bankruptcy Judge